# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

CITY OF ROSEVILLE EMPLOYEES'         :   Case No. 1:10-cv-10593-PBS
RETIREMENT SYSTEM,  Individually and on   :
Behalf of All Others Similarly Situated,   :
                                           :
            Plaintiff,                     :
                                           :
vs.                                        :
                                           :
BOSTON SCIENTIFIC CORPORATION, J.          :
RAYMOND ELLIOTT, JAMES R. TOBIN and        :
SAMUEL R. LENO,                            :
                                           :
            Defendants.                    :
_____:

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF STEELWORKERS PENSION TRUST FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD PLAINTIFF'S SELECTION OF LEAD COUNSEL AND LIAISON COUNSEL**

## TABLE OF CONTENTS

I.     INTRODUCTION .................................................................................................... 1

II.    STATEMENT OF FACTS ...................................................................................... 2

       A.     Movant Steelworkers Pension Trust ...................................................... 5

III.   ARGUMENT ........................................................................................................... 6

       A.     Steelworkers Should be Appointed Lead Plaintiff for the Class ........................... 6
              1.    The Procedures Mandated by the PSLRA for Appointment of Lead
                    Plaintiff ................................................................................................. 6
              2.    Movant Steelworkers Satisfies the Lead Plaintiff Requirements of the
                    PSLRA ................................................................................................... 7
                    a.    Movant Has Complied With the Procedural Requirements of the
                          PSLRA ........................................................................................ 7
                    b.    Steelworkers Believes That It Has the Largest Financial Interest In
                          the Relief Sought By the Class ........................................................ 9
                    c.    Movant Steelworkers Otherwise Satisfies the Requirements of
                          Rule 23 ...................................................................................... 12

                          i.     Steelworkers' Claims are Typical of the Claims of the
                                 Class ................................................................................ 13

                          ii.    Steelworkers Will Fairly and Adequately Represent the
                                 Interests of the Class ...................................................... 14

       B.     This Court Should Approve Steelworkers' Choice of Lead and Liaison Counsel 15
       C.     This Action Should Be Consolidated With Any Related Actions ....................... 17

IV.    CONCLUSION ...................................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Chill v. Green Tree Fin. Corp.*,
  181 F.R.D. 398 (D. Minn. 1998)........................................................................12

*Cortese v. Radian Group, Inc., S.A.*,
  2008 WL 269473 (E.D. Pa. Jan. 30, 2008) .........................................................11

*Glauser v. EVCI Ctr. Colls. Holding Corp.*,
  236 F.R.D. 184 (S.D.N.Y. 2006) ........................................................................17

*Gluck v. CellStar Corp.*,
  976 F. Supp. 542 (N.D. Tex. 1997) ......................................................................8

*Greebel v. FTP Software*,
  939 F. Supp. 57 (D. Mass. 1996) .....................................................................7, 8

*In re Baan Co. Sec. Litig.*,
  186 F.R.D. 214 (D.D.C. 1999).............................................................................9

*In re Cardinal Health, Inc. Sec. Litig.*,
  226 F.R.D. 298 (S.D. Ohio 2005) ......................................................................16

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001)..........................................................................10, 12

*In re Cendant Corp. Litig.*,
  182 F.R.D. 476 (D.N.J. 1998).............................................................................17

*In re Chipcom Corp. Sec. Litig.*,
  1997 WL 1102329 (D. Mass. June 26, 1997) .....................................................11

*In re Credit Suisse-AOL Secs. Litig.*,
  253 F.R.D. 17 (D. Mass. 2008)...........................................................................11

*In re Electro-Catheter Sec. Litig.*,
  1997 U.S. Dist. LEXIS 13500 (D.N.J. Dec. 3, 1987) .........................................13

*In re Lernout & Hauspie Sec. Litig.*,
  138 F. Supp. 2d 39 (D. Mass. 2001) (Saris, J.)............................................. passim

*In re MicroStrategy Inc. Sec. Litig.*,
  110 F. Supp. 2d 427 (E.D. Va. 2000) .................................................................16

*In re Razorfish, Inc. Sec. Litig.*,
  143 F. Supp. 2d 304 (S.D.N.Y. 2001).................................................................16

*In re eSpeed, Inc. Sec. Litig.*,
    232 F.R.D. 95 (S.D.N.Y. 2001) ..........................................................................11

*In re Veeco Instruments, Inc.*,
    233 F.R.D. 330 (S.D.N.Y. 2005) ........................................................................11

*Lax v. First Merchants Acceptance Corp.*,
    1997 U.S. Dist. LEXIS 11866 (N.D. Ill. Aug. 6, 1997) ..................................10, 15

*Leech v. Brooks Automation, Inc.*,
    2006 WL 3690736 (D. Mass. Dec. 13, 2006)..............................................8, 10, 15

*Lowinger v. Global Cash Access Holdings, Inc.*,
    2008 WL 2566558 (S.D.N.Y. June 26, 2008) ....................................................17

