## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

CITY OF ROSEVILLE EMPLOYEES'
RETIREMENT SYSTEM, Individually and on
Behalf of All Others Similarly Situated,

                         Plaintiff,

     v.

BOSTON SCIENTIFIC CORPORATION, J.
RAYMOND ELLIOTT, JAMES R. TOBIN and
SAMUEL R. LENO,

                      Defendants.

Civil Action No. 1:10-cv-10593

## MEMORANDUM OF LAW IN SUPPORT OF THE MOTION
## OF KBC ASSET MANAGEMENT NV FOR APPOINTMENT OF
## LEAD PLAINTIFF AND APPROVAL OF SELECTION OF CLASS COUNSEL

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................................1

INTRODUCTION ..............................................................................................................................1

PROCEDURAL HISTORY .................................................................................................................2

STATEMENT OF FACTS ..................................................................................................................3

ARGUMENT .......................................................................................................................................6

I.      KBC SHOULD BE APPOINTED LEAD PLAINTIFF ...............................................................6

      A.     The Procedure Required By The PSLRA ...........................................................6

      B.     KBC Satisfies The Lead Plaintiff Requirements Of The PSLRA ...........................8

            1.     KBC Has Complied with the PSLRA and Should Be Appointed Lead Plaintiff ...............................................................................8

            2.     KBC Is an Institutional Investor with the Requisite Large Financial Interest in the Relief Sought by the Class ...................................8

            3.     KBC Otherwise Satisfies Rule 23 ...........................................................9

                   a.     KBC satisfies the typicality requirement ......................................10

                   b.     KBC fulfills the adequacy requirement ........................................11

II.     KBC'S SELECTION OF COUNSEL SHOULD BE APPROVED .................................................12

CONCLUSION ....................................................................................................................................12

CERTIFICATE OF SERVICE ........................................................................................................14

# TABLE OF AUTHORITIES

## CASES

*Bassin v. deCODE Genetics, Inc.*,
   230 F.R.D. 313 (S.D.N.Y. 2005) ............................................................................... 7

*Greebel v. FTP Software, Inc.*,
   939 F. Supp. 57 (D. Mass. 1996) ............................................................................. 8

*In re Cavanaugh*,
   306 F.3d 726 (9th Cir. 2002) .............................................................................. 8, 9

*In re Lernout & Hauspie Securities Litigation*,
   138 F. Supp. 2d 39 (D. Mass. 2001) .................................................... 9, 10, 11, 12

*In re Milestone Science Securities Litigation*,
   183 F.R.D. 404 (D.N.J. 1998) ................................................................................ 12

*In re Oxford Health Plans, Inc. Securities Litigation*,
   182 F.R.D. 42 (S.D.N.Y. 1998) ............................................................................. 10

*In re Surebeam Corp. Securities Litigation*,
   No. 03 CV 1721 JM (POR), 2003 U.S. Dist. LEXIS 25022 (S.D. Cal. Dec. 31, 2003)..... 10, 11

*Lax v. First Merchants Acceptance Corp.*,
   No. 97 C 2715, 1997 U.S. Dist. LEXIS 11866 (N.D. Ill. Aug. 6, 1997) ........................... 10, 11

*Priest v. Zayre Corp.*,
   118 F.R.D. 552 (D. Mass. 1988) ............................................................................ 11

*Schwartz v. Harp*,
   108 F.R.D. 279 (C.D. Cal. 1985) ........................................................................... 11

## STATUTES

15 U.S.C. § 78u-4(a)(1) ................................................................................................ 6

15 U.S.C. § 78u-4(a)(3)(A)(i) ...................................................................................... 7

15 U.S.C. § 78u-4(a)(3)(B)(i) ................................................................................ 1, 6, 7

15 U.S.C. § 78u-4(a)(3)(B)(iii) .............................................................................. 1, 8, 9

15 U.S.C. § 78u-4(a)(3)(B)(v) ..................................................................................... 2

## PRELIMINARY STATEMENT

Class member KBC Asset Management NV ("KBC") respectfully submits this memorandum of law in support of its motion for (1) appointment as Lead Plaintiff in the above-referenced action pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. § 78u-4(a)(3)(B), and (2) approval of Motley Rice LLC ("Motley Rice") as Lead Counsel and Berman DeValerio as Liaison Counsel.