*Montoya v. Mamma.com Inc.*,
    2005 U.S. Dist. LEXIS 10224 (S.D.N.Y. May 31, 2005) .......................................11

*Netsky v. Capstead Mortg. Corp.*,
    2000 U.S. Dist. LEXIS 9941 (N.D. Tex. July 12, 2000) .........................................8

*Prado-Steiman v. Bush,*
    221 F.3d 1266 (11th Cir. 2000) .........................................................................13

*State Univ. Ret. Sys. of Ill. v. Sonus Networks, Inc.*,
    2006 U.S. Dist. LEXIS 93328 (D. Mass. Dec. 27, 2006) ............................... passim

*Swack v. Credit Suisse First Boston*,
    230 F.R.D. 250 (D. Mass. 2005)........................................................................13

**STATUTES**

Securities Exchange Act of 1934,
    Private Securities Litigation Reform Act of 1995 (the "PSLRA"), Section 21D(a)(3),
    15 U.S.C. § 78u-4(a)(3) .............................................................................. passim

**RULES**

Fed. R. Civ. P. 23 ............................................................................................ passim

Fed. R. Civ. P. 42 ...............................................................................................2, 17

**MISCELLANOUS**

House Conference Report on Securities Litigation Reform, H.R. Rep. No. 369, 104th
   Congress, 1st Sess. 31, (reprinted in 1995 U.S.C.C.A.N. 679, 731) ........................................8

Moore, *Manual for Complex Litigation*, § 20.123 (3d Ed. 1995)..................................................16

**DOCKETED CASE**

*City of Roseville Employees' Retirement System v. Boston Scientific Corporation, et al.*,
   Case No. 1:10-cv-10593-PBS (D. Mass)..................................................................................2

## I.      INTRODUCTION

Steelworkers Pension Trust ("Movant" or the "Steelworkers") hereby moves for entry of an order pursuant to Section 21D(a)(3) of the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA "), 15 U.S.C. § 78u-4(a)(3): (i) appointing movant as Lead Plaintiff on behalf of a class of shareholders who purchased the common stock of Boston Scientific Corporation ("Boston Scientific" or "BSX" or the "Company") during the period April 20, 2009 to and including March 12, 2010 and were damaged thereby, (ii) approving Movant's selection of Berger & Montague, P.C. as Lead Counsel and Stern Shapiro Weissberg & Garin, LLP as Liaison Counsel for the Class; and (iii) consolidating any related actions.   In support of this motion, Movant submits the incorporated Memorandum of Law and the Declaration of Phyllis M. Parker, dated June 8, 2010, and the exhibits thereto (referred to hereafter as "Parker Declaration" and cited as "Parker Decl.").  A Proposed Order is also submitted herewith for the Court's consideration.

The Court should appoint Steelworkers as lead plaintiff and approve its selection of lead counsel and liaison counsel to represent the proposed class.  Steelworkers meets the requirements of the PSLRA for appointment as lead plaintiff. Steelworkers has lost approximately $1,049,944, calculated under the FIFO ("first-in-first-out") method of calculating losses, and approximately $768,251 under the LIFO ("last-in-first-out") method, as a result of its transactions in the common stock of Boston Scientific during the Class Period April 20, 2009 through March 12, 2010, inclusive, and is believed to be the investor with the largest financial interest in the outcome of the case.[1]

---

[1] As discussed further below, both FIFO and LIFO methods are accepted by courts in determining "greatest financial interest" for purposes of deciding the lead plaintiff motion under the language of the PSLRA.   Steelworkers' certification listing its transactions in Boston Scientific stock during the proposed Class Period, as required by § 21D(a)(2) of the PSLRA, is

Moreover, Steelworkers is an institutional investor and its assistance in the prosecution of the action will further protect the interests of the Class.  In addition, Steelworkers satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure in that its claims are typical of the claims of the class, and it will fairly and adequately represent the interests of the class, and has retained experienced counsel to represent it and other class members to prosecute this action.

## II.    STATEMENT OF FACTS[2]

Boston Scientific is a worldwide developer, manufacturer and marketer of medical devices, including products that focus on the treatment of cardiac arrhythmias and heart failure. Most of Boston Scientific's Cardiac Rhythm Management ("CRM") products are implantable cardiac defibrillator ("ICD") systems used to detect and treat abnormally fast heart rhythms (tachycardia). These include implantable cardiac resynchronization therapy defibrillator ("CRT-D") systems used to treat heart failure, and implantable pacemaker systems used to manage slow or irregular heart rhythms (bradycardia).

The action alleges violations of Sections 10(b) and 20(a) of the Securities Exchange Act

---

attached to the accompanying Declaration of Phyllis M. Parker. ("Parker Decl.") as Exhibit B.  A chart detailing its losses is attached to the Parker Decl. as Ex. C.  Steelworkers' losses for purposes of the current motion are not necessarily the same as its legally compensable damages, measurement of which is often a complex legal question which cannot be determined at this stage of the litigation.