## INTRODUCTION

Presently pending in this District is a class action lawsuit (the "Action") on behalf of purchasers of the common stock of Boston Scientific Corporation ("BSX" or the "Company") during the period from April 20, 2009 through March 12, 2010, inclusive (the "Class Period"). This Action is brought pursuant to §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a), and Securities and Exchange Commission ("SEC") Rule 10b-5, 17 C.F.R. § 240.10b-5.  Defendants are BSX and certain of BSX's officers and directors.

The PSLRA directs the Court to appoint the "most adequate plaintiff" to serve as Lead Plaintiff.  15 U.S.C. § 78u-4(a)(3)(B)(i).  In that regard, the Court is required to determine which movant has the "largest financial interest in the litigation" and also meets the typicality and adequacy prongs of Rule 23 of the Federal Rules of Civil Procedure.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii).  As demonstrated below, KBC has sustained losses of approximately $1,846,129.  KBC's losses are the largest among purported class members seeking appointment as Lead Plaintiff.[1]  KBC is unaware of any other class member who has filed an action or an application

---

[1] The losses suffered by KBC are not the same as its legally compensable damages, the measure of which is often a complex legal question that cannot be determined at this stage of litigation.  The approximate losses can, however, be determined from the certification required under Section 21D of the Exchange Act, 15 U.S.C. § 78u-4(a)(2)(B)

for appointment as Lead Plaintiff that sustained greater financial losses.  Furthermore, KBC understands the commitments of a Lead Plaintiff and, for purposes of this Motion, satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.  In addition, KBC has retained competent and experienced counsel to prosecute this securities litigation and seeks the Court's approval of its selection of Counsel.

Pursuant to the PSLRA, the Lead Plaintiff selects the Lead Counsel subject to Court approval.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(v).  KBC has selected the law firm Motley Rice to serve as Lead Counsel and the law firm Berman DeValerio to serve as Liaison Counsel.  Motley Rice and Berman DeValerio have extensive experience successfully litigating securities class actions and possess the resources necessary to vigorously pursue this litigation on behalf of the class.  For the reasons summarized and discussed more fully below, KBC's motion should be granted.

## PROCEDURAL HISTORY

The Action was filed on April 9, 2010.  Pursuant to 15 U.S.C. § 78u-4(a)(3)(A)(i), on April 9, 2010, the first notice that a class action had been initiated against Defendants was published on *Business Wire*, a widely circulated national business-oriented wire service advising members of the proposed class of their right to move the Court for appointment as Lead Plaintiff no later than June 8, 2010.  (*See* Norton Decl. Ex. A.)  KBC is a member of the proposed class (*see* Norton Decl. at Ex. B) and is filing this motion within the 60-day period following publication of the April 9, 2010 notice pursuant to Section 21D of the PSLRA.

---

and based upon reference to information concerning the current market for the Company's securities.  KBC's transactions in BSX securities are set forth in its Certification, a copy of which is attached as Exhibit B to the Declaration of William S. Norton in Support of the Motion of KBC Asset Management NV for Appointment as Lead Plaintiff and Approval of Selection of Class Counsel, submitted contemporaneously herewith ("Norton Decl.").

## STATEMENT OF FACTS[2]

BSX is a worldwide developer, manufacturer, and marketer of medical devices, including products that focus on the treatment of cardiac arrhythmias and heart failure, known as Cardiac Rhythm Management ("CRM") products. In 2006, BSX made a significant entry into the CRM market in 2006 by acquiring Guidant Corp. ("Guidant"). (¶ 2.) Implantable cardiac defibrillators ("ICD") systems are the largest contributor to BSX's CRM sales, accounting for approximately 70% of that segment's sales in each of the years since BSX acquired Guidant. (¶ 3.)

After the acquisition, Guidant's sales of ICDs and other CRM products were disappointing, leading BSX to record a $2.6 billion goodwill impairment charge during the fourth quarter of 2008. (¶ 3.) Nevertheless, following the goodwill impairment charge, BSX claimed that its CRM business had stabilized and was poised for growth with the introduction of new products, including the COGNIS and TELIGENT line of ICD devices. Accepting Defendants' claims that BSX had finally turned the corner, Moody's Investors Service, Standard & Poor's Rating Services and Fitch all raised their ratings on BSX securities in early 2009. In each of the first two quarters of 2009, BSX reported that its domestic CRM business had returned to double-digit growth, reporting 10% growth in 1Q09 and 11% growth in 2Q09. On the heels of this news, CEO James R. Tobin ("Defendant Tobin"), who had engineered (and been roundly criticized for) the Guidant acquisition, announced his retirement. Tobin was succeeded by BSX Board member J. Raymond Elliott ("Defendant Elliott"), the former head of Zimmer Holdings. (¶ 4.)