[2] The Statement of Facts is derived from the allegations in the complaint filed on April 9, 2010 by the City of Roseville Employees' Retirement System in the above captioned action, *City of Roseville Employees' Retirement System v. Boston Scientific Corporation, et al.*, Case No. 1:10-cv-10593-PBS (D. Mass).  To date, the above-captioned action appears to be the only securities fraud class action that has been filed against Boston Scientific in connection with these alleged facts.  Steelworkers adopts the allegations in the Complaint for purposes of this lead plaintiff motion, without waiver of its right to file a consolidated complaint following its appointment as lead plaintiff and its own independent investigation.   To the extent additional actions are subsequently filed alleging substantially similar facts, Steelworkers believes they should be consolidated with the instant action pursuant to Fed. R. Civ. P. 42.

of 1934.  Specifically, it alleges that during the Class Period, defendants made materially false and misleading statements regarding Boston Scientific's business and prospects, including the following: (a) sales and demand for the Company's CRM products had been substantially and materially inflated by the payment of illegal and improper inducements to health care professionals; (b) a material portion of the Company's CRM reported or anticipated revenues resulted from the sale of products which had been manufactured without required FDA approval, such that they were subject to recall and refund or replacement; (c) demand for the Company's CRM products had weakened due to the curtailment and cessation of payments of illegal and improper inducements to health care professionals, which defendants attributed to other factors; and (d) defendants failed to timely or fully disclose the problems and defects in the headers of certain of the Company's ICD products such that defendants' statements about CRM sales in general and sales of ICDs in particular were materially misleading.

Some of the price inflation in Boston Scientific stock was eliminated as a result of Boston Scientific's third quarter 2009 earnings release issued on October 19, 2009, which revealed declining sales of and demand for Boston Scientific's CRM products, causing the price of Boston Scientific's common stock to decline 15.6% in a single day, falling from $10.16 to close at $8.57, and causing economic injury to members of the Class. Boston Scientific's public disclosures shortly after this announcement demonstrate that a significant reason for the decline in demand was that Boston Scientific had suddenly reversed its practice of making charitable contributions and providing other improper benefits to health care providers to induce them to purchase Boston Scientific products.

Additional inflation was eliminated following the events of February 10, 2010, when Boston Scientific revealed: (i) continued sales declines in CRM products and reduced

expectations going forward because a number of sales people had been fired or quit after being disciplined for using illegal charitable contributions to illegally boost CRM sales; (ii) sweeping management and organizational changes and a major business restructuring designed to improve operational results and increase accountability, much of which was required by the U.S. Department of Health and Human Services as a result of its investigation into the illegal charitable contributions by CRM sales people; and (iii) concerns over the safety and reliability of some of its ICD systems. On this news, the price of Boston Scientific's common stock declined by nearly 10%, falling from $8.29 on February 10, 2010 to close at $7.47 on February 11, 2010, causing additional economic harm to members of the Class.

On March 15, 2010, before the market opened, Boston Scientific announced that it was suspending sales of and was recalling all of its ICD and CRT-D devices because it had changed the manufacturing process for the devices without obtaining FDA approval. On this news, Boston Scientific shares dropped 12.6%, from $7.78 per share at the close of trading on March 12, 2010 to close at $6.80 per share, on volume of 243 million shares.

When the recall was announced, Boston Scientific assured investors that it resulted from a mere "clerical error" and was therefore likely to be resolved in a matter of weeks by the FDA. On March 29, 2010, the Company was forced to admit that the FDA had not agreed to an expedited review of the matter, suggesting the issues were more complex than previously indicated. Some analysts predicted it could take months to resolve the issue, and that Boston Scientific could lose $469 million in sales over the next two years as a result.

On March 30, 2010, *The Wall Street Journal* reported that the Justice Department and the SEC had opened investigations into the recall, "seeking company documents regarding the company's discovery that it hadn't gotten FDA approval, as well as communications with

regulators, physicians and stock analysts about the withdrawal."

### A.    Movant Steelworkers Pension Trust

Steelworkers, an institutional investor, is a multi-employer pension plan. The Steelworkers Pension Trust was created in 1953 by the Upholsterers' International Union ("UIU"), and was national in scope and covered employees of many employers in many trades and industries. In 1985, when the UIU merged with the United Steelworkers ("USW"), the USW became the sponsoring union, and the name of the trust was officially changed to "Steelworkers Pension Trust." As of June 4, 2010, the plan has approximately 56,073 active participants, 559 participating employers and approximately $2 billion in assets. In this litigation, Steelworkers has agreed to monitor and supervise the efforts of class counsel, to receive and review regular status reports from counsel regarding the action, and to play an active role in prosecuting this action. As discussed below, the PSLRA favors the selection of institutional investors as lead plaintiff.

Movant also proposes that the Court approve its selection of Berger & Montague, P.C. as lead counsel and Stern Shapiro Weissberg & Garin, LLP as liaison counsel on behalf of the Class. Both firms have significant expertise in prosecuting securities class actions such as this one, and have worked together efficiently and successfully in the past in this District and others on similar securities class action cases. They will vigorously prosecute this action on behalf of the Class.