---

[2] These facts are derived from the allegations in the complaint captioned *City of Roseville Employees' Retirement System v. Boston Scientific Corp., et al.*, No. 1:10-cv-10593 (D. Mass. Apr. 9, 2010) (the "Complaint"); as such, all paragraph references are to the Complaint.

When BSX's third quarter results were released on October 19, 2009, the Company announced a surprising reversal in the CRM sales trend, reporting a paltry 7% growth in domestic sales, which it attributed to declining demand for its products and disappointing results from newly hired sales staff.  On this news, the price of BSX common stock declined 15%, causing a one-day loss of more than $2.4 billion in market capitalization.  In fact, the decline in demand was caused because BSX, under pressure from government regulators, had begun to put a stop to certain illegal and unethical business practices that its sales force had been using to increase CRM sales and reverse the trends that had led to the enormous write-down at the end of 2008, including the use of impermissible charitable contributions and other financial inducements in violation of the federal Anti-Kickback Statute, 42 U.S.C. § 1320a-7b, the False Claims Act, 31 U.S.C. §§ 3729-3733, and other federal healthcare program requirements.  (¶ 5.)

On November 4, 2009, BSX filed a Current Report on Form 8-K, disclosing without comment that William McConnell Jr., the Company's senior CRM sales and marketing executive, planned to retire at the end of the year.  The 59-year-old McConnell had worked for Guidant at the time of its acquisition by BSX, and before that was a managing partner for Arthur Andersen LLP's consulting arm in Indianapolis, where Guidant was headquartered.   On November 6, 2009, buried in BSX's 3Q09 Form 10-Q, was a brief mention that BSX had received a subpoena from the U.S. Department of Health and Human Services ("HHS") requesting "certain information relating to contributions made by CRM to charities with ties to physicians or their families."  (¶ 6.)

The import of these announcements was not revealed until February 10, 2010, when BSX reported its full year results and lowered its financial guidance, explaining that it expected to lose up to $100 million in CRM sales due to the departure of a number of CRM sales personnel in the

4

wake of "recent disciplinary action" taken against them by the Company.  On this news, BSX's common shares fell nearly 10%, wiping out an additional $1.2 billion in market capitalization and returning the share value to its level at the outset of the Class Period.  (¶ 7.)

Less than a year removed from the last restructuring of its CRM business, BSX was forced to announce to investors that it was again restructuring and had made numerous management changes in another attempt to restore profitability to the business.  Weeks later, an exhibit to BSX's 2009 Report on Form 10-K, filed February 26, 2010, revealed that many of these changes were required by a Corporate Integrity Agreement BSX had signed with the HHS to prevent the continued use of charitable contributions or other illegal inducements to boost CRM sales.  (¶ 8.)

On the same day the Company released its 2009 financial results, the Company was attempting to dismiss a negative report in the respected medical journal, *HeartRhythm*, regarding a weakened header bond in one of its COGNIS CRT-D ICD devices that had caused a patient to receive repeated unnecessary shocks to the heart within hours of the device being implanted. BSX reacted angrily to the report, issuing a press release on February 10, 2010 – the day after the article was published – that accused the journal of rushing to judgment before talking to the Company or receiving a detailed engineering analysis of the device failure, charges later denied by the article's authors.  On the Company's 4Q09 investor conference call, held on February 11, 2010, Elliott claimed that the incident was caused by a competitor's product, not BSX's device. Nevertheless, BSX acknowledged that it was aware of two other incidents involving a weakened header on the product, had warned doctors of the problem the previous December, and had already "implemented manufacturing process improvements to strengthen the header bond." (¶ 9.)

On March 15, 2010, investors suffered another blow when BSX unexpectedly announced, before the market opened, that it was suspending all sales of its ICD devices because it had failed to notify regulators of changes in how it manufactures the devices.  The Company said it had stopped shipment of the implants and was recalling all of its previously shipped inventory.  In a press release issued that day, the Company said that it was aware of at least two instances in which "manufacturing process changes were not submitted for [FDA approval]."  The process changes affected virtually all of BSX's ICD product families, including the COGNIS product that was the subject of the HeartRhythm article.  (¶ 10.)

On this news, BSX shares dropped an additional 12.6%, to close at $6.80 per share, on volume of 243 million shares, eliminating another $1.5 billion in market value for beleaguered investors.  (¶ 11.)