## III.    ARGUMENT

### A.    Steelworkers Should be Appointed Lead Plaintiff for the Class

#### 1.    The Procedures Mandated by the PSLRA for Appointment of Lead Plaintiff

The PSLRA has established a procedure that governs the appointment of Lead Plaintiffs in "each action arising under the [Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(1) and (a)(3). *In re Lernout & Hauspie Sec. Litig.*, 138 F. Supp. 2d 39, 41 (D. Mass. 2001) (Saris, J.).

First, the plaintiff who files the initial action must publish a notice to the class within 20 days of filing the action, informing class members of their right to file a motion for appointment as lead plaintiffs. 15 U.S.C. §78u-4(a)(3)(A)(i). Here, counsel in the first-filed action caused the first notice to be published on April 9, 2010 (Parker Decl., Ex. A). This notice stated that any motion for the appointment as lead plaintiff was due "no later than 60 days from today." *Id.*

The PSLRA states that within sixty (60) days after the publication of the notice mandated by the PSLRA, any "person or group of persons" who are members of the proposed class may apply to the court to be appointed as Lead Plaintiff, whether or not they have previously filed a complaint in the action. 15 U.S.C §78u-4(a)(3)(A) and (B). Steelworkers has timely filed this motion before the expiration of the 60-day period from such publication.

The PSLRA further provides that within 90 days after publication of the notice, or as soon as practicable after the Court decides any pending motion to consolidate, the Court shall consider any motion made by a class member and shall appoint as lead plaintiff(s) the member or members of the class that the Court determines to be most capable of adequately representing the interests of the class members, 15 U.S.C. §78u-4(a)(3)(B)(i). In determining who is the "most adequate plaintiff," the PSLRA provides that:

[T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this Act is the person or group of persons that -

    (aa)    has either filed the complaint or made a motion in response to a notice . . .;

    (bb)    in the determination of the court, has the largest financial interest in the relief sought by the class; and

    (cc)    otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. §78u-4(a)(3)(B)(iii)(I).[3]  *See Lernout*, 138 F. Supp. 2d at 42; *Greebel v. FTP Software*, 939 F. Supp. 57, 64 (D. Mass. 1996).  As set forth below, movant Steelworkers is the "most adequate plaintiff" here.

### 2. Movant Steelworkers Satisfies the Lead Plaintiff Requirements of the PSLRA

#### a. Movant Has Complied With the Procedural Requirements of the PSLRA

The 60-day period under the PSLRA, in which motions for appointment as lead plaintiff must be filed, expires on June 8, 2010.  With this motion, Movant has timely sought appointment as lead plaintiff within the statutory 60-day period.  This motion includes the required Certification from Movant setting forth, among other things, Steelworkers' transactions in Boston Scientific's securities during the Class Period, and indicating Movant's willingness to serve as a representative party on behalf of the class.  *See* Certification of Richard S. Hoffmann, Esquire, Steelworkers' General Counsel, Parker Decl., Ex. B.  The total losses of Movant are summarized in the charts annexed to the Parker Declaration at Exhibit C.  In addition, Movant has retained competent and experienced counsel, as set forth in the firm resumés of Berger &

---

[3] The presumption "may be rebutted only upon proof by a member of the purported class that the presumptively most adequate plaintiff (aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. §78u-4(a)(3)(B)(iii)(II).  *See Lernout*, 138 F. Supp. 2d at 42.

Montague, P. C and Stern Shapiro Weissberg & Garin, LLP.  *See* Firm Resumés, Parker Decl., Exs. D and E.

Moreover, Movant is particularly well qualified to serve as lead plaintiff because the appointment of an institutional investor, such as Steelworkers, to serve as lead plaintiff is precisely what the framers of the PSLRA hoped to accomplish.  As the Statement of Managers noted, the PSLRA was intended "to increase the likelihood that institutional investors will serve as lead plaintiffs" because among other reasons, institutional investors and other class members with large amounts at stake "will represent the interests of the plaintiff class more effectively than class members with small amounts at stake."  House Conference Report on Securities Litigation Reform, H.R. Rep. No. 369, 104th Congress, 1st Sess. 31, at 34, (reprinted in 1995 U.S.C.C.A.N. 679, 731).  *See Leech v. Brooks Automation, Inc*., 2006 WL 3690736, at *3 (D. Mass. Dec. 13, 2006) ("In general, courts have recognized that the PSLRA favors the selection of large institutional investors as lead plaintiff."); *Lernout,* 138 F. Supp. 2d at 43 ("This [legislation] is predicated upon the conclusion that '[i]nstitutional investors and other class members with large amounts at stake will represent the interests of the plaintiff class more effectively than class members with small amounts at stake.'") (citing House Conference Report at 34); *State Univ. Ret. Sys. of Ill. v. Sonus Networks, Inc.*, 2006 U.S. Dist. LEXIS 93328 at **4-5 (D. Mass. Dec. 27, 2006); *Gluck v. CellStar Corp*., 976 F. Supp. 542, 548 (N.D. Tex. 1997) ("The legislative history of the Reform Act is replete with statements of Congress' desire to put control of such litigation in the hands of large, institutional investors."); *Greebel,* 939 F. Supp. at 63-64 (same); *Netsky v. Capstead Mortg. Corp*., 2000 U.S. Dist. LEXIS 9941 at *28 (N.D. Tex. July 12, 2000) ("Congress intended to increase the likelihood that parties with significant holdings in issuers, whose interests are more aligned with the class of shareholders, will