As a result of Defendants' wrongful acts, false and misleading statements and omissions, and the precipitous decline in the market value of BSX's securities, Plaintiff and other Class members have suffered significant losses and damages.

## ARGUMENT

### I.   KBC SHOULD BE APPOINTED LEAD PLAINTIFF

#### A.   The Procedure Required By The PSLRA

The PSLRA has established a procedure governing the appointment of a lead plaintiff "in each private action arising under . . . [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure."  15 U.S.C. §§ 78u-4(a)(1) , (a)(3)(B)(i) .

First, the plaintiff who files the initial action must publish a notice to the class, within 20 days of filing the action, informing class members of their right to file a motion for appointment as lead plaintiff.  15 U.S.C. § 78u-4(a)(3)(A)(i).  Here, the relevant notice was published on

*Business Wire*[3] on April 9, 2010.  (Norton Decl. Ex. A.)  Within 60 days after publication of the

notice, any person or group of persons who are members of the proposed class may apply to the

court to be appointed as lead plaintiff, whether or not they have previously filed a complaint in

the action.  15 U.S.C. § 78u-4(a)(3)(A)-(B).

Second, the PSLRA provides that within 90 days after publication of the notice, the court

shall consider any motion made by a class member and "shall appoint as lead plaintiff the

member or members of the purported plaintiff class that the court determines to be most capable

of adequately representing the interests of class members."  15 U.S.C. § 78u-4(a)(3)(B)(i).  In

determining the "most adequate plaintiff," the PSLRA provides that:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any
> private action arising under this title is the person or group of persons that –
>
> (aa) has either filed the complaint or made a motion in response to a notice
>
> . . .
>
> (bb) in the determination of the court, has the largest financial interest in the relief
> sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil
> Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii); *see also In re Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002);

*Greebel*, 939 F. Supp. at 64.  As discussed below, KBC has complied with the procedural

prerequisites of the PSLRA, has demonstrated what is, to the best of its knowledge, the largest

financial interest in the litigation of any other class member(s) seeking appointment as lead

---

[3] The *Business Wire* consistently has been recognized as a suitable vehicle for meeting the PSLRA's statutory requirement that notice be published "in a widely circulated national business-oriented publication or wire service." *See, e.g.*, *Greebel v. FTP Software, Inc.*, 939 F. Supp. 57, 62-64 (D. Mass. 1996) ; *Bassin v. deCODE Genetics, Inc.*, 230 F.R.D. 313, 313 (S.D.N.Y. 2005) (stating that "[n]otice was published that same day in the *Business Wire*, a national, business oriented newswire service, as required by 15 U.S.C. §§ 78u-4(a)(3)(A)(i)").

plaintiff (if any), meets the relevant requirements of Rule 23 of the Federal Rules of Civil Procedure, and should be appointed as Lead Plaintiff.

### B.   KBC Satisfies The Lead Plaintiff Requirements Of The PSLRA

#### 1.   KBC Has Complied with the PSLRA and Should Be Appointed Lead Plaintiff

The period within which class members may move to be appointed Lead Plaintiff expires on June 8, 2010.  Pursuant to the PSLRA, and within the requisite time frame after publication of the required notice (published on April 9, 2010), KBC timely moves this Court to be appointed Lead Plaintiff on behalf of all members of the Class.  KBC has submitted a signed Certification stating that it has reviewed the Complaint and is willing to serve as a representative party on behalf of the proposed Class, pursuant to 15 U.S.C. § 78u-4(a)(2).  (*See* Norton Decl. Ex. B.)  In addition, KBC has selected and retained experienced and competent counsel to represent them and the Class.  (*See* Firm Resumes of Motley Rice and Berman DeValerio, attached as Exhibits D & E to Norton Decl.)  Accordingly, KBC satisfies the requirements of 15 U.S.C. § 78u-4(a)(3)(B) and is entitled to have its application for appointment as Lead Plaintiff and selection of Counsel, as set forth herein, considered and approved by the Court.