participate in the litigation and exercise control ..."); *In re Baan Co. Sec. Litig.*, 186 F.R.D. 214 (D.D.C. 1999).  Thus, as contemplated by Congress, Steelworkers will most effectively represent the interests of the plaintiff class.

> **b.      Steelworkers Believes That It Has the Largest Financial Interest In the Relief Sought By the Class**

One of the key factors in selection of lead plaintiff under the PSLRA is the Court's determination as to which person or group of persons has the largest financial interest in the relief sought by the class.  Steelworkers' loss of $1,049,944 (under FIFO) or $768,251 (under LIFO) is, to the best of undersigned counsels' knowledge, the largest of any class member who has come forward as a proposed lead plaintiff.  Specifically, the "most adequate plaintiff" provision of the PSLRA, provides that the Court

> shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members (hereafter in this paragraph referred to as the "most adequate plaintiff") in accordance with this subparagraph.

15 U.S.C. § 78u-4(a)(3)(B)(i).

> [Moreover], the court shall adopt a presumption that the most adequate plaintiff in any private action arising under this Act is the person or group of persons that –

> \* \* \*

> (bb)    in the determination of the court, has the **largest financial interest in the relief sought by the class.**

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) (emphasis added).

Numerous courts have interpreted this language to mean that the person or group who has the *largest financial stake* in the litigation is presumed to be the "most adequate" plaintiff to represent the class.  *See Lernout*, 138 F. Supp. 2d at 43 ("requiring courts to presume that the member of the purported class with the largest financial stake in the relief sought is the most adequate plaintiff") (citations and internal quotes omitted).  Courts in this District typically

engage in a two-step inquiry to determine which plaintiff should be appointed Lead Plaintiff by (1) identifying which plaintiff has the largest financial interest and then (2) determining whether that applicant meets the adequacy and typicality requirements of Rule 23(a) of the Federal Rules of Civil Procedure. *See Leech*, 2006 WL 3690736 at *1.

The PSLRA does not define "largest financial interest" nor does it provide a method for determining the relative financial interests of lead plaintiff movants. Although the PSLRA does not mandate a particular method for calculating a movant's financial interest, courts have traditionally considered the following factors: "(1) the number of shares that the movant purchased during the putative class period; (2) the total net funds expended by the plaintiffs during the class period; and (3) the approximate losses suffered by the plaintiffs." *Sonus Networks, Inc.*, 2006 U.S. Dist. LEXIS 93328 at *5 (quoting *In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. 2001)). *See also Lax v. First Merchants Acceptance Corp.,* 1997 U.S. Dist. LEXIS 11866, at *17 (N.D. Ill. Aug. 6, 1997).

Here, Steelworkers is presumptively the most adequate plaintiff. Steelworkers believes it has the largest financial interest in the relief sought by the Class. During the proposed Class Period from April 20, 2009 to March 12, 2010, Steelworkers purchased 432,321 shares of Boston Scientific stock, expending a total of $4,390,362 with a total *net* funds expended of $415,785, and sustained a loss of $1,049,944 under FIFO or $768,251 under LIFO. Moreover, Steelworkers' sales of BSX stock during the Class Period all occurred *after* Defendants' initial disclosure on October 19, 2009 (when Defendants announced declining sales of and demand for BSX's CRM products, causing the price to decline 15.6% in a single day), with the first of Steelworkers' sales beginning on October 20, 2009, through January 11, 2010. *See* Parker Decl.

Exs. B and C. [4]   Accordingly, Movant is presumptively the most adequate lead plaintiff and satisfies all of the PSLRA's prerequisites for appointment as lead plaintiff pursuant to 15 U.S.C. § 78u-4(a)(3)(B) of the Exchange Act.

Based on its significant losses, Steelworkers will most effectively represent the interests of the plaintiff class and will have the motivation and commitment to supervise the litigation. Moreover, as stated above, Steelworkers is particularly qualified to serve as lead plaintiff because the appointment of an institutional investor, like Steelworkers, to serve as lead plaintiff is precisely what the framers of the PSLRA hoped to accomplish because, as contemplated by Congress, an institutional investor like Steelworkers with a large financial interest at stake in the litigation will be more likely to monitor the litigation and more effectively represent the interests of the plaintiff class than other shareholders. *See In re Lernout,* 138 F. Supp. 2d at 43; *See Sonus Networks, Inc*., 2006 U.S. Dist. LEXIS 93328 at *7.