#### 2.   KBC Is an Institutional Investor with the Requisite Large Financial Interest in the Relief Sought by the Class

Pursuant to the PSLRA, identification of the most adequate plaintiff begins with the identification of the movant with "the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb); *see also In re Lernout & Hauspie Sec. Litig.*, 138 F. Supp. 2d 39, 42-46 (D. Mass. 2001) (comparing the financial stakes of competing movants).  As evidenced by the accompanying certification and loss chart, KBC purchased BSX securities during the Class Period and has suffered estimated losses of approximately $1,846,129 as a result of Defendants' misconduct.  (*See* Norton Decl. Ex. C.)  KBC has a significant financial interest

in this case and is unaware of any other applicant or applicant group that has sustained greater financial losses in connection with the purchase and/or sale of BSX securities or has applied to serve as Lead Plaintiff in this action.  Therefore, KBC has the "largest financial interest in the relief sought by the class," satisfies all of the PSLRA's prerequisites for appointment as lead plaintiff, and accordingly should be appointed as lead plaintiff pursuant to the PSLRA.  15 U.S.C. § 78u-4(a)(3)(B)(iii); *see also In re Cavanaugh*, 306 F.3d at 730 (presumptive lead plaintiff is "the one who 'has the largest financial interest in the relief sought by the class' and 'otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure'") (citations omitted).

### 3.    KBC Otherwise Satisfies Rule 23

According to 15 U.S.C. § 78u-4(a)(3)(B)(iii), in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must "'otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure.'"  *See In re Cavanaugh*, 306 F.3d at 730 (citations omitted).  Rule 23(a) provides that a party may serve as a class representative only if the following four requirements are satisfied:  (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.  Of these four prerequisites, only two – typicality and adequacy – directly address the personal characteristics of the lead plaintiff movants.  *See In re Lernout & Hauspie*, 138 F. Supp. 2d at 46 ("Only the last two prongs, typicality and adequacy, need to be satisfied for purposes of this inquiry.").  Consequently, in deciding a lead plaintiff motion, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until a class certification motion is filed.  *See In re Surebeam Corp. Sec.*

*Litig.*, No. 03 CV 1721 JM (POR), 2003 U.S. Dist. LEXIS 25022, at *16 (S.D. Cal. Dec. 31, 2003) ("[a]lthough Rule 23 contains four basic requirements (numerosity, commonality, typicality, and adequacy of representation), a presumptive lead plaintiff need only make a 'preliminary showing' of typicality and adequacy") (citations omitted); *Lax v. First Merchs. Acceptance Corp.*, No. 97 C 2715, 1997 U.S. Dist. LEXIS 11866, at *20 (N.D. Ill. Aug. 6, 1997).  KBC satisfies both the typicality and adequacy requirements of Rule 23.

### a.       KBC satisfies the typicality requirement

Under Rule 23(a)(3), the claims or defenses of the representative parties must be typical of those of the class.  Typicality requires that the plaintiff's claim be aligned with the claims of the remainder of the class, and is demonstrated by a showing that KBC's claims are based on the same legal theories as the claims of all the class members.  *See, e.g.*, *In re Lernout & Hauspie*, 138 F. Supp. 2d at 46 ("The plaintiffs' burden in proving typicality requires that the named plaintiffs' claims arise from the 'same events or course of conduct' and involve the same legal theory as do the claims of the rest of the class."); *In re Surebeam Corp.*, 2003 U.S. Dist. LEXIS 25022, at *17-18 ("[typicality] mandates that the presumptive lead plaintiff's claim 'arise from the same event or course of conduct giving rise to the claims of other class members' and be based on the same legal theory") (citations omitted); *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 50 (S.D.N.Y. 1998).  Typicality does not require that there be no factual differences between the class representatives and the class members because it is the generalized nature of the claims asserted that determines whether the class representatives are typical.  *See Priest v. Zayre Corp.*, 118 F.R.D. 552, 555 (D. Mass. 1988) ("With respect to typicality under Rule 23(a)(3), plaintiffs need not show substantial identity between their claims and those of absent class members, but need only show that their claims arise from the same course of conduct that gave rise to the claims of the absent [class] members.") (citations omitted).

KBC satisfies the typicality requirement of Rule 23 because, just like all other class members, KBC:  (1) transacted in BSX securities during the Class Period at artificially inflated prices; and (2) suffered damages thereby.  Thus, KBC's claims are typical of those of other members of the proposed class since all the claims arise out of the same course of events and are based on the same legal theories.  *See In re Surebeam Corp.*, 2003 U.S. Dist. LEXIS 25022, at *18 (citing *Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D. Cal. 1985)).

### b.      KBC fulfills the adequacy requirement

Under Rule 23(a)(4), the representative parties must also "fairly and adequately protect the interests of the class."  Pursuant to the PSLRA, a movant is adequate if:  (1) the movant's counsel is qualified, experienced and generally able to conduct the proposed litigation, and (2) the movant does not have interests antagonistic to those of the class.  *See In re Lernout & Hauspie*, 138 F. Supp. 2d at 46; *In re Surebeam*, 2003 U.S. Dist. LEXIS 25022, at *20.