Steelworkers has also selected and retained law firms which are highly experienced in prosecuting securities class actions such as those pending before the Court. *See* Parker Decl., Ex. D (firm resumés).   Accordingly, the Proposed Lead Plaintiff satisfies the prerequisites for appointment as Lead Plaintiff under 15 U.S.C. § 78u-4(a)(3)(B). *See Sonus Networks, Inc*., 2006

---

[4]   Steelworkers have used both the FIFO and LIFO methods in calculating its losses. "Courts have used both [LIFO and FIFO] methods to calculate financial interest." *Cortese v. Radian Group, Inc., S.A.*, 2008 WL 269473, at *6 (E.D. Pa. Jan. 30, 2008).  "The Court need not address which accounting method should be used for calculating financial interest at this [lead plaintiff motion] juncture." *Cortese,* 2008 WL 269473, at *6. *See In re Credit Suisse-AOL Secs. Litig.*, 253 F.R.D. 17, 24 (D. Mass. 2008) ("Both the FIFO and LIFO methods have been employed to calculate losses stemming from securities fraud (though LIFO seems to be emerging as the preferred method)"); *In re Chipcom Corp. Sec. Litig.*, 1997 WL 1102329, at *24 (D. Mass. June 26, 1997) (approving settlement using FIFO).  Also, compare *Montoya v. Mamma.com Inc*., 2005 U.S. Dist. LEXIS 10224, at *4 (S.D.N.Y. May 31, 2005) (applying FIFO methodology to determine approximate loss) and *In re Veeco Instruments, Inc.,* 233 F.R.D. 330 (S.D.N.Y. 2005) (same) with *In re eSpeed, Inc. Sec. Litig*., 232 F.R.D. 95, 100-02 (S.D.N.Y. 2005) (using LIFO to determine approximate loss).

2006 U.S. Dist. LEXIS 93328 at *8 ("Moreover, as an institutional investor which has sustained large losses, MPERS has both the ability and incentive to represent the class vigorously…. [and] it has retained experienced counsel to do so.").

### c.   Movant Steelworkers Otherwise Satisfies the Requirements of Rule 23

The PSLRA, 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc), further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure."  Rule 23(a) provides that a party may serve as a class representative only if the following four requirements are satisfied:

> (1)    the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Of the four prerequisites to class certification, only two -- typicality and adequacy -- directly address the personal characteristics of the proposed class representatives.  Consequently, in deciding a motion to appoint lead plaintiff, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until the plaintiff moves for class certification.  *See, Chill v. Green Tree Fin. Corp.*, 181 F.R.D. 398, 407 at n. 8  (D. Minn. 1998) ("a proposed Lead Plaintiff need only make a preliminary showing that he or she satisfies the typicality and adequacy requirements of Rule 23"); *Sonus Networks, Inc.*, 2006 U.S. Dist. LEXIS 93328 at *6 (citing *In re Cendant Corp.*, 264 F. 3d at 263-64).  As detailed below, Steelworkers satisfies the typicality and adequacy requirements of Rule 23.

### i.   Steelworkers' Claims are Typical of the Claims of the Class

Steelworkers satisfies the typicality requirement of Rule 23. A proposed lead plaintiff satisfies the typicality requirement when its claims and injuries "arise from the 'same events or course of conduct' and involve the same legal theory as do the claims of the rest of the class." *Lernout*, 138 F. Supp. 2d at 46 (citation omitted); *see also Swack v. Credit Suisse First Boston*, 230 F.R.D. 250, 264 (D. Mass. 2005) ("To summarize, the typicality analysis is a functional one addressed primarily to the question of whether the putative class representative can fairly and adequately pursue the interests of the absent class members without being sidetracked by her own particular concerns.").

Indeed, to satisfy typicality, the claims of the class representatives do not have to be identical to those of the class members. *See e.g., Prado-Steiman v. Bush,* 221 F.3d 1266, 1278-79 & n. 14 (11th Cir. 2000) (finding typicality satisfied despite factual distinctions as long as named representatives' claims share "same essential characteristics as the claims of the class at large"). The focus of the typicality inquiry is not plaintiffs' behavior, but defendants' behavior. *In re Electro-Catheter Sec. Litig.*,1987 U.S. Dist. LEXIS 13500, Fed. Sec. L. Rep. (CCH) ¶93,643 at 97,931 (D.N.J. Dec. 3, 1987).