KBC will more than adequately represent the interests of the Class.  There is no conflict between the interests of KBC and those of the other members of the Class.  Moreover, KBC has already taken significant steps demonstrating that it recognizes, and will protect, the interests of the Class, including the following:  (1) KBC has executed certifications detailing its Class Period transactions and expressing their willingness to serve as class representative; (2) KBC has moved this Court to be appointed Lead Plaintiff; and (3) KBC has retained competent and experienced counsel who, as shown below, will be able to conduct this complex litigation in a professional manner.  *See generally Lax*, 1997 U.S. Dist. LEXIS 11866, at *21-25.  Furthermore, KBC has the largest known financial interest, and therefore the "financial stake in the litigation provides an adequate incentive for [KBC] to vigorously prosecute the action."  *In re Milestone Sci. Sec. Litig.*, 183 F.R.D. 404, 416 (D.N.J. 1998).

Thus, KBC, in addition to having the largest financial interest, also *prima facie* satisfies the typicality and adequacy requirements of Rule 23 of the Federal Rules of Civil Procedure and, therefore, satisfies the Exchange Act's prerequisites for appointment as Lead Plaintiff in this action pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(iii).

## II.    KBC'S SELECTION OF COUNSEL SHOULD BE APPROVED

Pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v), the Lead Plaintiff shall, subject to the Court's approval, select and retain counsel to represent the class it seeks to represent.  In that regard, KBC has selected Motley Rice to serve as Lead Counsel and Berman DeValerio as Liaison Counsel.  Motley Rice and Berman DeValerio possess extensive experience litigating securities class actions and have successfully prosecuted numerous securities fraud class actions on behalf of injured investors.  As demonstrated in their firm resumes, Motley Rice and Berman DeValerio have been appointed as lead or co-lead counsel in numerous precedent-setting class actions.  (*See* Norton Decl. Exs. D & E.)  *See also Marsden v. Select Med. Corp*., No. 04-4020 (E.D. Pa. Order entered Oct. 5, 2006) ("Motley Rice LLC possess[es] the requisite knowledge and skill in securities litigation to ably prosecute this matter on behalf of the class.") (copy attached as Exhibit F to Norton Decl.); *In re Lernout & Hauspie*, 138 F. Supp. 2d at 46 ("[T]he firm [resume] from Berman DeValerio & Pease LLP, the [firm] selected by the [movant], [indicates] the [firm] is well-experienced in these types of actions.").  Accordingly, KBC's selection of Counsel should be approved.

## CONCLUSION

For the foregoing reasons, KBC satisfies the requirements of Rule 23 and all of the PSLRA's prerequisites for appointment as lead plaintiff in this action and should be appointed Lead Plaintiff pursuant to 15 U.S.C. § 78u-4(a)(3)(B).  KBC respectfully requests that this Court: (1) appoint KBC as Lead Plaintiff in the Action; (2) approve KBC's selection of Motley Rice as

Lead Counsel and Berman DeValerio as Liaison Counsel, and (3) grant such other and further

relief as the Court may deem just and proper.

Dated:  June 8, 2010

<div style="margin-left: 40%;">

Respectfully submitted,

*/s/ Leslie R. Stern*
Leslie R. Stern (BBO #631201)
**BERMAN DEVALERIO**
One Liberty Square
Boston, MA  02109
Telephone:  (617) 542-8300
Facsimile:   (617) 542-1194

*[Proposed] Liaison Counsel for Lead*
*Plaintiff and the Class*

James M. Hughes
William S. Norton
J. Brandon Walker
**MOTLEY RICE LLC**
28 Bridgeside Blvd.
Mt. Pleasant, SC  29464
Telephone:  (843) 216-9000
Facsimile:   (843) 216-9440

William H. Narwold
**MOTLEY RICE LLC**
20 Church St., 17th Floor
Hartford, CT  06103
Telephone:  (860) 882-1676
Facsimile:   (860) 882-1682

*Attorneys for KBC Asset Management NV,*
*and [Proposed] Lead Counsel for the Class*

</div>

## <u>CERTIFICATE OF SERVICE</u>

I, Leslie R. Stern, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on June 8, 2010.

Dated:  June 8, 2010

<div style="text-align: right;">

*/s/ Leslie R. Stern*
Leslie R. Stern

</div>