Here, Steelworkers satisfies this requirement because, just like all other class members, it: (1) purchased shares of Boston Scientific at prices allegedly artificially inflated by the false and misleading statements issued by defendants or by defendants' failure to disclose material information and (2) suffered damages thereby.  Thus, its claims are typical of those of other class members since its claims and the claims of the other class members arise out of the same course of events.  Moreover, Steelworkers' claims arise from the same statutes and legal theories as all other class members. *See Sonus Networks, Inc.*, 2006 U.S. Dist. LEXIS 93328 at *7 (movant

made *prima facie* showing of typicality where there was "no indication that the circumstances of its losses [were] markedly different than those of other class members or [were] based on a legal theory that is not generally applicable"). Because Steelworkers seeks to prove that its claims arise from the same events, practice or course of conduct that give rise to the claims of the other class members, and because Steelworkers' claims are based on the same legal theories, the typicality requirement of Rule 23(a)(3) is satisfied.

### ii.     Steelworkers Will Fairly and Adequately Represent the Interests of the Class

Under Rule 23(a)(4), the representative parties must fairly and adequately protect the interests of the class.  Here, Steelworkers satisfies the adequacy requirement of Rule 23. This requirement is satisfied if the movant has "common interests and an absence of conflict with the class members and [its] attorneys are qualified, experienced and vigorously able to conduct the litigation." *In re Lernout & Hauspie*, 138 F. Supp. 2d at 46.

Steelworkers readily meets the adequacy requirements. Its interests are the same as those of other class members - *i.e.*, to hold the Defendants liable for their violations of the federal securities laws and to seek recovery of the damages caused to investors who purchased Boston Scientific stock at artificially inflated prices during the Class Period. Further, there are no facts that indicate any conflicts of interest between Steelworkers and other class members. In addition, Steelworkers is a sophisticated institutional investors that has the resources and wherewithal to vigorously pursue the claims on behalf the Class.

Steelworkers is an adequate representative of the Class.  The PSLRA directs the Court to limit its inquiry regarding the adequacy of the Proposed Lead Plaintiff to represent the Class to the existence of any conflicts between the interests of the Proposed Lead Plaintiff and the

members of the Class, and then allow the lead plaintiff to retain lead counsel to represent the Class, "subject to the approval of the court." *See* 15 U.S.C. §78u-4(a)(3)(B)(v).

The interests of Steelworkers are clearly aligned with the members of the Class, and there is no evidence of any antagonism between the interests of Steelworkers and the Class.  As detailed above, Steelworkers shares numerous common questions of law and fact with the members of the Class and its claims are typical of the claims of other Class members.  Further, Steelworkers has selected attorneys to represent it that are highly experienced in prosecuting securities class actions.  Moreover, Steelworkers suffered dramatic losses and therefore has a substantial stake in the litigation.

Finally, as explained below, Steelworkers has chosen Berger & Montague, P.C. and Stern Shapiro Weissberg & Garin, LLP, firms with extensive experience and qualifications in securities litigation- to serve as Lead Counsel and Liaison Counsel for the Class.  *See Sonus Networks*, 2006 U.S. Dist. LEXIS 93328 at *8 (movant made *prima facie* showing of adequacy where as an "institutional investor which has sustained large losses" it had "both the ability and incentive to represent the class vigorously" and had "retained experienced counsel to do so").  Accordingly, Steelworkers satisfies the adequacy requirements of Rule 23.  *Leech*, 2006 WL 3690736 at *3.

**B.      This Court Should Approve Steelworkers' Choice of Lead and Liaison Counsel**

The PSLRA vests authority in the lead plaintiff, subject to the approval of the Court, to select and retain lead counsel.  *See* 15 U.S.C. §78u-4(a)(3)(B)(v).  *See Sonus Networks,* 2006 U.S. Dist. LEXIS 93328 at *10; *see also Lax v. First Merchants Acceptance Co.*, 1997 U.S. Dist. LEXIS 11866, at *8.  The Court should not disturb the proposed lead plaintiff's choice of counsel unless necessary to "protect the interests of the [plaintiff] class."  15 U.S.C. § 78u-

4(a)(3)(B)(iii)(II)(aa).  *Leech*, 2006 WL 3690736 at *4 (quoting *In re Cardinal Health, Inc. Sec. Litig.*, 226 F.R.D. 298, 305 (S.D. Ohio 2005)) ("Courts typically do not disturb a lead plaintiff's choice of counsel unless doing so is necessary to protect the interests of the class.").  *See In re MicroStrategy Inc. Sec. Litig.*, 110 F. Supp. 2d 427, 438 (E.D. Va. 2000) ("The PSLRA plainly states that a district court's duty is to appoint a lead plaintiff based on the relevant statutory criteria . . . it is the lead plaintiff's duty to select and retain counsel to represent the class . . . a district court should approve plaintiff's choice of lead counsel based solely on that counsel's competence, experience, and resources ...").  Congress' theory in enacting these provisions "was that if an investor with a large financial stake in the litigation was made lead plaintiff, such a plaintiff --  frequently a large institution or otherwise sophisticated  investor  -- would be motivated to act like a "real" client, carefully choosing counsel and monitoring counsel's performance....." *In re Razorfish, Inc. Sec. Litig.*, 143 F. Supp. 2d 304, 307 (S.D.N.Y. 2001).

Accordingly, Steelworkers have selected and retained Berger & Montague, P.C. as their lead counsel, and Stern Shapiro Weissberg & Garin, LLP, as liaison counsel, both of which possess extensive experience in the area of securities litigation and have successfully prosecuted numerous securities fraud actions on behalf of injured investors.  *See* Resumés of Berger & Montague, P.C. and Stern Shapiro Weissberg & Garin, LLP, (Parker Decl., Exs. D and E)  The Court may be assured that, in the event this motion is granted,  these firms are prepared to commit the necessary resources to prosecute this action and minimize duplication of cost and effort and that the members of the class will receive the highest caliber of legal representation available.  The Court should, therefore, approve Movant's selection of Lead and Liaison Counsel.

### C.       This Action Should Be Consolidated With Any Related Actions

Consolidation pursuant to Rule 42(a), Fed. R. Civ. P., is appropriate when actions involve common questions of law and fact.  Moore, *Manual for Complex Litigation*, § 20.123, at 13-14 (3d Ed. 1995).  Rule 42(a), provides that:

> When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all of the matters in issue in the action; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

Consolidation is common in federal securities class action cases.  Indeed, section 21D(a)(3)(B) of the Exchange Act contemplates the consolidation of multiple actions "asserting substantially the same claim or claims." "Consolidation is particularly appropriate in the context of securities class actions if the complaints are based on the same public statements and reports." *Lowinger v. Global Cash Access Holdings, Inc*., 2008 WL 2566558, at *1 (S.D.N.Y. June 26, 2008) (citing *Glauser v. EVCI Ctr. Colls. Holding Corp*., 236 F.R.D. 184, 186 (S.D.N.Y. 2006)).  Moreover, "[n]either Rule 42 nor the PSLRA demands that actions be identical before they may be consolidated. Rule 42 requires only "a common question of law or of fact;" the PSLRA permits consolidation of cases with "substantially the same claim or claims arising under" the securities laws. 15 U.S.C. § 78-u(a)(3)(B)(ii).  *In re Cendant Corp. Litig.,* 182 F.R.D. 476, 478 (D.N.J. 1998).

In addition, the interests of judicial economy weigh heavily in favor of consolidation, when there is a substantial overlap of common questions of law and fact. Accordingly, the Court should consolidate the above-captioned action with any other subsequently filed or transferred shareholder actions that are related to the claims in this matter. To date, the above-captioned action appears to be the only securities fraud class action that has been filed against Boston Scientific in connection with these alleged facts.   To the extent additional actions are

subsequently filed that assert similar claims based on the same or similar legal and factual allegations, Steelworkers believes they should be consolidated with the instant action pursuant to Fed. R. Civ. P. 42.

The proposed Order accompanying Steelworkers' motion consolidates this and any other new or transferred action and establishes procedures governing consolidated pleadings for the orderly conduct of this litigation.  *Compare*, Manual For Complex Litigation, §§ 41.2 & 41.31.

## IV.  CONCLUSION

For all the foregoing reasons, The Steelworkers Pension Trust respectfully requests that the Court consolidate this and any new or transferred action and appoint Steelworkers as Lead Plaintiff under Section 21D(a)(3)(B) of the PSLRA, 15 U.S.C. § 78u-4(a)(3)(B).  Steelworkers further requests that the Court approve its choice of Berger & Montague, P.C. as Plaintiff's Lead Counsel and Stern Shapiro Weissberg & Garin, LLP, as Plaintiff's Liaison Counsel.


Dated: June 8, 2010          By:     */s/ Lynn Weissberg*
                                     Jonathan Shapiro
                                     Lynn Weissberg
                                     **STERN SHAPIRO WEISSBERG & GARIN, LLP**
                                     90 Canal Street
                                     Boston, MA  02114-2022
                                     Tel: (617) 742-5800
                                     Fax: (617) 742-5858
                                     Email: jshapiro@sswg.com
                                               lweissberg@sswg.com

                                     *Proposed Liaison Counsel for Plaintiff*

**BERGER & MONTAGUE, P.C.**
Sherrie R. Savett
Barbara A. Podell
Phyllis M. Parker
1622 Locust Street
Philadelphia, PA 19103
Tel: (215) 875-3000
Fax: (215) 875-4604
Email: ssavett@bm.net
　　　　bpodell@bm.net
　　　　pparker@bm.net

*Proposed Lead Counsel for Lead Plaintiff Movant*
*Steelworkers Pension Trust*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Memorandum of Law in Support of the Motion of Steelworkers Pension Trust for Consolidation, Appointment as Lead Plaintiff and Approval of Lead Plaintiff's Selection of Lead Counsel and Liaison Counsel, was filed with this Court on June 8, 2010, through the ECF system and will be sent electronically to all registered participants as identified on the Notice of Electronic Filing, and paper copies will be sent to those indicated as non-registered participants.

Dated: June 8, 2010                    */s/ Lynn Weissberg*
                                        Lynn Weissberg

kal522802