# EXHIBIT 9

ME1 6931528v.1



LEXSEE 69 FED. REG. 15594

FEDERAL REGISTER

Vol. 69, No. 58

Rules and Regulations

SECURITIES AND EXCHANGE COMMISSION (SEC)

**17 CFR Parts 228, 229, 230, 239, 240 and 249**

**[Release Nos. 33-8400; 34-49424; File No. S7-22-02]**

**RIN 3235-AI47**

**Additional Form 8-K Disclosure Requirements and Acceleration of Filing Date**

Part VI

*69 FR 15594*

**DATE:** Thursday, March 25, 2004

    **ACTION:** Final rule.

    **SUMMARY:** We are expanding the number of events that are reportable on Form 8-K under the Securities Exchange Act of 1934. These amendments add eight new items to the form, transfer two items from the periodic reports and expand disclosures under two existing Form 8-K items. Due to the increase in reportable events under the form, we are reorganizing the Form 8-K items into topical categories. The amendments also shorten the Form 8-K filing deadline for most items to four business days after the occurrence of an event triggering the disclosure requirements of the form. Finally, we are adopting a limited safe harbor from liability for failure to file certain of the required Form 8-K reports. These amendments are responsive to the "real time issuer disclosure" mandate in Section 409 of the Sarbanes-Oxley Act of 2002. They are intended to provide investors with better and faster disclosure of important corporate events.

    **EFFECTIVE DATE:** August 23, 2004.

    **FOR FURTHER INFORMATION CONTACT:** Ray Be, Special Counsel, or Julie A. Bell, Special Counsel, each at (202) 942-2910, Division of Corporation Finance, U.S. Securities and Exchange Commission, 450 Fifth Street, NW., Washington, DC 20549-0312.

69 FR 15594, *

**SUPPLEMENTARY INFORMATION:** We are adopting amendments to Form 8-K, n1 Form 10-K, n2 Form 10-KSB, n3 Form 10-Q, n4 Form 10-QSB, n5 Rule 12b-23, n6 Rule 13a-10, n7 Rule 13a-11, n8 Rule 15d-10, n9 and Rule 15d-11, n10 under the Securities Exchange Act of 1934, n11 Form S-2, n12 Form S-3, n13 and Rule 144 n14 under the Securities Act of 1933, n15 and Item 601 n16 of Regulation S-B n17 and Item 601 n18 of Regulation S-K. n19

n1 *17 CFR 249.308.*

n2 *17 CFR 249.310.*

n3 *17 CFR 249.310b.*

n4 *17 CFR 249.308a.*

n5 *17 CFR 249.308b.*

n6 17 CFR 249.12b-23.

n7 17 CFR 249.13a-10.

n8 *17 CFR 240.13a-11.*

n9 *17 CFR 240.15d-10.*

n10 *17 CFR 240.15d-11.*

n11 *15 U.S.C. 78a et seq.*

n12 *17 CFR 239.12.*

n13 *17 CFR 239.13.*

n14 *17 CFR 230.144.*

n15 *15 U.S.C. 77a et seq.*

n16 *17 CFR 228.601.*

n17 *17 CFR 228.10 et seq.*

n18 *17 CFR 229.601.*

n19 *17 CFR 229.10 et seq.*

**Table of Contents**

I. Background

II. Discussion of Amendments

    A. Shortened Form 8-K Filing Deadline and Availability of Form 12b-25

    B. Reorganization of Form 8-K Items

69 FR 15594, *

C. Expansion of Form 8-K Items

1. Item 1.01 Entry into a Material Definitive Agreement

a. Filing of Exhibits

b. Considerations Regarding Business Combinations

2. Item 1.02 Termination of a Material Definitive Agreement

3. Item 1.03 Bankruptcy or Receivership

4. Item 2.01 Completion of Acquisition or Disposition of Assets

5. Item 2.02 Results of Operations and Financial Condition

6. Item 2.03 Creation of a Direct Financial Obligation or an Obligation Under an Off-Balance Sheet Arrangement of a Registrant

7. Item 2.04 Triggering Events That Accelerate or Increase a Direct Financial Obligation or an Obligation under an Off-Balance Sheet Arrangement

8. Item 2.05 Costs Associated with Exit or Disposal Activities

9. Item 2.06 Material Impairments

10. Item 3.01 Notice of Delisting or Failure to Satisfy a Continued Listing Rule or Standard; Transfer of Listing

11. Item 3.02 Unregistered Sales of Equity Securities

12. Item 3.03 Material Modifications to Rights of Security Holders

13. Item 4.01 Changes in Registrant's Certifying Accountant

14. Item 4.02 Non-Reliance on Previously Issued Financial Statements or a Related Audit Report or Completed Interim Review

15. Item 5.01 Changes in Control of Registrant

16. Item 5.02 Departure of Directors or Principal Officers; Election of Directors; Appointment of Principal Officers
a. Disclosure under Item 5.02(a) when a director resigns or refuses to stand for re-election due to a disagreement or is removed for cause

b. Disclosure under Item 5.02(b) when certain officers retire, resign or are terminated and disclosure when a director retires, resigns, is removed or refuses to stand for re-election for any reason other than as a result of a disagreement or for cause

c. Disclosure under Item 5.02(c) and (d) when the registrant appoints certain new officers or a new director is elected

17. Amendments to Articles of Incorporation or Bylaws; Change in Fiscal Year

D. Proposed Form 8-K Items Not Being Adopted

69 FR 15594, *

E. Safe Harbor and Eligibility to Use Forms S-2 and S-3 and to Rely on Rule 144

F. Other Matters Related to Form 8-K Filings and Conforming Amendments

1. Events Falling under Multiple Items

2. Amendments to Item 601 of Regulation S-K and Regulation S-B

3. Clarification of Filing Status of Exhibits

4. Revisions to Forms 10-Q, 10-QSB, 10-K and 10-KSB

5. Certification under Section 906 of the Sarbanes-Oxley Act of 2002

6. Other Conforming Amendments

III. Paperwork Reduction Act

IV. Costs and Benefits v. Effect on Efficiency, Competition and Capital Formation

VI. Final Regulatory Flexibility Analysis

VII. Statutory Basis and Text of Rule Amendments

**I. Background**

On June 17, 2002, we proposed to increase the number of events required to be disclosed on Form 8-K. n20 Form 8-K is the Exchange Act form for current reports. Prior to the amendments being adopted today, Form 8-K required disclosure regarding nine different specified events. n21 At the time, the proposals would have increased the number of reportable events under the form to 22. The proposals also would have shortened the form's filing deadline from five business days or 15 calendar days, depending on the particular event, to two business days with an automatic two business day extension upon a company's filing of a Form 12b-25. In response to these proposals, we received approximately 85 comment letters from various constituencies, including investors, issuers, accounting firms, law firms and associations representing the interests of such constituencies.

n20 Release No. 33-8106 (June 17, 2002) *[67 FR 42914]*.

n21 In addition, three additional items of the form provided for voluntary disclosure of other significant events of a company, the filing of financial statements and exhibits, and disclosure of information pursuant to Regulation FD [*17 CFR 243.100 et seq.* ]

Under the previous Form 8-K regime, companies were required to report very few significant corporate events. The limited number of Form 8-K disclosure items permitted a public company to delay disclosure of many significant events until the due date for its next periodic report. During such a delay, the market was unable to assimilate such undisclosed information into the value of a company's securities. The revisions [*15595] that we adopt today will benefit markets by increasing the number of unquestionably or presumptively material events that must be disclosed currently. They will also provide investors with better and more timely disclosure of important corporate events.

On July 29, 2002, Congress enacted the Sarbanes-Oxley Act of 2002. n22 Section 409 of this Act requires public companies to disclose "on a rapid and current basis" material information regarding changes in a company's financial condition or operations as we, by rule, determine to be necessary or useful for the protection of investors and in the public interest. These amendments also further the goals of Section 409 of the Sarbanes-Oxley Act.

69 FR 15594, *15595

n22 *15 U.S.C. 78m*(l).

At the same time, we have taken into account a number of important comments on the proposals by adopting a modified version of the proposed Form 8-K amendments. We have addressed the commenters' concern regarding potential premature disclosure in a number of respects. We also have addressed the concerns raised by several commenters regarding the length of the Form 8-K filing period by extending it beyond the originally proposed two business day period and significantly reducing the amount of analysis required by the specific items of the form. Our general rules, however, prohibiting material omissions that make the contents of the disclosure misleading, of course, continue to apply. n23 We have also taken into account the concerns expressed by commenters regarding the liabilities that could arise for failure to make current disclosure of some events in what are still tight timeframes. In response to these comments, we have replaced the proposed safe harbor that would have afforded protection from potential Exchange Act Section 13(a) or 15(d) liability stemming from a company's failure to file a required Form 8-K to instead afford protection from potential liability arising under Exchange Act Section 10(b) and Rule 10b-5 thereunder.

n23 See, for example, Exchange Act Rule 12b-20 [*17 CFR 240.12b-20*].

**II. Discussion of Amendments**

*A. Shortened Form 8-K Filing Deadline and Availability of Form 12b-25*

The amendments to Form 8-K require issuers that are subject to the reporting requirements of Section 13(a) and Section 15(d) of the Exchange Act, other than foreign private issuers that file annual reports on Form 20-F n24 or 40-F, n25 to file required current reports on Form 8-K within four business days of a triggering event. n26 These amendments do not affect the filing deadline for disclosures under Regulation FD (Item 7.01), voluntary disclosures (Item 8.01) and certain exhibits.

n24 *17 CFR 249.220f.*

n25 *17 CFR 249.240f.*

n26 Instruction B.1. to Form 8-K.

In the proposing release, we proposed a two business day deadline for Form 8-K, with provision for an automatic two business day extension upon a company's filing of Form 12b-25. Thus, the proposals would have permitted a four business day filing period whenever a company filed a Form 12b-25.

We received numerous comments and recommendations regarding appropriate filing deadlines. n27 The comments ranged from support of the two business day deadline to recommendations of as much as ten business days. Similarly, we received mixed comments on the Form 12b-25 proposal. n28 Some commenters noted that the Form 12b-25 proposal would complicate the process and that increased filings would reduce the significance of a Form 12b-25 filing. n29 We are persuaded by these commenters that modifications to the proposals are warranted. Thus, we are not adopting the proposal to extend the Form 8-K filing deadline via Form 12b-25. Rather, we are adopting a four business day deadline for Form 8-K, with no provision for extension under Rule 12b-25. n30 We believe that this change addresses commenters' concerns regarding the sufficiency of the filing period and simplifies the logistics of filing the four business day period.

n27 See, for example, the letters from American Institute of Certified Public Accountants ("AICPA"), City Bar of New York ("NY City Bar"), Deloitte & Touche, Dan Nguyen, Emerson Electric Co. ("Emerson"), Boeing Company ("Boeing"), Morgan Stanley and Perkins Coie.

n28 See, for example, the letters from the AICPA, KPMG, Cleary Gottlieb, Steen & Hamilton ("Cleary Gottlieb"), PriceWaterhouseCoopers ("PWC"), Intel Corporation ("Intel") and Ronald Stauber.

69 FR 15594, *15595

n29 See the letters from Cleary Gottlieb and PWC.

n30 For example, if a reportable event occurred on a Wednesday, the Form 8-K filing deadline would typically be the following Tuesday.

*B. Reorganization of Form 8-K Items*

Because we are adding a number of new items to the form, we believe it is appropriate to organize the required reportable items into topical categories. Commenters generally supported such reorganization. The amendments organize the Form 8-K items under the following section headings and with the following new numbering system:

Section 1-Registrant's Business and Operations

Item 1.01 Entry into a Material Definitive Agreement

Item 1.02 Termination of a Material Definitive Agreement

Item 1.03 Bankruptcy or Receivership

Section 2-Financial Information

Item 2.01 Completion of Acquisition or Disposition of Assets

Item 2.02 Results of Operations and Financial Condition

Item 2.03 Creation of a Direct Financial Obligation or an Obligation under an Off-Balance Sheet Arrangement of a Registrant

Item 2.04 Triggering Events That Accelerate or Increase a Direct Financial Obligation or an Obligation under an Off-Balance Sheet Arrangement

Item 2.05 Costs Associated with Exit or Disposal Activities

Item 2.06 Material Impairments

Section 3-Securities and Trading Markets

Item 3.01 Notice of Delisting or Failure to Satisfy a Continued Listing Rule or Standard; Transfer of Listing

Item 3.02 Unregistered Sales of Equity Securities

Item 3.03 Material Modifications to Rights of Security Holders

Section 4-Matters Related to Accountants and Financial Statements

Item 4.01 Changes in Registrant's Certifying Accountant

Item 4.02 Non-Reliance on Previously Issued Financial Statements or a Related Audit Report or Completed Interim Review

Section 5-Corporate Governance and Management

Item 5.01 Changes in Control of Registrant

69 FR 15594, *15595

Item 5.02 Departure of Directors or Principal Officers; Election of Directors; Appointment of Principal Officers

Item 5.03 Amendments to Articles of Incorporation or Bylaws; Change in Fiscal Year

Item 5.04 Temporary Suspension of Trading Under Registrant's Employee Benefit Plans

Item 5.05 Amendments to the Registrant's Code of Ethics, or Waiver of a Provision of the Code of Ethics

Section 6-[Reserved]

Section 7-Regulation FD

Item 7.01 Regulation FD Disclosure

Section 8-Other Events

Item 8.01 Other Events

Section 9-Financial Statements and Exhibits  [*15596]

Item 9.01 Financial Statements and Exhibits

This new numbering system avoids re-use of the former single-digit item numbering system previously used in Form 8-K to avoid confusion about the subject of particular items. For example, the Form 8-K item permitting voluntary disclosure of "other events" that was formerly designated as Item 5 now appears as Item 8.01. Thus, anyone searching the EDGAR database for such filings made before and after the change will need to search for both Items 5 and 8.01. In addition, a company amending a Form 8-K that it filed before the effective date of the rules we are adopting today must file the amendment using the form's new numbering system. For example, a company amending a Form 8-K previously filed under former Item 2, Acquisition or Disposition of Assets, to add the required financial statements must reference new Item 9.01, Financial Statements and Exhibits, when filing the amendment.

*C. Expansion of Form 8-K Items*

We are adding eight new items to the list of events that require a company to file a current report on Form 8-K and transferring, in part, two items from the periodic reports. n31 In addition, we are expanding two pre-existing Form 8-K items. Based on our review of Form 8-K filings, as well as public comment letters, we believe that these items represent events that unquestionably or presumptively have such significance that current disclosure should be required. These amendments will operate prospectively only. n32 The following is a discussion of the individual items in the revised Form 8-K.

n31 The two items which we have modified from existing disclosure requirements in periodic reports and included in Form 8-K are Item 3.02 Unregistered Sales of Equity Securities and Item 3.03 Material Modifications to Rights of Security Holders, each of which previously was required to be reported pursuant to Forms 10-Q, 10-QSB, 10-K and 10-KSB, as applicable. As discussed more fully below, however, we have retained in these applicable periodic reports a requirement to disclose any sales of unregistered equity securities that do not meet the numeric thresholds of the new Form 8-K item.

n32 However, certain subsequent events, such as a material amendment to a material definitive agreement, may trigger a disclosure requirement even though the initial entry into the material definitive agreement occurred prior to the effectiveness of these amendments.

Section 1-Registrant's Business and Operations

69 FR 15594, *15596

Item 1.01 Entry Into a Material Definitive Agreement

New Item 1.01 requires the disclosure of material definitive agreements entered into by a company that are not made in the ordinary course of business. The item parallels Items 601(b)(10) of Regulation S-K n33 with regard to the types of agreements that are material to a company, a standard already familiar to reporting companies. n34

n33 Unless otherwise noted, throughout this release, where we refer to a particular item of Regulation S-K, we also refer to, and include, the comparable item under Regulation S-B.

n34 See Instruction 1 to Item 1.01.

Under Item 1.01, a company must also disclose any material amendment to a material definitive agreement. Disclosure of a material amendment may be required under Item 1.01 even if the underlying agreement previously has not been disclosed by the company. This could occur if, for example, the agreement was entered into prior to the effective date of this Item 1.01, or the amendment results in the agreement becoming a material definitive agreement of the company.

A company must disclose the following information upon entry into, or material amendment of, a material definitive agreement:

. The date on which the agreement was entered into or amended, the identity of the parties to the agreement and a brief description of any material relationship between the company or its affiliates and any of the parties, other than in respect of the material definitive agreement or amendment; and

. A brief description of the terms and conditions of the agreement or amendment that are material to the company.

We received substantial comment on this item at the proposing stage. In particular, many commenters opposed our proposal to require disclosure of letters of intent and other non-binding agreements in addition to disclosure of definitive agreements that are material to the company. n35 They noted that disclosure of non-binding agreements could cause significant competitive harm to the company and create excessive speculation in the market. n36 Several companies also stated that they use letters of intent extensively, but that few such letters culminate in a completed transaction. n37

n35 See, for example, the letters of the AICPA, American Bar Association, Section of Business Law ("ABA"), NY City Bar, Cleary Gottlieb, Financial Executives International ("FEI"), Intel and Morgan Stanley.

n36 See, for example, the letters of Compass Bancshares, Inc. ("Compass Bancshares"), NY City Bar and Hogan & Hartson.

n37 Many of these companies were real estate investment trusts. See, for example, the letter from the National Association of Real Estate Investment Trusts ("NAREIT").

In response to the commenters, we eliminated the requirement that companies disclose their entry into non-binding agreements from this item. n38 We have further replaced the proposed definition of "agreement" with a definition of "material definitive agreement" and have moved this definition from a proposed instruction into Item 1.01(b). We have clarified that only agreements which provide for obligations that are material to and enforceable against a company, or rights that are material to the company and enforceable by the company against one or more other parties to the agreement by the company, are required to be disclosed pursuant to Item 1.01, regardless of whether the material definitive agreement is enforceable subject to stated conditions. n39

n38 We note, however, that there may be instances under our other rules and regulations or applicable case law in

69 FR 15594, *15596

which a company would be required to disclose such non-binding agreements, notwithstanding the absence of a Form 8-K requirement.

n39 Thus, for example, a material definitive agreement which is subject to customary closing conditions, such as the delivery of legal opinions or comfort letters, completion of due diligence or regulatory approval, must be disclosed under Item 1.01 when such agreement is enforceable against or by the company despite the fact that such conditions have not yet been satisfied. However, if a company enters into a non-binding letter of intent or memorandum of understanding that also contains some binding, but non-material elements, such as a confidentiality agreement or a no-shop agreement, the letter or memorandum does not need to be filed because the binding provisions are not material.

We have also eliminated the specific requirements to disclose each party's rights and obligations under the material definitive agreement and the duration and termination provisions of the agreement. To the extent that any of these provisions is material to the company, it must be briefly described under paragraph (a)(2) of the item.

Filing of Exhibits

The proposals would have required a company to file a material agreement required to be disclosed under Item 1.01 as an exhibit to its Form 8-K. We received numerous comments on this proposal. A primary concern of commenters was that companies would not always be able to prepare and submit requests for confidential treatment of sensitive terms of the agreement within the short Form 8-K filing period. n40 They recommended several alternatives, including streamlined treatment of such requests, such as by creating a short-form confidential treatment request process, n41 and delaying the company's obligation to file the exhibit until it files [*15597] its next periodic report. n42 In addition, some commenters were concerned that the process of preparing to submit such lengthy documents in proper EDGAR format would hinder the ability of a company to report the event promptly.

n40 See, for example, the letters from the ABA, NY City Bar and FEI.

n41 See the letter from the NY City Bar.

n42 See, for example, the letters from the AICPA, Compass Bancshares and Sullivan & Cromwell.

In response to these comments, we have eliminated the proposed requirement to file the material agreement as a Form 8-K exhibit. Prior to these amendments, material agreements did not need to be filed until the company's next periodic report as there was no Form 8-K item requiring disclosure of the event. Thus, the amendments do not change current requirements with regard to filing material agreements as exhibits, nor do they affect the process for requesting confidential treatment of terms of those agreements. Given the initial disclosure of the agreement and its material terms, delayed filing of the exhibit should have minimal effect on the utility of the Item 1.01 disclosure. Pursuant to amended Item 601 of Regulation S-K, a company will have to file such agreement as an exhibit to the company's next periodic report or registration statement. n43 However, we encourage companies to file the exhibit with the Form 8-K when feasible, particularly when no confidential treatment is requested.

n43 See General Instruction B.4 to Form 8-K.

Considerations Regarding Business Combinations

New Item 1.01 requires disclosure of all material definitive agreements specified by the item, including business combination agreements and other agreements that relate to extraordinary corporate transactions. The filing of the Form 8-K may constitute the first "public announcement" for purposes of Rule 165 n44 under the Securities Act and Rule 14d-2(b) n45 or Rule 14a-12 n46 under the Exchange Act n47 and thereby trigger a filing obligation under those rules.

n44 *17 CFR 230.165.*

69 FR 15594, *15597

n45 *17 CFR 240.14d-2(b).*

n46 *17 CFR 240.14a-12.*

n47 Rule 165 provides an exemption from Section 5 of the Securities Act for communications relating to the business combination made before the filing of a registration statement in connection with that business combination if all written communications are filed under Securities Act Rule 425 [*17 CFR 230.425*]. Rule 14d-2(b) allows communications by the bidder before the commencement of the tender offer provided that all written communications are filed. Rule 14a-12 allows solicitations to be made before a proxy statement meeting the requirements of Rule 14a-3(a) [*17 CFR 240.14a-3(a)*] is furnished to security holders if the written solicitations are filed.

In the proposing release, we solicited comment on whether Form 8-K should include boxes on the cover page to enable the filer to indicate that the Form 8-K filing also satisfies a separate filing obligation under Rule 165, Rule 14d-2(b) and/or 14a-12. n48 We received favorable comments on this issue. n49 Thus, to avoid duplicative filings, we are amending Form 8-K to enable a company to check one or more boxes on the cover page to indicate that it is simultaneously satisfying its filing obligations under these rules, provided that the Form 8-K contains all of the information required by those rules. n50

n48 The Form 8-K filing must generally include the substantive information and legends required by those rules. The appropriate EDGAR tag (specifically, "425," "TO-C" or "DEFA14A") also will be necessary. An interpretation of the Division of Corporation Finance (see Q&A No. I.B.13, Manual of Publicly Available Telephone Interpretations, Third Supplement, July 2001) stated that a company that files information regarding a business combination on Form 8-K may be required to make a separate filing under Rule 425 [*17 CFR 230.425*]. As of the August 23, 2004 compliance date for these amendments, a separate filing no longer will be necessary if the company indicates on the cover of its Form 8-K report that the filing is intended to satisfy the requirements of Rule 425.

n49 See, for example, the letters from the ABA, NY City Bar, Compass Bancshares, and Sullivan & Cromwell.

n50 As Instruction A.2 to the Form 8-K indicates, however, because the information required by Rule 425(c) would otherwise be present in a Form 8-K report, such information need not be placed in the location specified by Rule 425(c).

Item 1.02 Termination of a Material Definitive Agreement

We are adopting a new Form 8-K item requiring disclosure if a material definitive agreement not made in the ordinary course of business to which a company is a party is terminated, other than by expiration of the agreement on a stated termination date or as a result of all parties completing their obligations under such agreement, and such termination of the agreement is material to the company. In such an event, the company must disclose the following information:

. The date of the termination of the material definitive agreement, the identity of the parties to the agreement and a brief description of any material relationship between the company or its affiliates and any of the parties other than in respect of the material definitive agreement;

. A brief description of the terms and conditions of the agreement that are material to the company;

. A brief description of the material circumstances surrounding the termination; and

. Any material early termination penalties incurred by the company. n51

n51 Disclosure of the termination of a material definitive agreement may be required under this item even if the agreement was not disclosed previously because, for example, the agreement was entered into prior to effectiveness of Item 1.01.

69 FR 15594, *15597

Several commenters believed that an agreement that terminates "by its terms" should not trigger disclosure. n52 We have addressed these concerns by excluding termination as a result of expiration of the agreement on its stated termination date or as a result of completion by all parties of their obligations.

n52 See, for example, the letters from CIGNA Corporation ("CIGNA"), Cleary Gottlieb, John Deere Co. ("John Deere") and Shearman & Sterling.

Commenters also were concerned that one party to an agreement may use this item as a negotiation tool to induce another party to the agreement to modify the agreement on terms more favorable to the first party, or else potentially suffer a negative market reaction to disclosure about termination of the agreement. n53 We believe these comments are addressed by Instruction 1 to Item 1.02 which states that no disclosure is required under the item during negotiations or discussions regarding termination of a material definitive agreement unless and until the agreement has been terminated.

n53 See, for example, the letters from Boeing, Intel, NY City Bar and Sullivan & Cromwell.

In addition, in response to commenters' concerns, we have further clarified in Instruction 2 to Item 1.02 that no disclosure is required under the item if the company believes, in good faith, that the agreement has not been terminated, unless the company has received a notice of termination pursuant to the terms of the agreement. If a company believes in good faith that a material definitive agreement has not been terminated, but determines nevertheless to make disclosure under Item 1.02, the company could disclose under this item a statement of its good faith belief as to any relevant matter, including, for example, that not all conditions to termination have been satisfied or that a termination has otherwise not occurred. In such event, an amendment n54 under this Item 1.02 may be required if the company's conclusion as to termination changes due to a loss of, or change in, its good faith belief.

n54 In such event, the company will have to amend the Form 8-K to provide this updated information within four business days from the date that conclusion changes.

Other commenters were concerned about the proposed requirement to disclose management's analysis of the effect of the termination, which some referred to as a "mini-MD&A." n55 We [*15598] agree with the commenters that in some cases such analysis may be difficult to provide within the abbreviated Form 8-K filing period and may be more relevant and complete when discussed in the context of full financial statements. Thus, we have removed this proposed requirement from specific required terms of the final rule. Nevertheless, any disclosure made in a report on Form 8-K must include all other material information, if any, that is necessary to make the required disclosure, in the light of the circumstances under which it is made, not misleading. n56

n55 These commenters likened the proposed analysis to Item 303 of Regulation S-K, which requires a company to include an MD&A section in periodic filings and registration statements containing financial statements. See the letter from Joseph Grundfest and seven Silicon Valley law firms ("Grundfest Group"), as well as the letters from the ABA, NY City Bar, and NAREIT.

n56 See Rule 12b-20 under the Exchange Act, as well as Exchange Act Section 10(b) [15 U.S.C. 78j(b)] and Rule 10b-5 [17 CFR 240.10b-5] thereunder.

Item 1.03 Bankruptcy or Receivership

This item retains the basic substantive requirements formerly included in Item 3 of Form 8-K regarding a company's entry into bankruptcy or receivership. As proposed, however, we are adopting minor changes to make the item more readable, such as breaking out embedded lists from the text and moving some language currently included in the text into an instruction to the item.

Section 2-Financial Information

69 FR 15594, *15598

### Item 2.01 Completion of Acquisition or Disposition of Assets

This item retains most of the substantive requirements included in former Item 2 of Form 8-K. It requires disclosure if a company, or any of its majority-owned subsidiaries, has acquired or disposed of a significant amount of assets, otherwise than in the ordinary course of business.

We recognize that there will frequently be a relationship between the disclosure provided under this item and the disclosure required by new Item 1.01, "Entry into a Material Definitive Agreement." Typically, a company will report its entry into a material definitive agreement to acquire or dispose of assets under Item 1.01, and then later disclose the closing of the acquisition or disposition transaction under Item 2.01. However, a company will not necessarily be required to provide the Item 2.01 disclosure regarding every material definitive acquisition or disposition agreement disclosed under Item 1.01 as Item 2.01 includes a bright-line reporting threshold that is not included in Item 1.01. Under this threshold, a company need only report a completed acquisition or disposition of assets if the transaction meets the significant asset test as set forth in the item. n57

n57 This test is the same as the test in former Item 2 of Form 8-K. It states that an acquisition or disposition is deemed significant if (1) the company's and its other subsidiaries' equity in the net book value of the assets or the amount paid or received for the assets exceeded 10% of the total assets of the company and its consolidated subsidiaries, or (2) the transaction involved a business that is significant under Regulation S-X.

We received several comments recommending harmonization between the reporting thresholds in Items 1.01 and 2.01. n58 It is our intention, however, that Item 1.01 address a different scope of agreements than those that will trigger disclosure under Item 2.01, which only applies to the acquisition or disposition of assets. We believe that the use of two different thresholds for these items will not cause undue confusion. Indeed, both items use existing thresholds, one from Item 601 of Regulation S-K, the other from former Item 2 of Form 8-K.

n58 See the letters from Compass Bancshares, Kellogg, the New York State Bar Association ("NY State Bar"), Shearman & Sterling and Sullivan & Cromwell.

Several commenters believed that the disclosure requirements regarding the source of funding for an acquisition typically have not produced meaningful disclosure and should be limited to instances where a material relationship exists between the company and the source of the funding. n59 They suggested adding the same type of limitation regarding the disclosure that a company must provide about the formula or principle followed in determining the amount of the consideration involved in the acquisition or disposition. We agree with those commenters and have limited those disclosure requirements to instances in which such a relationship is present.

n59 See the letters from the NY State Bar and Sullivan & Cromwell.

As proposed, this item requires the same basic disclosure formerly required by Item 2 of Form 8-K, except that disclosure no longer is required regarding the nature of the business in which the acquired assets were used and whether the company acquiring the assets intends to continue such use. In addition, while we proposed revision of the disclosure regarding the source of funds used to effect a change in control, we believe that Congress intended for certain procedures to be present with regard to the disclosure of the identity of a bank involved in such a transaction when the bank is loaning funds in the ordinary course of its business. n60 Thus, we are not adopting the proposed changes to this aspect of the item.

n60 See *15 U.S.C. 13*(d)(1)(B).

### Item 2.02 Results of Operations and Financial Condition

We have retained in new Item 2.02 all of the substantive requirements of former Item 12 of Form 8-K regarding public announcements or releases of material non-public information regarding a company's results of operations or

69 FR 15594, *15598

financial condition.

Item 2.03 Creation of a Direct Financial Obligation or an Obligation Under an Off-Balance Sheet Arrangement of a Registrant

This new item requires disclosure of the following information if the company becomes obligated under a direct financial obligation that is material to the company:

. The date on which the company becomes obligated on the direct financial obligation and a brief description of the transaction or agreement creating the obligation;

. The amount of the obligation, including the terms of its payment and, if applicable, a brief description of the material terms under which it may be accelerated or increased and the nature of any recourse provisions that would enable the company to recover from third parties; and

. A brief description of the other terms and conditions of the transaction or agreement that are material to the company.

In addition, if the company becomes directly or contingently liable for an obligation that is material to the company arising out of an off-balance sheet arrangement, it must provide the following information:

. The date on which the company becomes directly or contingently liable on the obligation and a brief description of the transaction or agreement creating the arrangement and obligation;

. A brief description of the nature and amount of the obligation of the company under the arrangement, including the material terms under which it may become a direct obligation, if applicable, or may be accelerated or increased and the nature of any recourse provisions that would enable the company to recover from third parties;

. The maximum potential amount of future payments (undiscounted) that the company may be required to make, if different; n61 and

n61 Instruction 4 to Item 2.03 provides that the maximum amount of future payments may not be reduced by the effect of any amounts that may possibly be recovered by a company under recourse or collateralization provisions in any guarantee agreement, transaction or arrangement. [*15599]

. A brief description of the other terms and conditions of the obligation or arrangement that are material to the company. n62

n62 See generally Financial Accounting Standards Board (FASB) Interpretation No. 45, *Guarantor's Accounting and Disclosure Requirements for Guarantees, Including Indirect Guarantees and Indebtedness of Others.*

The item defines a "direct financial obligation" as any of the following:

. A long-term debt obligation, as defined in Item 303(a)(5)(ii)(A) of Regulation S-K (*17 CFR 229.303(a)(5)(ii)(A)*);

. A capital lease obligation, as defined in Item 303(a)(5)(ii)(B) of Regulation S-K (*17 CFR 229.303(a)(5)(ii)(B)*);

. An operating lease obligation, as defined in Item 303(a)(5)(ii)(C) of Regulation S-K (*17 CFR 229.303(a)(5)(ii)(C)*); or

. A short-term debt obligation that arises other than in the ordinary course of business.

The item refers to Item 303(a)(4)(ii) of Regulation S-K for the definition of the term "off-balance sheet

arrangement." n63 It also defines the term "short-term debt obligation" as a payment obligation under a borrowing arrangement that is scheduled to mature within one year, or, for those companies that use the operating cycle concept of working capital, within a company's operating cycle that is longer than one year, as discussed in Accounting Research Bulletin No. 43, Chapter 3A, *Working Capital.* n64

n63 See paragraph (d) of Item 2.03 of Form 8-K.

n64 This definition is comparable to the definition of "short term obligation" in Statement of Financial Accounting Standards No. 6 (SFAS No. 6), *Classification of Short-Term Obligations Expected to Be Refinanced.* SFAS No. 6 defines "short term obligation" as those obligations that are scheduled to mature within one year after the date of an enterprise's balance sheet or, for those enterprises that use the operating cycle concept of working capital, within an enterprise's operating cycle that is longer than one year.

This new item also contains an instruction clarifying that a company need not file a report under this Item 2.03 until the company enters into an agreement enforceable against it, whether or not subject to conditions, under which the direct financial obligation will arise or be created or issued. If there is no such agreement, the company must provide the disclosure within four business days after the occurrence of the closing or settlement of the transaction or arrangement under which the direct financial obligation arises or is created. n65

n65 See Instruction 1 to Item 2.03 of Form 8-K.

Another instruction clarifies that a company must provide the disclosure required regarding off-balance sheet arrangements, whether or not the company is also a party to the transaction or agreement creating the contingent obligation arising under the off-balance sheet arrangement. n66 In the event that neither the company nor any affiliate of the company is also a party to the transaction or agreement creating the contingent obligation arising under the off-balance arrangement in question, the four business day period for reporting the event under this Item 2.03 would begin on the earlier of (i) the fourth business day after the contingent obligation is created or arises, and (ii) the day on which an executive officer n67 of the company becomes aware of the contingent obligation. n68

n66 For example, assume Company A enters into an agreement with Bank B pursuant to which Company A agrees with Bank B that Company C, an unconsolidated subsidiary of Company A, will maintain equity of at least $ 1. Six months later, Company C borrows $ 100 million from Bank B. Three months later, Company C defaults on its debt obligation to Bank B. In this fact pattern, upon entering into the initial agreement with Bank B, Company A would generally have no disclosure requirement under Item 2.03 on Form 8-K. However, when Company C borrows $ 100 million from Bank B, Company A will be required to file a Form 8-K under Item 2.03 as Company A has become contingently liable for an obligation arising out of an off-balance sheet arrangement, assuming such contingent obligation is material to Company A. Upon Company C's default on it debt obligation to Bank B, a further Form 8-K filing obligation will be required under Item 2.04, as discussed below, as a contingent obligation of Company A has become a direct financial obligation, assuming such direct financial obligation is material to Company A.

n67 The term "executive officer" is defined in Exchange Act Rule 3b-7 (*17 CFR 240.3b-7*).

n68 See Instruction 2 to Item 2.03 of Form 8-K.

The third instruction clarifies that if the company enters into a facility, program or similar arrangement that creates or may give rise to direct financial obligations in connection with multiple transactions, the company must disclose the entering into of the facility, program or similar arrangement, and disclose its obligations, to the extent the obligations are material, as they arise or are created under the facility or program (including when a series of previously undisclosed individually immaterial obligations become material in the aggregate). n69

n69 See Instruction 3 to Item 2.03 of Form 8-K.

69 FR 15594, *15599

A final instruction n70 provides that if the obligation required to be disclosed under this Item 2.03 is a security, or a term of a security, that has been or will be sold pursuant to an effective registration statement of the company, the company is not required to file a Form 8-K pursuant to the item, provided that the prospectus relating to the sale contains the information required by this item and is filed within the required time period under Securities Act Rule 424. n71

n70 See Instruction 5 to Item 2.03 of Form 8-K.

n71 *17 CFR 230.424.*

We received numerous comments on this item. Many commenters requested clarification regarding the scope of obligations covered by this item. n72 Since we proposed the amendments, we have adopted new rules requiring a company to provide disclosure about its off-balance sheet arrangements. n73 Those rules define the term "off-balance sheet arrangement." Because these are the types of contingent obligations about which Item 2.03 seeks disclosure, new Item 2.03 incorporates the definition of "off-balance sheet arrangement" used in Item 303(a)(4)(ii) of Regulation S-K.

n72 See, for example, the letters from the ABA, Emerson, Intel, NY State Bar and Sullivan & Cromwell.

n73 Release No. 33-8182 (January 28, 2003) *(68 FR 5982).*

The new off-balance sheet arrangement disclosure rules also require disclosure of certain direct financial obligations in tabular form. We have revised the definition of "direct financial obligation" to refer to much of the same accounting literature used in these rules. We believe this approach will encourage consistency and reduce confusion regarding the scope of this item.

Item 2.04 Triggering Events That Accelerate or Increase a Direct Financial Obligation or an Obligation Under an Off-Balance Sheet Arrangement.

This new item requires a company to file a Form 8-K report if a triggering event causing the increase or acceleration of a direct financial obligation of the company occurs and the consequences of the event are material to the company. In such case, the company must provide the following information:

. The date of the triggering event and a brief description of the agreement or transaction under which the direct financial obligation was created and is increased or accelerated;

. A brief description of the triggering event;

. The amount of the direct financial obligation, as increased if applicable, and the terms of payment or acceleration that apply; and

. Any other material obligations of the company that may arise, increase, be accelerated or become direct financial obligations as a result of the triggering event or the increase or acceleration of the direct financial obligation.

Also, if a triggering event occurs causing a company's obligation under [*15600] an off-balance sheet arrangement to increase or be accelerated, or causing a company's contingent obligation under an off-balance sheet arrangement to become a direct financial obligation of the company, and the consequences of such event are material to the company, it must disclose the following information:

. The date of the triggering event and a brief description of the off-balance sheet arrangement;

. A brief description of the triggering event;

. The nature and amount of the obligation, as increased if applicable, and the terms of payment or acceleration that

69 FR 15594, *15600

apply; and

. Any other material obligations of the company that may arise, increase, be accelerated or become direct financial obligations as a result of the triggering event or the increase or acceleration of the obligation under the off-balance sheet arrangement or its becoming a direct financial obligation of the company.

Item 2.04 defines the term "direct financial obligation" by reference to the definition provided in Item 2.03, but adds for purposes of Item 2.04 that such term includes an obligation arising out of an off-balance sheet arrangement that is accrued under the FASB Statement of Financial Accounting Standards No. 5, *Accounting for Contingencies* n74 (SFAS No. 5) as a probable loss contingency. "Off-balance sheet arrangement" is defined by reference to the definition provided in Item 2.03. n75 Finally, Item 2.04(e) defines the term "triggering event" as an event, including an event of default, event of acceleration or similar event, as a result of which a direct financial obligation of the company or an obligation of the company arising under an off-balance sheet arrangement is increased or becomes accelerated or as a result of which a contingent obligation of the company arising out of an off-balance sheet arrangement becomes a direct financial obligation of the company.

n74 74 See Item 2.04(c).

n75 75 See Item 2.04(d).

We have added four instructions to this item. Similar to Item 2.03, the first instruction clarifies that disclosure is required if a triggering event occurs in respect of the company's obligation under an off-balance sheet arrangement and the consequences are material to the company, whether or not the company is also a party to the transaction or agreement under which the triggering event occurs. n76 The second instruction states that no disclosure is required unless and until a triggering event has occurred in accordance with the terms of the relevant agreement, transaction or arrangement, including, if required, the sending to the company of notice of the occurrence of a triggering event pursuant to the terms of the agreement, transaction or arrangement and the satisfaction of all conditions to such occurrence, except the passage of time.

n76 See, for example, note 66 above.

The third instruction provides that, similar to new Item 1.02 of Form 8-K, no disclosure is required if the company believes, in good faith, that no triggering event has occurred, unless the company has received a notice as described in Instruction 2 to Item 2.04. Similar to Item 1.02, a company may wish to disclose under this Item 2.04 a statement of its good faith belief as to any relevant matter, including, for example, that not all conditions to occurrence of a triggering event have been satisfied or that a triggering event otherwise has not occurred. In such event, an amendment under this Item 2.04 may be required if the company's conclusion as to the triggering event changes due to a loss of, or change in, its good faith. n77

n77 In such event, the company would have to amend the Form 8-K to provide this updated information within four business days from the date that its conclusion changes.

Finally, Instruction 4 to Item 2.04 explains that, if a company is subject to an obligation arising out of an off-balance sheet arrangement, whether or not disclosed pursuant to Item 2.03, if a triggering event occurs as a result of which under that obligation an accrual for a probable loss is required under SFAS No. 5, the obligation arising out of the off-balance sheet arrangement becomes a direct financial obligation for purposes of Item 2.04. In this situation, if the consequences as determined under Item 2.04(b) are material to the company, disclosure is required under Item 2.04.

Similar to those who objected to the proposed analysis provision in Item 1.02, one commenter opposed requiring disclosure of management's analysis of the effect of the triggering event on the company. n78 Again, we agree that it is appropriate to delete this requirement as a specific term of this Form 8-K item. We once again, however, remind companies that any disclosure made in a report on Form 8-K must include all other material information, if any, that is

69 FR 15594, *15600

necessary to make the required disclosure, in the light of the circumstances under which it is made, not misleading. n79

n78 See the letter from the ABA.

n79 See Rule 12b-20 under the Exchange Act, as well as Exchange Act Section 10(b) and Rule 10b-5 thereunder.

Item 2.05 Costs Associated With Exit or Disposal Activities

This new item requires disclosure when the board of directors, a committee of the board of directors, or an authorized officer or officers if board action is not required, commits the company to an exit or disposal plan or otherwise disposes of a long-lived asset or terminates employees under a plan of termination described in paragraph 8 of FASB Statement of Financial Accounting Standards No. 146 *Accounting for Costs Associated with Exit or Disposal Activities* (SFAS No. 146), under which material charges will be incurred under generally accepted accounting principles applicable to the company. The item requires a company to disclose:

. The date of the commitment to the course of action and a description of the course of action, including the facts and circumstances leading to the expected action and the expected completion date;

. For each major type of cost associated with the course of action (for example, one-time termination benefits, contract termination costs and other associated costs), an estimate of the total amount or range of amounts expected to be incurred in connection with the action;

. An estimate of the total amount or range of amounts expected to be incurred in connection with the action; and

. The company's estimate of the amount or range of amounts of the charge that will result in future cash expenditures.

If at the time of filing the company is unable to make a good faith estimate of the amount of the charges, it need not disclose an estimate at that time, but must nevertheless file the Form 8-K report describing the company's commitment to a course of action under which it will incur a material charge. Within four business days after the company formulates an estimate, the company must amend its earlier Form 8-K filing to include the estimate.

We initially proposed that disclosure under Item 2.05 would have been triggered upon a "definitive" commitment of the company to a course of action. We have eliminated the term "definitive" because we believe that the term "commitment" by itself adequately conveys the idea that a company has [*15601] made a final determination regarding a course of action.

A number of commenters opposed this item. They noted that such events can occur over time, making it difficult to determine the exact date of the triggering event. n80 They suggested that it would be more appropriate for this type of disclosure to appear in a company's periodic reports. We believe that it is important for investors to receive this information on a current basis and that, by tying the Form 8-K filing requirement to the board's, committee's or officers' determination, the timing of the disclosure is sufficiently precise.

n80 See the letters from the New York State Society of Certified Public Accountants ("NYSSCPA") and Radin, Glass & Co. ("Radin Glass").

One commenter believed that a discussion of a single piece of financial information outside of the context of the complete financial statements would be difficult and potentially misleading. n81 Nonetheless, we believe that the occurrence of these events are important to investors making investment decisions. Others noted that a company often may not have estimated of the relevant charges at the time the plan is adopted. n82 We acknowledge this possibility and thus have revised the item to permit later disclosure of such estimates within four business days after they are determined.

69 FR 15594, *15601

n81 See the letter from Shearman & Sterling.

n82 See the letters from the AICPA, Cleary Gottlieb, Deloitte & Touche and FPL Group, Inc. ("FPL Group").

Other commenters noted that, since we proposed this item, FASB has issued SFAS No. 146 which changed previous requirements regarding the timing of recognition of costs associated with exit or disposal activities. n83 SFAS No. 146, however, also requires disclosure of such events, prior to recognition, similar to that required in this item. n84 We have revised the disclosure requirements to more closely track the disclosures required in the footnotes to the financial statements required by SFAS No. 146. Thus, we do not believe that this item is inconsistent with current accounting literature, particularly in light of the added flexibility we have granted with regard to estimates.

n83 See the letters from the AICPA, Compass Bancshares, FEI, Intel and PWC.

n84 Paragraph 20 of SFAS No. 146 requires companies to disclose specified information in the notes to financial statements to periodic reports covering periods in which an exit or disposal activity is initiated. Paragraph 21 of SFAS No. 146 states that an exit or disposal activity is initiated when management, having the authority to approve the action, commits to an exit or disposal plan or otherwise disposes of a long-lived asset.

Commenters were also concerned about the requirement that management provide an analysis, or "mini-MD&A," of the effect of this event on the company. n85 Consistent with similar revisions that we have made to Items 1.02 and 2.04, we have eliminated this specific disclosure provision from the Item 2.05 disclosure requirements. Once again, we remind companies that any disclosure made in a report on Form 8-K must include all other material information, if any, that is necessary to make the required disclosure, in the light of the circumstances under which it is made, not misleading. n86

n85 See the letters from the FPL Group, PWC and Radin Glass.

n86 See Exchange Act Section 10(b) and Rule 10b-5 as well as Rule 12b-20 under the Exchange Act.

Finally, commenters recommended that we not use the terms "write-off" or "restructuring" in Item 2.05 as such terms are not defined in the accounting literature. n87 We have revised the title and references in the item to reflect these comments and use terminology consistent with those used in the accounting literature.

n87 See the letters from Ernst & Young and KPMG.

Item 2.06 Material Impairments

This new item requires disclosure when a company's board of directors, a committee of the board of directors, or an authorized officer or officers if the company, if board action is not required, concludes that a material charge for impairment to one or more of its assets, including, without limitation, an impairment of securities or goodwill, is required under generally accepted accounting principles applicable to the company. Specifically, the company must:

. Disclose the date of the conclusion that a material charge is required and describe the impaired asset or assets and the facts and circumstances leading to the conclusion that the charge for impairment is required;

. Disclose the company's estimate of the amount or range of amounts of the impairment charge; and

. Disclose the company's estimate of the amount or range of amounts of the impairment charge that will result in future cash expenditures.

Comments on this item paralleled those on Item 2.05. We have made similar revisions to this item in response by providing greater flexibility regarding timing of the disclosure of estimates and eliminating the proposed "mini-MD&A" requirement.

69 FR 15594, *15601

We also recognize that tests for impairment or recoverability often occur in conjunction with the preparation, review or audit of financial statements. In light of the fact that a periodic report with complete financial statements will be made available to the public, we have added an instruction indicating that no Form 8-K disclosure is required pursuant to this item if the conclusion regarding the material charge is made in connection with the preparation, review or audit of financial statements at the end of a fiscal quarter or year and the plan is disclosed in the company's Exchange Act report for that period. n88

n88 See Instruction to Item 2.06.

Section 3-Securities and Trading Market

Item 3.01 Notice of Delisting or Failure To Satisfy a Continued Listing Rule or Standard; Transfer of Listing

New Item 3.01(a) requires a company to report its receipt of a notice from the national securities exchange or national securities association (or facility thereof) that maintains the principal listing for any class of the company's common equity, n89 indicating that:

n89 This term is defined in Exchange Act Rule 12b-2 [*17 CFR 240.12b-2*].

. The company or such class of its securities does not satisfy a rule or standard for continued listing on the exchange or association;

. The exchange has submitted an application under Exchange Act Rule 12d2-2 to the Commission to delist such class of the company's securities; or

. The association has taken all necessary steps under its rules to delist the security from its automated inter-dealer quotation system. n90

n90 We note that Instruction 3 to Item 3.01 provides that companies whose securities are quoted exclusively (*i.e.*, the securities are not otherwise listed on an exchange or association) on automated inter-dealer quotation systems, such as the over-the-counter bulletin board, or OTCBB, and The Electronic Pink Sheets, are not subject to Item 3.01. Thus, these companies will not be required to file a Form 8-K pursuant to Item 3.01 if the securities cease to be quoted on such quotation system. These quotation systems do not provide companies with the ability to list their securities, but, rather, serve as a medium for the over-the-counter securities market by collecting and distributing market maker quotes to subscribers. These automated inter-dealer quotation systems do not maintain or impose listing standards, nor do they have a listing agreement or arrangement with the companies whose securities are quoted through them. Although market makers may be required to review and maintain specified information about a company and to furnish that information to the inter-dealer quotation system, the companies whose securities are quoted on such systems do not have any filing or reporting requirements imposed by the system. In some cases, however, a security that is listed on an exchange or association may also be quoted on such an automated inter-dealer quotation system. In that case, the company is be subject to Item 3.01 if any of the events specified in Item 3.01 occur.

A company that receives this type of a notice must disclose the following information:

. The date that it received the notice;  [*15602]

. The rule or standard for continued listing on the national securities exchange or national securities association that the company fails, or has failed, to satisfy; and

. Any action or response that, at the time of filing, the company has determined to take in response to the notice.

In addition, under Item 3.01(b), if the company n91 has notified the national securities exchange or national

securities association (or a facility thereof) that maintains the principal listing for any class of the company's common equity that the company is aware of any material noncompliance with a rule or standard for continued listing on the exchange or association, the company must disclose:

n91 Disclosure pursuant to this Item 3.01(b) is required if a particular exchange or association rule specifically provides that a particular officer or other authorized individual, such as the chief executive officer, must provide the notice to the exchange or association, rather than the company itself.

. The date that the company provided such notice to the exchange or association;

. A rule or standard for continued listing on the exchange or association that the registrant fails, or has failed, to satisfy; and

. Any action or response that, at the time of filing, the company has determined to take regarding its noncompliance.

Furthermore, under Item 3.01(c), if a national securities exchange or national securities association (or a facility thereof) that maintains the principal listing for any class of the company's common equity, in lieu of suspending trading in or delisting such class of the company's securities, issues a public reprimand letter or similar communication indicating that the company has violated a rule or standard of the exchange or association, the company must state the date and summarize the contents of the letter or communication.

Finally, Item 3.01(d) requires that, if the company's board of directors, a committee of the board of directors or the officer or officers of the company authorized to take such action if board action is not required, has taken definitive action to cause the listing of a class of its common equity to be withdrawn from the national securities exchange, or terminated from the automated inter-dealer quotation system of a registered national securities association, where such exchange or association maintains the principal listing for such class of securities, the company must describe the action taken and state the date of the action.

This requirement includes disclosure of action taken by a company to transfer such listing or quotation of its securities to another securities exchange or quotation system. The definitive action taken by the company may also include the adoption of a resolution by the board of directors, or committee of the board, to delist the class of securities.

Pursuant to Instruction 1 to Item 3.01, the company is not required to disclose any information required by paragraph (a) of Item 3.01 where, generally, the delisting is a result of one of the following:

. The entire class of the security has been called for redemption, maturity or retirement and, if required by the terms of the securities, funds sufficient for the payment of all such securities have been deposited with an agency authorized to make such payments and such funds have been made available to security holders;

. The entire class of the security has been redeemed or paid at maturity or retirement;

. The instruments representing the entire class of securities have come to evidence, by operation of law or otherwise, other securities in substitution therefor and represent no other right, except, if true, the right to receive an immediate cash payment; or

. All rights pertaining to the entire class of the security have been extinguished.

These exceptions are specifically referenced in Rule 12d2-2, the rule pursuant to which national securities exchanges file applications with the Commission to delist a security from the exchange.

In addition, Instruction 2 to Item 3.01 provides that a company must provide the disclosure required by paragraph (a) or (b) of this Item 3.01, as applicable, regarding any failure to satisfy a rule or standard for continued listing on the

national securities exchange or national securities association (or a facility thereof) that maintains the principal listing for any class of the company's common equity even if the company has the benefit of a grace period or similar extension period during which it may cure the deficiency that triggers the disclosure requirement.

We had proposed to require companies to disclose notifications by an exchange or association of delisting or noncompliance with required listing requirements or standards. Since the time that the Form 8-K proposals were issued, we approved new rules n92 submitted by the New York Stock Exchange, the National Association of Securities Dealers, on behalf of The Nasdaq Stock Market, and the American Stock Exchange that require listed companies to notify the relevant market when an executive officer of the listed issuer becomes aware of any material noncompliance with the listing rules or standards relating to corporate governance. n93 In addition, as part of its recent amendments pertaining to corporate governance listing standards, the NYSE may issue a public reprimand letter to listed issuers that violate specified listing rules or standards. n94 This public reprimand letter is intended to serve as a lesser sanction than the delisting of the issuer's securities.

n92 See, for example, Release No. 34-48745 (November 4, 2003) *[68 FR 64154]*.

n93 See, for example, Rule 303A.12(b) of the NYSE Listing Manual and Rule 4350(m) of The Nasdaq Stock Market, Inc. Marketplace Rules.

n94 See Rule 303A.13 of the NYSE Listing Manual.

Furthermore, Exchange Act Rule 10A-3(a)(4) n95 requires an exchange or association to adopt standards requiring listed companies to notify the exchange or association promptly after an executive officer of the listed issuer becomes aware of any material noncompliance by the listed company with the requirements of the rule. In addition, under certain exchange or association listing standards or agreements, a listed company may be generally required to notify the exchange or association in the event they no longer comply with a particular listing standard. As a result, we believe the inclusion of Items 3.01(b) and (c) is necessary to ensure that all communications between a company and an exchange or association regarding delisting matters or noncompliance with a rule or standard for continued listing are disclosed.

n95 *17 CFR 240.10A-3(a)(4)*. Rule 10A-3 requires the rules of each registered national securities exchange and national securities association to prohibit the initial or continued listing of any security of a company that is not in compliance with the audit committee requirements of Rule 10A-3.

In response to commenters, we have clarified that the relevant listing requirements or standards for this item are the rules or standards for continued listing on the exchange or association. Typically, exchanges and quotation systems have different standards for determining whether a security is qualified to enter the exchange or quotation system than for determining whether a security can remain listed. Because the entry standards are not relevant to whether the securities may continue trading on such exchange or [*15603] quotation system, we have made this clarification.

Also, in response to commenters, we have revised the third element of the disclosure requirements regarding any action that the company has determined to take in response to a notice of delisting or failure to satisfy a listing standard. Commenters noted that, in light of the short Form 8-K filing deadline, a company may not have sufficient time to determine its course of action or to fully analyze the effect of such delisting on the company. n96 Thus, the item only requires identification of the company's anticipated action or response as of the Form 8-K filing date. n97 In addition, to clarify when an event triggering disclosure under new Item 3.01 occurs, we have revised the language in the item to more closely track and reference delisting rules and delisting procedures. n98

n96 See the letters from the Grundfest Group and NY State Bar.

n97 A company may, of course, voluntarily file an amendment to the previously filed Form 8-K regarding any changes to the anticipated action or response.

69 FR 15594, *15603

n98 The item now specifically references provisions of Rule 12d2-2, pursuant to which national securities exchanges file applications with the Commission to delist a security from that exchange.

Some commenters believed that the filing of a letter from the exchange or association as a Form 8-K exhibit would not significantly enhance the disclosures already required to be made by the company. n99 In response, we are not adopting the proposed provision that companies file the actual written notice received from the exchange or association as an exhibit.

n99 See the letters from the ABA, Investment Counsel Association of America ("ICAA") and Shearman & Sterling.

One commenter requested clarification that "early warning" notices should not trigger disclosure. n100 While we agree with this commenter, we believe that the language of the item is clear in this regard. An early warning notice that merely informs the company that it is in danger of falling out of compliance with a rule or standard for continued listing on the exchange or association is not a notice that the company no longer satisfies that rule or standard. Thus, a company's receipt of such a notice will not trigger a disclosure obligation under the item. However, if the warning notice informs the company that it is out of compliance with a rule or standard for continued listing, but that the company will not be delisted if it cures the problem within a specified time, such a notice will trigger a Form 8-K filing requirement.

n100 See the letter from the NY State Bar.

As a result, we generally anticipate two filings in the typical involuntary delisting process under Items 3.01(a) and (b). An initial filing will be made when the company receives the first notice that it does not comply with a rule or standard for continued listing, or when it notifies the exchange or association that it no longer complies with a rule or standard for continued listing on the exchange or association. n101 A second Form 8-K filing will be required under Item 3.01(a) upon the company's receipt of a notice regarding the actual delisting of a class of the company's securities. n102

n101 Instruction 3 to Item 3.01 states that subsequent notices or other communications that continue to indicate that the company does not comply with the same rule or standard for continued listing that was the subject of the initial notice are not required to be filed, but may be filed voluntarily.

n102 We note that Item 3.01 refers to a national securities exchange or a national securities association (or a facility thereof). Thus, for example, a notification by The Nasdaq Stock Market that a company does not satisfy a rule or standard for continued listing on Nasdaq, if Nasdaq maintains the principal listing of any class of the company's common equity, would be subject to Item 3.01.

Item 3.02 Unregistered Sales of Equity Securities

This new item requires a company to disclose the information specified in paragraphs (a) and (c) through (e) of Item 701 of Regulation S-K regarding the company's sale of equity securities in a transaction that is not registered under the Securities Act. This disclosure is currently required in Item 2(c) of Forms 10-Q and 10-QSB and Item 5(a) of Forms 10-K and 10-KSB. n103

n103 See 17 CFR 249.308a, 249.308b, 249.310 and 249.310a.

The amendments to Form 8-K will require earlier disclosure of certain issuances of unregistered equity securities, as discussed below. We believe that more timely disclosure of such issuances will benefit investors due to the fact that unregistered sales of equity securities can have a significant effect on the capital structure of the company and the security holdings of existing investors. Issuances not reported on Form 8-K, however, will continue to be required to be reported in periodic reports.

69 FR 15594, *15603

In response to concerns raised by commenters, n104 we have limited the disclosure of sale of unregistered equity securities required to be filed on Form 8-K. Under the new item, no Form 8-K need be filed if the equity securities sold in the aggregate since the company's last report filed under this item or last periodic report, whichever is more recent, constitute less than 1% of the company's outstanding securities of that class. n105 In the case of a small business issuer, n106 if the securities sold in the aggregate since the small business issuer's last report filed under this item or last periodic report, whichever is more recent, constitute less than 5% of the small business issuer's outstanding securities of that class, the information need not be disclosed on Form 8-K. We believe that these quantitative thresholds are appropriate given that companies will be required to continue to report all other unregistered sales of equity securities in their periodic reports.

n104 See, for example, the letters from the ABA, Compass Bancshares, Deloitte & Touche and John Deere.

n105 Instruction 2 to Item 3.02 states that "the number of shares outstanding" refers to the actual number of shares of equity securities of the class outstanding and does not include outstanding securities convertible into or exchangeable for such equity securities.

n106 As defined under Item 10(a)(1) of Regulation S-B [*17 CFR 228.10(a)(1)*]. See Instruction 3 to Item 3.02.

For purposes of determining the required Form 8-K filing date under this item, we have provided that a company has no obligation to disclose information under Item 3.02 until the company enters into an agreement enforceable against it, whether or not subject to conditions, under which the equity securities are to be sold. If there is no such agreement, the company must provide the disclosure within four business days after the occurrence of the closing or settlement of the transaction or arrangement under which the equity securities are sold.

Commenters suggested that issuances of unreported equity securities through conversion and similar transactions should not require an Item 8-K filing. We believe that, given the 1% and 5% thresholds we have adopted and the importance of equity security issuances, these types of transactions should be covered.

Item 3.03 Material Modifications to Rights of Security Holders

This new item requires a company to disclose material modifications to the rights of the holders of any class of the company's registered securities and to briefly describe the general effect of such modifications on such rights. The substance of the disclosure is the same as previously required by Items 2(a) and (b) of Forms 10-Q and 10-QSB. n107

n107 See *17 CFR 249.308a* and *249.308b*.

We proposed to eliminate an existing instruction regarding working capital restrictions and other limitations upon [*15604] the payment of dividends because we believed that it was clear that such restrictions and limitations constitute material modifications to the rights of security holders. One commenter disagreed and recommended that we keep the instruction. n108 To clarify that this item requires disclosure of such provisions, we are including the existing instruction in the new item.

n108 See the letter from Shearman & Sterling.

The proposals would not have required disclosure about a particular material modification to the rights of security holders if the company previously had described the modification in its proxy statement at the time it proposed the modification. One commenter noted that, although the proposed modification would have been disclosed, investors would not be informed as to whether the proposal had been approved by shareholders and ultimately adopted by the company until the company filed its next required periodic report. n109 In response to this comment, we have eliminated this exception from Item 3.02. In addition, once a company has reported a material modification to the rights of its security holders on Form 8-K, the company need not make any duplicative disclosure about the modification in any of its subsequently filed periodic reports. n110

69 FR 15594, *15604

n109 See the letter from the NY State Bar.

n110 See Instruction B.3 to Form 8-K.

Section 4-Matters Related to Accountants and Financial Statements

Item 4.01 Changes in Registrant's Certifying Accountant

This item is substantively the same as former Item 4 of Form 8-K, requiring disclosure of the resignation, dismissal or engagement of an independent accountant. The only revision we have made to the substantive requirements of former Item 4 is to delete the phrase "and the related instructions to Item 304" as a company routinely needs to consider and comply with the instructions to all of our disclosure items containing instructions.

Item 4.02 Non-Reliance on Previously Issued Financial Statements or a Related Audit Report or Completed Interim Review

This new item requires a company to file a Form 8-K if and when its board of directors, a committee of the board of directors, or an authorized officer or officers if board action is not required, concludes that any of the company's previously issued financial statements covering one or more years or interim periods no longer should be relied upon because of an error in such financial statements as addressed in Accounting Principles Board Opinion No. 20 (APB Opinion No. 20). This item requires the company to disclose the following information:

. The date of the conclusion regarding the non-reliance and an identification of the financial statements and years or periods covered that should no longer be relied upon;

. A brief description of the facts underlying the conclusion to the extent known to the company at the time of filing; and

. A statement of whether the audit committee, or the board of directors in the absence of an audit committee, or authorized officer or officers, discussed with the company's independent accountant the subject matter giving rise to the conclusion.

Similarly, if the company is advised by, or receives notice from, its independent accountant that disclosure should be made or action should be taken to prevent future reliance on a previously issued audit report or completed interim review related to previously issued financial statements, it must disclose the following information:

. The date on which the company was so advised or notified;

. Identification of the financial statements that should no longer be relied upon;

. A brief description of the information provided by the accountant; and

. A statement of whether the audit committee, or the board of directors in the absence of an audit committee, or authorized officer or officers, discussed with the independent accountant the subject matter giving rise to the notice.

In addition, if the company receives such an advice or notice from its independent accountant, the company must provide the independent accountant with a copy of the disclosures it is making under Item 4.02(b) no later than the same day it files these disclosures with the Commission. The company also must request the independent accountant to furnish to the company as promptly as possible a letter addressed to the Commission stating whether the accountant agrees with the statements made by the company and, if not, stating the respects in which it does not agree. The company must then amend its previously filed Form 8-K by filing the independent accountant's letter as an exhibit to the filed Form 8-K within two business days of the company's receipt of the letter.

69 FR 15594, *15604

Commenters believed that the scope of the proposed item was too broad. Specifically, one commenter noted that there are some circumstances under which a company may need to restate its financial statements, or accountants may refuse to allow reliance on their reports, that do not implicate a problem with the financial statements. n111 For example, a company may be required to restate its financial statements as a result of the completion of a stock split. n112 In response to these comments, we have modified this item to require disclosure under Item 4.02(a) where the company concludes that a prior statement should not be relied on because of an error or, under Item 4.02(b), where an independent accountant has notified a company that it should take action to prevent future reliance on previously issued financial statements audited or reviewed by the accountant.

n111 See the letter from the ABA.

n112 Another example would include a plan to discontinue operations (see Statement of Financial Accounting Standards No. 144, *Accounting for the Impairment or Disposal of Long-Lived Assets*). As these examples illustrate, certain events that occur after the end of a fiscal year may require retroactive restatement of that year's financial statements if such statements are reissued, but are not events that would trigger disclosure under Item 4.02.

Commenters also opposed the proposed requirement that a company disclose its plan to address the issue. They were concerned that, within the short Form 8-K filing timeframe, the company may not have sufficient time to complete its analysis regarding the impact of the error on the company's financial statements, which could require discussions with numerous parties, including the accountants. n113 We agree with those commenters and have revised this item to eliminate this proposed requirement. n114

n113 See the letters from Foley Hoag and Radin Glass.

n114 Regarding the requirement of a company to disclose under Item 4.02(a) a brief description of the facts underlying the conclusion to the extent known to the company at the time of filing, a company may, of course, voluntarily file an amendment to the previously filed Form 8-K regarding any changes to the facts underlying the conclusion.

We have also separated the situation in which the company makes the determination internally regarding non-reliance on its financial statements from that in which the company's independent accountant notifies the company of non-reliance on a previously issued audit report or completed interim review by including them in two different paragraphs to clarify the requirements of the item.  [*15605]

Section 5-Corporate Governance and Management

Item 5.01 Changes in Control of Registrant

We are adopting this pre-existing item of Form 8-K substantially as proposed. We are not adopting the proposed revision regarding the source of funds used to effect a change in control due to the Congressional intent issue discussed under Item 2.01 above. We have, however, streamlined the language of the item to make it read more clearly. We have also not included the proposed instruction to Item 5.01 stating that disclosure pursuant to this item could be provided by incorporation by reference to a previous filing. We believe that Instruction B.3 to Form 8-K makes this clear.

Item 5.02 Departure of Directors or Principal Officers; Election of Directors; Appointment of Principal Officers

a. Disclosure under Item 5.02(a) when a director resigns or refuses to stand for re-election due to a disagreement or is removed for cause.

Paragraph (a) of Item 5.02 broadens the scope of former Item 6 of Form 8-K. Former Item 6 required disclosure only if a director departed as a result of a disagreement, provided a letter to the company describing the disagreement and then requested that the company publicly disclose the matter. Thus, the action necessary to trigger disclosure

69 FR 15594, *15605

pursuant to the former item rested solely with the director.

Under the revised item, if a director has resigned or refuses to stand for re-election to the board of directors since the date of the last annual meeting of shareholders because of a disagreement with the company, known to an executive officer of the company, n115 on any matter relating to the company's operations, policies or practices, or if a director has been removed for cause from the board of directors, the company must disclose:

n115 The term "executive officer" is defined in Exchange Act Rule 3b-7.

. The date of the director's resignation, refusal to stand for re-election or removal;

. Any positions held by the director on any committee of the board of directors at the time of the director's resignation, refusal to stand for re-election or removal; and

. A brief description of the circumstances representing the disagreement that management believes caused, in whole or in part, the director's resignation, refusal to stand for re-election or removal.

In addition, if the director furnishes the company with any written correspondence concerning the circumstances surrounding his or her resignation, refusal or removal, the company must file a copy of the correspondence as an exhibit to the report on Form 8-K regardless of whether the director requests that the company take such action. The company must provide the director with a copy of the disclosures it is making in response to this item no later than the day that the company files the disclosures with the Commission. The company must also provide the director with the opportunity to furnish a letter addressed to the company as promptly as possible stating whether he or she agrees with the company's disclosures in response to this item and, if not, the respects in which he or she does not agree. Finally, the company must file any letter it receives from the director with the Commission as an exhibit by amendment to the previously filed Form 8-K within two business days after receipt by the company.

Several commenters were concerned that the company may not be aware that the director departed because of a disagreement. n116 We believe that the phrase "known to an executive officer of the company" means that the company must be aware of the disagreement. As such, we have adopted this provision of Item 5.02(a) as proposed.

n116 See the letters from Cleary Gottlieb, Radin Glass and Shearman & Sterling.

b. Disclosure under Item 5.02(b) when certain officers retire, resign or are terminated and disclosure when a director retires, resigns, is removed or refuses to stand for re-election for any reason other than as a result of a disagreement or for cause.

Paragraph (b) of Item 5.02 requires disclosure when the company's principal executive officer, president, principal financial officer, principal accounting officer, principal operating officer or any person performing similar functions retires, resigns, or is terminated from that position. The item also requires disclosure when a director retires, resigns, is removed or declines to stand for re-election and the company is not required to provide disclosure under Item 5.02(a).

Several commenters were concerned about our proposal to require disclosure of the reasons for the departure of an officer. n117 They noted that requiring disclosure of reasons such as personal infirmity may cause unnecessary embarrassment to the departing officer. Some commenters similarly suggested that, if the officer leaves for reasons other than those disclosed by the company, such disclosure potentially could lead to a defamation action by the officer against the company. Other commenters believed that requiring disclosure of a disagreement regarding matters such as company policy or strategy between two officers would usurp the typical corporate decision-making process. We believe these concerns are valid and have therefore eliminated this proposed requirement.

n117 See, for example, the letters from the ABA, Cleary Gottlieb, D'Ancona & Pflaum, Grundfest Group, Kellogg, Sullivan & Cromwell and Wells Fargo.

69 FR 15594, *15605

c. Disclosure under Item 5.02(c) and (d) when the registrant appoints certain new officers or a new director is elected.

Paragraph (c) of Item 5.02 requires disclosure if the company appoints a new principal executive officer, president, principal financial officer, principal accounting officer, principal operating officer or person performing similar functions. The company must disclose the officer's name, position, the date of the appointment, information regarding the background of the officer and certain related transactions with the company, n118 and a brief description of the material terms of any employment agreement between the company and the officer.

n118 Specifically, Item 5.02(c) requires disclosure of the information required by Items 401(b), 401(d), 401(e) and 404(a) of Regulation S-K *[17 CFR 229.401(b)*, (d) and (e) and 229.404(a)], or, in the case of a small business issuer, Items 401(a)(4), 401(a)(5), 401(c) and 404(a) of Regulation S-B *[17 CFR 228.401(a)(4)*, (a)(5) and (c), and 228.404(a) and (b)].

In addition, if a new director is elected to the board, except by a vote of security holders at an annual meeting or a special meeting convened for such purpose, paragraph (d) of Item 5.02 requires disclosure of the new director's name, the election date, a brief description of any arrangement or understanding pursuant to which the new director was selected as a director, any committees to which the new director has been, or at the time of the disclosure is expected to be, named, and information regarding certain related transactions between the new director and the company. n119

n119 Specifically, Item 5.02(d) requires disclosure of information required by Item 404(a) of Regulation S-K.

Instruction 2 to Item 5.02 provides that, to the extent that information regarding an employment contract of a newly-appointed executive officer, or the board committee or related party transaction information associated with a newly-elected director, is not determined or is unavailable at the time of the required Form 8-K filing, a company must include a statement to  [*15606]  this effect in the filing and then must file an amendment to the Item 5.02 Form 8-K filing containing the information within four business days after the information is determined or becomes available.

One commenter was concerned that requiring immediate disclosure of the appointment of an officer could interfere with the company's ability to plan for a smooth transition of authority. n120 It stated that companies need time to make proper introductions within the organization before publicly announcing such appointment. In response to this comment, we have inserted an instruction to Item 5.01(c) that permits a company to delay such disclosure until the day on which the company first makes public announcement of the appointment if the company intends to make a public announcement of the appointment other than by means of a report on Form 8-K.

n120 See the letter from the ABA.

One commenter believed that the departure or appointment of directors and officers of certain companies should not be reportable under this item. n121 We agree and have inserted an instruction to exclude a company that is a wholly-owned subsidiary of a reporting company from the reporting requirements of Item 5.02. n122

n121 See the letter from the ABA.

n122 See Instruction 1 to Item 5.02.

Item 5.03 Amendments to Articles of Incorporation or Bylaws; Change in Fiscal Year

This item requires a company with a class of equity securities registered under Section 12 of the Exchange Act to disclose any amendment to its articles of incorporation or bylaws if the company did not propose the amendment in a previously filed proxy statement or information statement. The item requires the company to disclose the effective date of the amendment and a description of the provision adopted or changed by amendment and, if applicable, the previous provision.

If the company determines to change the fiscal year from that used in its most recent filing with the Commission by means other than a submission to a vote of security holders through the solicitation of proxies or otherwise, or by an amendment to its articles of incorporation or bylaws, the company must state the date of that determination, the date of the new fiscal year end and the form on which the report covering the transition period will be filed.

One commenter noted that Item 601 of Regulation S-K requires a company to file a complete copy of its articles of incorporation or bylaws as amended. n123 The commenter was concerned that companies may not have sufficient time to prepare the restated copies for filing within the allotted timeframe. Thus, we have added an instruction to this item, as well as to Item 601 of Regulations S-K and S-B, clarifying that if an amendment to the articles of incorporation or bylaws is reported on Form 8-K, the company need only file the text of the amendment as an exhibit to the filing. If it does so, it must file the restated articles of incorporation or bylaws as an exhibit to its next periodic report.

n123 See the letter from the ABA.

One commenter suggested that the item be limited to companies with a class of equity securities registered under Section 12 of the Exchange Act. n124 Companies that do not have equity securities registered under the Exchange Act are typically debt issuers. The rights of holders of such securities are reflected in the debt documents and changes to those rights would typically be reflected under Item 3.03. We have revised this item accordingly in response to this comment.

n124 See the letter from the ABA.

*D. Proposed Form 8-K Items Not Being Adopted*

We proposed several additional new Form 8-K items which we are not adopting. First, we proposed an item that would have required disclosure of temporary suspension of trading under a company's employee benefit plans. Section 306 of the Sarbanes-Oxley Act required us to adopt rules requiring such disclosure on or before January 26, 2003. In response, we adopted Regulation BTR and former Item 11 of Form 8-K. n125 We have redesignated former Item 11 as Item 5.04 in the reorganized Form 8-K. n126

n125 Release No. 34-47225 (January 22, 2003) *[68 FR 4337]*.

n126 As discussed more fully below, we have also changed the due date for the Form 8-K filing under Item 5.04 to, generally, four business days after the company receives the notice required by section 101(i)(2)(E) of the Employment Retirement Income Security Act of 1974 *[29 U.S.C. 1021*(i)(2)(E)].

Second, we proposed an item that would have required certain information regarding ratings received from rating agencies. On January 24, 2003, we issued a study on credit rating agencies and subsequently issued a concept release. n127 We continue to consider the appropriate regulatory approach for rating agencies.

n127 See Report on the Role and Function of Credit Rating Agencies in the Operation of the Securities Markets (January 24, 2003) *[68 FR 35258]*, available at www.sec.gov/news/studies/ creditratingreport0103.pdf, and Release No. 33-8236 (June 4, 2003) *[68 FR 35258]*.

Finally, we proposed an item that would have required disclosure regarding the termination or reduction of a business relationship with a customer. Many commenters opposed this item on the basis that it would be difficult for a company to determine when such a termination or reduction occurs. In addition, commenters were concerned about possible competitive harm caused by customers using such disclosure as a negotiation ploy. The proposed item would have some of the same types of concerns as are posed by new Item 1.02. In Item 1.02, we have sought to resolve the competitive harm issue by granting companies some latitude in determining when a contract has been terminated. We agree with commenters, however, that a reduction of customer orders can be difficult to discern as such reductions can happen over a period of time. n128 Thus, we have decided not to adopt this proposed item. n129

n128 See, for example, the letters from the NY City Bar, Cleary Gottlieb, Grundfest Group, PWC and Shearman & Sterling.

n129 However, we remind companies that Item 303 of Regulations S-K and S-B [*17 CFR 229.303* and *17 CFR 228.303*], Management's Discussion and Analysis of Financial Condition and Results of Operations, requires disclosure of known trends or uncertainties that have had, or that the company reasonably expects will have, a material favorable or unfavorable impact on net sales or revenues or income from continuing operations.

*E. Safe Harbor and Eligibility To Use Forms S-2 and S-3 and To Rely on Rule 144*

Several commenters recommended that we adopt a safe harbor to protect a company against potential liability under Exchange Act Section 10(b) and Rule 10b-5 stemming from the company's failure to timely file a required Form 8-K. n130 While we are not convinced that we should extend a Section 10(b) and Rule 10b-5 safe harbor to all of the Form 8-K items, we recognize that several of the new Form 8-K disclosure items may require management to quickly assess the materiality of an event or to determine whether a disclosure obligation has been triggered. In this respect, these items raise issues analogous to those we considered in our adoption of the Section 10(b) and Rule 10b-5 safe harbor under Regulation FD. n131

n130 See the letters from Emerson, NAREIT, NY City Bar and Shearman & Sterling.

n131 Item 7.01, Regulation FD Disclosures, is already subject to a safe harbor from Section 10(b) and Rule 10b-5 pursuant to Regulation FD (*17 CFR 243.100-243.103*). Also, because Item 8.01, Other Events, is designated for voluntary filings, it does not, by itself, impose a duty to disclose for purposes of Section 10(b) and Rule 10b-5. [*15607]

As a result, we have decided to adopt a new limited safe harbor from public and private claims under Exchange Act Section 10(b) and Rule 10b-5 for a failure to timely file a Form 8-K regarding the following items:

Item 1.01 Entry into a Material Definitive Agreement

Item 1.02 Termination of a Material Definitive Agreement

Item 2.03 Creation of a Direct Financial Obligation or an Obligation under an Off-Balance Sheet Arrangement of a Registrant

Item 2.04 Triggering Events that Accelerate or Increase a Direct Financial Obligation under an Off-Balance Sheet Arrangement

Item 2.05 Costs Associated with Exit or Disposal Activities

Item 2.06 Material Impairments

Item 4.02(a) Non-Reliance on Previously Issued Financial Statements or a Related Audit Report or Completed Interim Review (in the case where a company makes the determination and does not receive a notice described in Item 4.02(b) from its accountant)

In light of this new limited safe harbor under Section 10(b) and Rule 10b-5, we have eliminated the proposed safe harbor from liability under Section 13(a) or 15(d). As a result, the new safe harbor will not affect our ability to enforce any of the Form 8-K filing requirements under these sections.

The safe harbor for these items states that no failure to file a report on Form 8-K that is required solely pursuant to

the provisions of Form 8-K shall be deemed to be a violation of Section 10(b) and Rule 10b-5 under the Exchange Act. The safe harbor only applies to a failure to file a report on Form 8-K. Thus, material misstatements or omissions in a Form 8-K will continue to be subject to Section 10(b) and Rule 10b-5 liability.

In addition, if the company has a duty to disclose information that is the subject of any of the Form 8-K items covered by the safe harbor for any reason apart from the Form 8-K requirement, the safe harbor will not provide protection from Section 10(b) and Rule 10b-5 that may arise from the company's failure to satisfy such separate disclosure obligation. For example, if a company publicly sells or repurchases its own securities while in possession of material non-public information that is required to be disclosed in a Form 8-K report pursuant to an item that is covered by the safe harbor, the safe harbor will not protect the company from Section 10(b) and Rule 10b-5 liability regarding its separate disclosure obligation pursuant to the offering of securities.

Furthermore, we are amending Forms 10-Q, 10-QSB, 10-K and 10-KSB to provide that the new safe harbor extends only until the due date of the periodic report of the company for the relevant period in which the Form 8-K was not timely filed. Thus, for example, if an event occurs that required the filing of a Form 8-K during a particular quarter, but the company fails to make the required timely disclosure on Form 8-K, the company must provide the disclosure prescribed by the relevant Form 8-K item in its Form 10-Q or 10-QSB filed for the quarter during which that event occurred. Failure to make such disclosure in the periodic report will subject a company to potential liability under Section 10(b) and Rule 10b-5, in addition to the potential liability under Section 13(a) or15(d).

Similarly, several commenters stated that failure to file all required Form 8-K reports in a timely manner should not disqualify companies from being eligible to use Securities Act Form S-2 and S-3 registration statements. n132 Under our current rules, to be eligible to use Form S-2 or S-3, among other things, a company must have timely filed all reports required to be filed under Exchange Act Section 13(a) or 15(d) during the 12 months prior to filing of the registration statement. n133

n132 See, for example, the letters from the ABA, AICPA, Ernst & Young, NAREIT, NY City Bar, NY State Bar, Shearman & Sterling, Sullivan & Cromwell and Wyrick Robbins.

n133 See General Instruction I.C to Form S-2, referenced in *17 CFR 239.12* and General Instruction I.A.3 to Form S-3, referenced in *17 CFR 239.13*, respectively.

In response to these comments, we are revising the Form S-2 and S-3 eligibility requirements. Under the revised instructions to these forms, n134 companies that fail to file timely reports required by Items 1.01, 1.02, 2.03, 2.04, 2.05, 2.06 and 4.02(a) will not lose their eligibility to use Form S-2 and S-3 registration statements. These are the same items that are covered by the new limited safe harbor from Section 10(b) and Rule 10b-5 liability.

n134 See revised General Instruction I.C to Form S-2 and revised General Instruction I.A.3 to Form S-3, as well as the revisions to *17 CFR 239.12* and *239.13*.

As stated above, we believe that these items may require management to make rapid materiality and similar judgments within the compressed Form 8-K filing timeframe. The potential significant burden that could result from a company's sudden loss of eligibility to use Form S-2 or S-3 under these circumstances could be a disproportionately large negative consequence of an untimely Form 8-K filing. We also believe that a carve-out of the same list of items as covered by the Section 10(b) and Rule 10b-5 safe harbor provides a beneficial measure of regulatory consistency.

We have clarified in the revised instructions, however, that a company must be current in its Form 8-K filings with respect to the items listed above at the actual time of a Form S-2 or S-3 filing. Thus, a company must have filed the disclosure required by any of these Form 8-K items on or before the date that it files a Form S-2 or Form S-3 registration statement to satisfy the eligibility requirements of these forms. n135 With respect to the other Form 8-K items not listed above, a company's failure to timely file Form 8-K pursuant to any of these items will result in a loss of Form S-2 or S-3 eligibility for the 12 months following the Form 8-K due date. n136 Many of these items are currently

required Form 8-K disclosure items and are thus familiar to companies, while the other new Form 8-K items not included above generally do not require the same degree of analysis.

n135 For example, if a company fails to file an Item 1.01 Form 8-K regarding the entry into a material definitive agreement, the company must include the disclosure required by Item 1.01 in the periodic report filed for the period in which the company failed to timely file the Form 8-K. This disclosure must be made before the company files a later Form S-3 registration statement (assuming that the registration statement is filed within 12 months of the missed Form 8-K) in order for the company to be current in its periodic reports and thus eligible to use Form S-3. If the company fails to include such disclosure in its quarterly report or annual report, as applicable, the company must amend the report to include the Item 1.01 information before filing the Form S-3 registration statement.

n136 For example, if a company fails to timely file an Item 3.01 Form 8-K regarding a delisting notice received from a national securities association, the company would be ineligible to use Form S-2 or S-3 for the next 12 months.

Commenters also recommended that we clarify that a company's failure to timely file a Form 8-K report would not affect a security holder's ability to rely on Securities Act Rule 144 to resell securities. Rule 144 eligibility is conditioned on, among other things, the availability of current public information about the company. n137 Because of the significant burden that would be placed on selling security holders if eligibility to rely on Rule 144 were conditioned on a company's satisfaction of the new Form 8-K requirements, we have amended Securities Act Rule 144 to clarify that a [*15608] company need not have filed all required Form 8-K reports during the 12 months preceding a sale of securities pursuant to Rule 144 to satisfy the rule's "current public information" condition. As required by Rule 144(h), n138 however, a security holder will continue to be required to represent that he or she does not have inside information. n139

n137 See *17 CFR 230.144(c)*.

n138 *17 CFR 230.144(h)*.

n139 See generally Form 144 [*17 CFR 239.144*].

*F. Other Matters Related to Form 8-K Filings and Conforming Amendments*

1. Events Falling under Multiple Items

We recognize that a company may need to report a given event under Item 1.01 as well as one or more other items, such as Item 2.03. We note that General Instruction D to Form 8-K permits a company to file a single Form 8-K to satisfy one or more disclosure items, provided that the company identifies by item number and caption all applicable items being satisfied and provides all of the substantive disclosure required by each of the items.

2. Amendments to Item 601 of Regulation S-K and Regulation S-B

Certain new Form 8-K items require new exhibits to be filed with the report. Exhibits to periodic filings are addressed by Item 601 of Regulation S-K. We are adding or modifying entries describing these exhibits to the Item 601 exhibit table. These new or modified exhibit entries include: (a) Correspondence from an independent accountant regarding non-reliance on a previously issued audit report or completed interim review; (b) correspondence regarding the departure of director; (c) articles of incorporation; and (d) bylaws.

We are also adopting amendments to Item 601 to footnote the "8-K" column in the Exhibit Table to clarify that a company need only file the exhibits marked in the "8-K" column of the table that are relevant to a particular report on Form 8-K. Again, companies that have previously submitted an exhibit with another periodic filing may incorporate the exhibit by reference into the applicable Form 8-K report.

69 FR 15594, *15608

Finally, we are adopting a corrective amendment to eliminate the reference in Item 601 to submission of Financial Data Schedules. n140 We eliminated the requirement to file a Financial Data Schedule on May 30, 2000. n141

n140 See current Item 601(a)(1) of Regulations S-B and S-K [*17 CFR 228.601(a)(1) and 229.601(a)(1)*].

n141 Release No. 33-7855 (April 24, 2000) [*65 FR 24788*].

3. Clarification of Filing Status of Exhibits

We have received several questions regarding whether an exhibit attached to a Form 8-K report furnished pursuant to Regulation FD is considered filed or furnished. In response to these questions, we have clarified General Instruction 2 to state clearly that if a report on Form 8-K contains disclosures under Item 2.02, Results of Operations and Financial Condition, or 7.01, Regulation FD Disclosure, whether or not the report contains disclosures regarding other items, all exhibits to that report relating to Item 2.02 or 7.01 will be deemed furnished, and not filed, unless the registrant specifies exhibits, or portions of exhibits, that are intended to be deemed filed rather than furnished. This amendment is intended only to clarify our position on this matter and does not change our existing position.

4. Revisions to Forms 10-Q, 10-QSB, 10-K and 10-KSB

As proposed, the amendments modify or eliminate several items in Forms 10-Q, 10-QSB, 10-K and 10-KSB. Portions of the disclosures called for in these items are no longer required in quarterly and annual reports because they will be more promptly reported on Form 8-K. We have revised or deleted, as applicable, the following items in Part II of Forms 10-Q and 10-QSB:

. Revised the heading for Item 2 in Part II-Other Information;

. Removed Items 2(a), 2(b) and 6(b);

. Redesignated paragraphs (c), (d) and (e) in Item 2 as paragraphs (a), (b) and (c);

. Revised newly redesignated paragraph (a) in Item 2;

. Revised the Instructions to Item 3;

. Revised Item 5;

. Removed the words "and Reports on Form 8-K (§ 249.308 of this chapter)" from the heading of Item 6; and

. Removed the paragraph (a) designation in Item 6.

We have also made the following changes to Form 10-K:

. Revised paragraph (a) of Item 5, Market for Registrant's Common Equity and Related Stockholder Matters to require disclosure only of unregistered sales of equity securities not previously disclosed on Form 8-K;

. Revised Item 9, Changes in and Disagreements With Accountants on Accounting and Financial Disclosure to require disclosure only of matters required by Item 304(b) of Regulation S-K; n142

n142 *17 CFR 229.304(b)*.

. Added Item 9A, Other Information;

. Revised the heading of Item 15 to read "Exhibits and Financial Statement Schedules;"

69 FR 15594, *15608

. Deleted paragraph (b) of Item 15, Exhibits, Financial Statement Schedules, and Reports on Form 8-K; and

. Redesignated paragraphs (c) and (d) in Item 15 as paragraphs (b) and (c).

*We have made the following changes to Form 10-KSB:*

. Revised paragraph (a) of Item 5, Market for Registrant's Common Equity and Related Stockholder Matters to require disclosure only of unregistered sales of equity securities not previously disclosed on Form 8-K;

. Revised Item 8, Changes in and Disagreements With Accountants on Accounting and Financial Disclosure to require disclosure only of matters required by Item 304(b) of Regulation S-B n143;

n143 *17 CFR 228.304(b).*

. Added Item 8B, Other Information;

. Removed the words "and Reports on Form 8-K" from the heading to Item 13;

. Deleted paragraph (b) of Item 13, Exhibits and Reports on Form 8-K;

. Removed the paragraph (a) designation in Item 13;

. Revised Item 3 in Part II of "Information Required in Annual Report of Transitional Small Business Issuers;" and

. Removed Item 6 in Part II of "Information Required in Annual Report of Transitional Small Business Issuers."

As discussed above, however, we are adding an item to these forms that requires disclosure of any event required to be disclosed on a previous Form 8-K filing during the period covered by the forms which was not disclosed on Form 8-K. n144 In addition, we have retained the requirement to disclose the information required pursuant to Item 304(b) of Regulation S-K in Form 10-K and 10-KSB as such information is not required pursuant to Item 4.01 of Form 8-K.

n144 See Item 5 of Forms 10-Q and 10-QSB, new Item 9 of Form 10-K and new Item 8 of Form 10-KSB.

5. Certification Under Section 906 of the Sarbanes-Oxley Act of 2002

In June of 2003, the Commission adopted rules requiring the public filing of both the Sarbanes-Oxley Act Sections 302 and 906 chief executive officer and chief financial officer certifications as exhibits to various Exchange Act periodic reports. n145 The adopting [*15609] release noted that there had been questions raised about whether the certifications required by Section 906 of the Sarbanes-Oxley Act applied to Form 8-K. In that release, we noted our concern that extending Section 906 certifications to Form 8-K could potentially chill the disclosure of information by companies. The release also noted that we were considering the questions in consultation with the Department of Justice.

n145 Release No. 33-8238 (June 5, 2003) *[68 FR 36636].*

As a result of this review with the Department of Justice and representatives from the Department serving on the President's Corporate Fraud Task Force, the Department of Justice and we have jointly concluded that Section 906 does not apply to Form 8-K. n146

n146 Section 906 certifications also do not apply to filings on Form 6-K or Form 11-K [*17 CFR 249.306* and *17 CFR 249.311*].

6. Other Conforming Amendments

69 FR 15594, *15609

We have revised former Item 11 (new Item 5.04) of Form 8-K, regarding the temporary suspension of trading under company's employee benefit plans, to clarify that the required Form 8-K must be filed no later than the fourth business day after which the company receives the notice required by section 101(i)(2)(E) of the Employment Retirement Income Security Act of 1974 n147 or, if such notice is not received by the company, on the same date on which the company transmits a timely notice to an affected officer or director within the time period prescribed by Rule 104(b)(2)(i)(B) or 104(b)(2)(ii) of Regulation BTR. n148 The former Item 11 provided that the Form 8-K must be filed not later than the date prescribed for transmission of the notice required by Rule 104(b)(2) of Regulation BTR. We have also provided for the filing of the updated notices under Rule 104(b)(2)(iii) of Regulation BTR. n149

n147 *29 U.S.C. 1021*(i)(2)(E).

n148 *17 CFR 245.104(b)(2)(i)(B)* and *17 CFR 245.104(b)(2)(ii)*, respectively.

n149 *17 CFR 245.104(b)(2)(iii)*.

We have also amended the General Instructions to Form 8-K to combine Instruction B.6 with Instruction B.2. These two instructions are largely identical beyond the fact that they apply to different items. Therefore we have combined them into a single instruction addressing both items.

We have amended Note 1 at the end of Exchange Act Rules 13a-10 and 15d-10 regarding transition reports. n150 The previous note referred to Item 8 of Form 8-K, which has been re-designated as Item 5.03. Thus, we have conformed this reference accordingly. In addition, we have amended Item 9.01 of Form 8-K, Financial Statements and Exhibits, to ensure that financial statements required to be filed subsequent to an acquisition reported under Item 2.01 are due 71 days after the date the initial report on Form 8-K was required to be filed.

n150 *17 CFR 240.13a-10* and *17 CFR 240.15d-10*.

Finally, we have revised Exchange Act Rule 12b-23 n151 to make clear that companies may incorporate by reference into their registration statements and reports information previously disclosed on Form 8-K without the requirement to file such Form 8-K reports as exhibits to the statements or reports.

n151 *17 CFR 240.12b-23*.

**III. Paperwork Reduction Act**

*A. Background*

The amendments contain "collection of information" requirements within the meaning of the Paperwork Reduction Act of 1995 (PRA). We published a notice requesting comment on the collection of information requirements in the proposing release, and submitted requests to the Office of Management and Budget (OMB) for approval in accordance with the PRA. These requests were approved by the OMB.

The titles for the collections of information are:

. Form 8-K (OMB Control No. 3235-0060);

. Form 12b-25 (OMB Control No. 3235-0058);

. Form 10-K (OMB Control No. 3235-0063);

. Form 10-KSB (OMB Control No. 3235-0420);

. Form 10-Q (OMB Control No. 3235-0070);

69 FR 15594, *15609

. Form 10-QSB (OMB Control No. 3235-0416);

. Regulation S-K (OMB Control No. 3235-0071); and

. Regulation S-B (OMB Control No. 3235-0417).

An agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a currently valid OMB control number.

## B. Summary of Amendments

The amendments add eight new disclosure items to Form 8-K, transfer two existing items from the periodic reports and expand disclosures under two existing Form 8-K requirements. The amendments also reorganize the Form 8-K items into topical categories, shorten the Form 8-K filing deadline for most items to four business days after the occurrence of an event triggering the disclosure requirements of the form, provide a new limited safe harbor from liability under Exchange Act Section 10(b) and Rule 10b-5 for failure to file certain of the required Form 8-K reports, and provide limited relief from loss of eligibility to use Forms S-2 and S-3 stemming from a company's failure to timely file a Form 8-K report. These amendments are responsive to the "real time issuer disclosure" provision in Section 409 of the Sarbanes-Oxley Act of 2002. They are intended to provide investors with better and faster disclosure of important corporate events.

## C. Summary of Comment Letters and Revisions to Proposals

We requested comment on the PRA analysis contained in the proposing release. Several commenters believed that the burdens would be higher than our estimates. One commenter believed that the burden and costs would be twice as much as our estimated burden and cost for complying with the proposed amendments. n152 Another commenter believed that it would have been required to file 15-20 more reports on Form 8-K during the past two years if the proposed requirements had been imposed during that period. n153 Neither commenter provided us with evidence to suggest that their estimates would apply to all companies.

n152 Letter of Radin, Glass & Co.

n153 Letter of John Deere. It was unclear whether this commenter included all routine financings in its estimate. Item 2.03 requires disclosure of short-term debt obligations only if they are made out of the ordinary course of business. We are uncertain as to whether the commenter's estimate would be the same under the adopted amendments.

We also received comments directed at the substance of the proposed Form 8-K items. In response to these comments, we have revised numerous items to simplify determinations of whether a reportable event has occurred. We also have reduced the amount of information and analysis that must be disclosed under many of the items. Furthermore, we are not adopting two of the proposed items. n154 Finally, in response to commenters' concerns regarding the difficulty of reporting events within two business days, as originally proposed, we have extended the filing deadline to four business days.

n154 We are not adopting in this release proposed Item 1.03 Termination or Reduction of a Business Relationship with a Customer and proposed Item 3.01 Rating Agency Decisions.

## D. Revisions to PRA Reporting and Cost Burden Estimates

In response to the comments that we received on our estimates, we believe that companies may, on average, file [*15610] more reports on revised Form 8-K than we previously estimated. In the proposing release, we estimated that a company would, on average, file two more reports on Form 8-K per year. n155 For purposes of the PRA, we now estimate that the amendments will cause, on average, an increase of five reports on Form 8-K per company per year. We

69 FR 15594, *15610

recognize, however, that the actual number of reports a company must file is highly dependent on the nature of its activities. For example, a company with an active acquisition or financing program is more likely to be affected by these amendments than others. Thus, we expect that the amendments will impose a greater-than-average burden on some companies, and a less-than-average burden on others.

n155 During our fiscal year ended September 30, 2003, we received approximately 58,400 Form 8-K reports from approximately 11,800 companies.

We estimate that each entity spends, on average, approximately five hours completing the form. We estimate that 75% of the burden is prepared by the company and that 25% of the burden is prepared by outside counsel retained by the company at an average cost of $ 300 per hour. We estimated the average number of hours each entity spends completing the form, and the average hourly rate for outside securities counsel, by contacting a number of law firms and other persons regularly involved in completing the forms and based on our experience with disclosure on Form 8-K.

As of the end of our 2003 fiscal year, we estimate that there were 11,800 companies filing reports on Form 8-K. n156 Based on our new estimate of five additional Form 8-K reports per company per year as a result of these amendments, we estimate an increase of 59,000 filings per year. This results in an estimate of 221,250 additional burden hours n157 and a cost of approximately $ 22,125,000 for the services of outside professionals. n158

n156 11,800 filers x 5 additional Form 8-K filings per filer = 59,000 additional filings.

n157 59,000 filings x 5 hours per filing x 0.75 = 221,250 hours.

n158 59,000 filings x 5 hours per filing x 0.25 x $ 300 per hour = $ 22,125,000.

Form 12b-25

The proposed rules would have permitted a company unable to timely file a Form 8-K to report the late filing on Form 12b-25 and to receive an automatic two business day filing extension. In the proposing release, we estimated that, of the expected 61,500 filings for which Form 12b-25 would be available, 6,700 would be late, resulting in an incremental Form 12b-25 burden of 16,750 hours and a total annual burden of 31,750 hours. These estimates were based on the current rate of late filings on Form 8-K. Because we have lengthened the proposed Form 8-K filing deadline to four business days, we are not adopting the proposed Form 12b-25 amendments.

Forms 10-Q, 10-QSB, 10-K and 10-KSB

We are transferring, in part, two disclosure requirements from Forms 10-Q, 10-QSB, 10-K and 10-KSB to Form 8-K. Because these items generally will be disclosed in the Form 8-K, companies do not have to repeat this disclosure in the annual and quarterly report. We estimate that these changes will result in a decrease of one burden hour per company per filing in connection with preparing and filing each quarterly report on Form 10-Q or 10-QSB and the annual report on Form 10-K or 10-KSB.

Item 601 of Regulation S-K and Regulation S-B

The revisions to Item 601 of Regulation S-K and Item 601 of Regulation S-B amend the exhibit tables to identify exhibits that must be filed with Form 8-K. We have incorporated the burden of actually submitting those exhibits in the estimated Form 8-K filing burden. These items do not, separate from the form, require any additional filing and thus do not add to the burden on companies. As a result, we do not expect any change in the total annual burden of reporting under these items. We assign one burden hour and no cost to Regulations S-B and S-K for administrative convenience to reflect the fact that these regulations do not impose any direct burden on companies.

Compliance with the revised disclosure requirements is mandatory. There is no mandatory retention period for the

information disclosed, and responses to the disclosure requirements will not be kept confidential.

## IV. Costs and Benefits

### A. Background

After we proposed the amendments to Form 8-K in June 2002, Congress enacted the Sarbanes-Oxley Act of 2002. Section 409 of that Act, entitled "Real Time Issuer Disclosures," states that "[e]ach issuer reporting under section 13(a) or 15(d) shall disclose to the public on a rapid and current basis such additional information concerning material changes in the financial condition or operations of the issuer * * * as the Commission determines, by rule, is necessary or useful for the protection of investors and in the public interest." We believe these amendments are responsive to this provision of the Sarbanes-Oxley Act.

Prior to these amendments, Form 8-K required companies to disclose eight enumerated events within five business days or 15 calendar days, depending on the event. These amendments decrease this filing deadline to four business days after the event occurs for all events, other than Item 8.01 (current Item 5), which has no deadline, Item 7.01 (current Item 9), relating to Regulation FD disclosures and certain exhibits. The amendments also add 10 new events that would trigger a Form 8-K filing requirement, including two items transferred from the periodic reports. The amendments reorganize the Form 8-K items, create a limited safe harbor from liability under Exchange Act Section 10(b) and Rule 10b-5 for failure to file certain items, and provide limited relief from loss of eligibility to use Forms S-2 and S-3 for failure to file a Form 8-K on a timely basis. These changes will affect all companies reporting under Section 13(a) and 15(d) of the Exchange Act, other than foreign private issuers that file annual reports on Form 20-F n159 or 40-F. n160

n159 *17 CFR 249.220f.*

n160 *17 CFR 249.240f.*

### B. Benefits

Markets rely on timely dissemination of information to accurately and quickly value securities. These amendments increase the amount of significant information that a company must disclose to the public on a current basis, enhancing the ability of markets to respond to those corporate events. Under the prior system, predicated primarily on a periodic reporting system, the securities of a company could be trading on less complete information if an important corporate event has occurred but the company, under no duty to report that event, does not report the event on a timely basis. Such a delay in disclosure permits there to be significant time periods during which important information is not disclosed to the market. These circumstances create opportunity for companies and those with access to non-public information to misuse that information. The amendments adopted today will reduce such opportunities for misuse.

Modern computer and communications systems enable current disclosure to be analyzed and incorporated into the price of a security [*15611] quickly. By moving our rules towards a system emphasizing current reporting, our markets may become more effective as price discovery mechanisms during periods between periodic reports.

In addition, these amendments should enhance investor confidence in the financial markets. The requirement of enhanced, timely disclosure should raise investors' expectations regarding the amount and timing of information that reporting companies must make available to the public. Confidence in the expectation of such enhanced disclosure should provide more certainty to those investors that they are making investment decisions in a more transparent market, which should reduce market volatility as a result of uncertainty of the availability of accurate timely information about public companies.

### C. Costs

Based on a review of approximately 68,000 Form 8-K filings, approximately 74% of those reports were filed within four business days of the reported event date. Although this review did not investigate whether filers reported the correct event date for each filing, it appears that most companies already file their Form 8-K reports within the new four-business-day timeframe. In addition, we believe that several of our recent rulemakings have caused companies to improve their internal processes for ensuring that material information is reported to management in a more timely manner. For example, we adopted rules requiring certain executive officers to certify that they have designed disclosure controls and procedures, or caused such controls and procedures to be designed, to ensure that material information about the company is reported to those executive officers. n161 Thus, we believe that companies will be able to comply with the four business day deadline without undue burden. Although we found, at the proposing stage, that the majority of filings were made within two calendar days, we recognize that some items may be more difficult to report in a timely manner. Rather than complicate the Form 8-K reporting framework by establishing multiple deadlines, we have decided to extend the proposed deadline to four business days.

n161 Release No. 33-8124 (August 28, 2002) *[67 FR 57276]*.

We expect that the addition of new Form 8-K items will increase the number of Form 8-Ks that a company is required to file. Based on our estimates for purposes of the PRA, we expect approximately five additional filings per year per company. Assuming a value of $ 100 per hour for company time, we estimate an increase of approximately $ 44 million in filing costs associated with Form 8-K due to the adoption of these amendments.

Companies may experience some competitive or other strategic costs caused by the requirement to disclose more categories of information more quickly than they otherwise may have chosen to disclose. These costs are difficult to quantify. Further, we are sensitive to the argument that these enhanced disclosure requirements may increase a company's exposure to liability. Thus, we are adopting a new limited safe harbor from liability under Exchange Act Section 10(b) and Rule 10b-5 for failure to file a report on Form 8-K within the stated deadline for certain events. We are also eliminating any duplicative reporting requirements in annual and quarterly reports. In addition, developments such as EDGARLink that enable a company to file reports easily and directly with the Commission over the Internet, n162 without the added costs of using third parties to submit filings, as well as the industry's increased experience over the past several years using the EDGAR system, should minimize the cost to companies of filing more Form 8-K reports in a shorter timeframe.

n162 EDGARLink is downloadable free of charge to filers from our Web site at *https://www.edgarfiling.sec.gov*.

## V. Effect on Efficiency, Competition and Capital Formation

Section 23(a)(2) n163 of the Exchange Act requires us, when adopting rules under the Exchange Act, to consider the impact that any new rule would have on competition. In addition, Section 23(a)(2) prohibits us from adopting any rule that would impose a burden on competition not necessary or appropriate in furtherance of the purposes of the Exchange Act.

n163 *15 U.S.C. 78w*(a)(2).

Section 2(b) n164 of the Securities Act and Section 3(f) n165 of the Exchange Act require us, when engaging in rulemaking where we are required to consider or determine whether an action is necessary or appropriate in the public interest, to consider, in addition to the protection of investors, whether the action will promote efficiency, competition and capital formation.

n164 *15 U.S.C. 77b*(b).

n165 *15 U.S.C. 78c*(f).

The amendments are intended to improve the amount, quality and timeliness of current information available to

investors and the financial markets. This should improve the ability of investors to make informed investment and voting decisions. Informed investor decisions generally promote market efficiency and capital formation. Thus, we anticipate that these amendments will enhance the proper functioning of the capital markets. This increases the competitiveness of companies participating in the U.S. capital markets. Because only domestic companies subject to the reporting requirements of Sections 13 and 15 of the Exchange Act are required to make Form 8-K disclosures, competitors not subject to those reporting requirements potentially could gain an informational advantage. The possibility of these effects and their magnitude if they were to occur are difficult to quantify.

We requested comment on whether the proposed amendments, if adopted, would impose a burden on competition or, conversely, promote efficiency, competition and capital formation. Numerous commenters believed that a requirement to disclose non-binding agreements and letters of intent would cause companies competitive harm. Similarly, commenters believed that a disclosure requirement regarding the termination of a material agreement or loss of a significant customer may place the party required to make such disclosures at a competitive disadvantage to the counterparty.

In response to these comments, we have eliminated the proposed disclosure requirement regarding nonbinding agreements and letters of intent. We have also eliminated the proposed item regarding the loss of a significant customer due to the difficulty of identifying the particular date on which such loss occurs. With regard to the termination of a material agreement, we have revised the relevant item to provide a company with more flexibility if it believes that the counterparty is merely using a claim of termination as a negotiation ploy, contrary to the terms of the contract.

Several commenters recommended that we revise the eligibility rules under Forms S-2 and S-3 so that an untimely filing of a report on Form 8-K would not result in the loss of such eligibility. Loss of such eligibility can significantly restrict the ability of a company to raise capital and may be a disproportionately large negative consequence of an untimely filing of a Form 8-K. Although we believe it is important that a company provide full disclosure when it seeks to raise capital in public markets, we also recognize that the shortened timeframes for certain of the Form 8-K items may increase the number of companies that could lose  [*15612]  eligibility under Forms S-2 and S-3. As a result, we have revised the form eligibility rules to allow a company to use Forms S-2 and S-3 despite the filing of an untimely Form 8-K for certain enumerated items of the form. A company would still need to be current in these Form 8-K reports, however, prior to the filing of a Form S-2 or Form S-3 registration statement. This ensures that when the company files its registration statement, required information under the enumerated items has been publicly disclosed.

Other commenters believed that the volume of reporting that would be required under the amendments may create a considerable distraction for management, which may hinder a company from operating efficiently. We have attempted to limit the new items required to be reported on Form 8-K to unquestionably or presumptively material events. For example, many of the items cover events that happen rarely to a company, such as delisting from an national securities exchange, bankruptcy and restatements of financial statements. Others items are limited by their terms. For example, Item 1.01 requires disclosure only of material definitive agreements outside the ordinary course of business, excluding many types of ordinary course contracts.

## VI. Final Regulatory Flexibility Analysis

This Final Regulatory Flexibility Analysis, or FRFA, has been prepared in accordance with the Regulatory Flexibility Act (RFA). n166 This FRFA involves amendments to shorten the filing deadline for Form 8-K and expand the events requiring disclosure on the form. An Initial Regulatory Flexibility Analysis (IRFA) was prepared in accordance with the Regulatory Flexibility Act in conjunction with the proposing release. The proposing release included and solicited comment on the IRFA.

n166 5 U.S.C. 603.

*A. Need for the Amendments*

69 FR 15594, *15612

We are adopting the amendments to Form 8-K to provide investors and the securities markets with more timely access to a greater range of information concerning significant corporate events than is currently required by Form 8-K. The amendments to Form 8-K increase the list of events that trigger a Form 8-K filing requirement and require most Form 8-K reports to be filed no later than the fourth business day following occurrence of the event to which the report relates. The amendments should enhance investor confidence in the fairness and integrity of the securities markets by requiring companies to provide more current disclosure about several significant corporate events. In addition to accelerating the filing deadlines for events that already trigger the Form 8-K filing requirements, the proposals would expand the types of information covered by Form 8-K.

*B. Significant Issues Raised by Public Comment*

No comments were raised specifically about the IRFA. However, several commenters recommended that small business issuers be afforded relief from the new reporting requirements, such as being granted longer filing deadlines because they do not have the same resources as larger issuers. Because we believe that different compliance or reporting requirements or timetables for small entities would interfere with the goal of making information about significant corporate events promptly available to investors and the markets, as discussed more fully below, we have generally not differentiated between small issuers and other issuers in the amendments to Form 8-K.

*C. Small Entities Subject to the Amendments*

The amendments to Form 8-K will affect issuers that are small entities. Exchange Act Rule 0-10(a) n167 defines an issuer, other than an investment company, to be a "small business" or "small organization" if it had total assets of $ 5 million or less on the last day of its most recent fiscal year. We estimate that there are approximately 2,500 issuers, other than investment companies, that may be considered small entities. The amendments to Form 8-K apply to any small entity that is subject to Exchange Act reporting requirements.

n167 *17 CFR 240.0-10(a).*

*D. Reporting, Recordkeeping and Other Compliance Requirements*

Form 8-K previously consisted of 12 disclosure items. The amendments add 10 new disclosure items, including two transferred from annual and quarterly reports. All small entities that are subject to the reporting requirements of Exhange Act Sections 13(a) or 15(d) are subject to these amendments. Because reporting companies already file Form 8-K for certain events, no additional professional skills beyond those currently possessed by these filers is necessary to prepare the form for the new disclosure items.

We expect that reporting of these new disclosure items will increase costs incurred by small entities because they will have to file Form 8-K more frequently. We have calculated for purposes of the PRA that each filer, including a small entity, will be subject to an added annual reporting burden of approximately 18.75 hours n168 and an estimated annual average cost of $ 1,875 n169 for disclosure assistance from outside counsel as a result of the amendments.

n168 5 filings x 5 hours per filing x 0.75 = 18.75 hours.

n169 5 filings x 5 hours/filing x 0.25 x $ 300/hour = $ 1,875.

*E. Agency Action To Minimize Effect on Small Entities*

The RFA directs us to consider significant alternatives that would accomplish the stated objective, while minimizing any significant adverse impact on small entity issuers. In connection with the proposed revisions to Form 8-K, we considered the following alternatives: (a) The establishment of differing compliance or reporting requirements or timetables that take into account the resources available to small entities; (b) the clarification, consolidation, or

69 FR 15594, *15612

simplification of Form 8-K reporting requirements for small entities; (c) the use of performance rather than design standards; and (d) an exemption from coverage of the Form 8-K requirements, or any part thereof, for small entities.

We do not believe that small issuers will have to report more frequently than other issuers or disclose more information in their forms. We believe that different compliance or reporting requirements or timetables for small entities would interfere with achieving the primary goal of making information about significant corporate events promptly available to investors and the public securities markets. We also think that the current and proposed Form 8-K disclosure requirements are clear and straightforward. They generally require brief disclosure indicating that a specific significant corporate event has occurred. Thus, it does not seem necessary to develop separate requirements for small entities.

We recognize, however, that small entities are more likely to participate in securities offerings that constitute a relatively large percentage of their outstanding securities because such entities often do not have many securities outstanding. As a result, with regard to unregistered sales of equity securities, we are adopting a higher numeric threshold for disclosure. In the [*15613] case of small business issuers, which include small entities, such issuers must disclose unregistered sales of equity securities if the sale represents a threshold of 5% of the company's outstanding shares, rather than the 1% threshold applied to other companies.

The nature of the required disclosures under other items do not generally lend themselves to numeric thresholds that can reliably represent presumptively material occurrences. Thus, similar distinctions have not been applied to other items. We have used design rather than performance standards in connection with the Form 8-K amendments. This is because we want this disclosure to appear in a specific type of disclosure filing so that investors will know where to find information about specific significant corporate events. We also want the Form 8-K information to be filed electronically using the EDGAR filing system to facilitate dissemination of information to markets and the public. We do not believe that performance standards for small entities would be consistent with the purpose of the amendments.

**VII. Statutory Basis**

We are adopting the amendments pursuant to Sections 7, 10 and 19 of the Securities Act, as amended, and Sections 10, 12, 13, 15 and 23 of the Securities Exchange Act, as amended.

**Text of the Amendments**

**List of Subjects**

*17 CFR Part 228*

Reporting and recordkeeping requirements, Securities, Small businesses.

*17 CFR Parts 229, 230 and 239*

Reporting and recordkeeping requirements, Securities.

*17 CFR Part 240*

Brokers, Confidential business information, Fraud, Reporting and recordkeeping requirements, Securities.

*17 CFR Part 249*

Brokers, Reporting and recordkeeping requirements, Securities.

For the reasons set out in the preamble, title 17, chapter II of the Code of Federal Regulations is amended as

69 FR 15594, *15613

follows.

## PART 228--INTEGRATED DISCLOSURE SYSTEM FOR SMALL BUSINESS ISSUERS

1. The authority citation for Part 228 continues to read in part as follows:

**Authority:** *15 U.S.C. 77e,* 77f, 77g, 77h, 77j, 77k, 77s, 77z-2, 77z-3, 77aa(25), 77aa(26), 77ddd, 77eee, 77ggg, 77hhh, 77jjj, 77nnn, 77sss, 78 *l,* 78m, 78n, 78o, 78u-5, 78w, 78 *ll,* 78mm, 80a-8, 80a-29, 80a-30, 80a-37, 80b-11, and 7201 *et seq.;* and *18 U.S.C. 1350.*

* * * * *

2. Amend § 228.601 by:

a. Revising the exhibit table;

b. Adding text to paragraph (b)(7); and

c. Revising paragraphs (b)(3) and (b)(17).

The revisions and addition read as follows:

## § 228.601 (Item 601) -- Exhibits.

(a) * * *

[*15614]

### EXHIBIT TABLE ITEM 601 OF REGULATION S-B

| | Securities Act Forms | | | | Exchange Act Forms | | | |
|---|---|---|---|---|---|---|---|---|
| | SB-2 | S-2 | S-3 | S-4 fn3 | S-8 | 10-SB | 8-K fn5 | 10-QSB |
| (1) Underwriting agreement | X | X | X | X | | X | | |
| (2) Plan of purchase, sale, reorganization, arrangement, liquidation or succession | X | X | X | X | | X | X | X |
| (3)(i) Articles of Incorporation | X | | | X | | X | X | X |
| (ii) Bylaws | X | | | X | | X | X | X |
| (4) Instruments | X | X | X | X | X | X | X | X |

defining the right of security holders, including indentures

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| (5) Opinion on legality | X | X | X | | X | X | | |
| (6) No exhibit required | N/A | N/A | N/A | | N/A | N/A | N/A | N/A | N/A |
| (7) Correspondence from an independent accountant regarding non-reliance upon a previously issued audit report or completed interim review | | | | | | | | X | |
| (8) Opinion on tax matters | X | X | X | | X | | | | |
| (9) Voting trust agreement and amendments | X | | | | X | | X | | |
| (10) Material contracts | X | X | | | X | | X | | X |
| (11) Statement re: computation of per share earnings | X | X | | | X | | X | | X |
| (12) No exhibit required | N/A | N/A | N/A | | N/A | N/A | N/A | N/A | N/A |
| (13) Annual report to security holders for the last fiscal year, Form 10-Q or 10QSB or quarterly report to security holders fn1 | X | X | | | X | | | | |
| (14) Code of ethics | | | | | | | | X | |
| (15) Letter on | X | X | X | | X | X | | | X |

69 FR 15594, *15614

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| unaudited interim financial information | | | | | | | |
| (16) Letter on change in certifying accountant fn4 | X | X | | X | | X | X | |
| (17) Letter on departure of director | | | | | | X | |
| (18) Letter on change in accounting principles | | | | | | | X |
| (19) Reports furnished to security holders | | | | | | | X |
| (20) Other documents or statements to security holders or any document incorporated by reference | | | | | | | X |
| (21) Subsidiaries of the small business issuer | X | | | X | | X | |
| (22) Published report regarding matters submitted to vote of security holders | | | | | | | X |
| (23) Consents of exports and counsel | X | X | X | X | X | | X fn2 | X fn2 |
| (24) Power of attorney | X | X | X | X | X | X | X | X |
| (25) Statement of eligibility of | X | X | X | X | | | | |

69 FR 15594, *15614

trustee

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| (26) Invitations for competitive bids | | X | X | | X | X | | | |
| (27) through (30) [Reserved] | | | | | | | | | |
| (31) Rule 13a-14(a)/15d-14(a) Certifications | | | | | | | | | X |
| (32) Section 1350 Certifications | | | | | | | | | X |
| (33) through (98) [Reserved] | | | | | | | | | |
| (99) Additional exhibits | X | X | X | | X | X | X | X | X |

Exchange Act Forms
10-KS

| | |
|---|---|
| (1) Underwriting agreement | X |
| (2) Plan of purchase, sale, reorganization, arrangement, liquidation or succession | X |
| (3)(i) Articles of Incorporation | X |
| (ii) Bylaws | X |
| (4) Instruments defining the right of security holders, including indentures | X |
| (5) Opinion on legality | |

69 FR 15594, *15614

| | |
|---|---|
| (6) No exhibit required | N/A |
| (7) Correspondence from an independent accountant regarding non-reliance upon a previously issued audit report or completed interim review | |
| (8) Opinion on tax matters | |
| (9) Voting trust agreement and amendments | X |
| (10) Material contracts | X |
| (11) Statement re: computation of per share earnings | X |
| (12) No exhibit required | N/A |
| (13) Annual report to security holders for the last fiscal year, Form 10-Q or 10QSB or quarterly report to security holders fn1 | X |
| (14) Code of ethics | X |
| (15) Letter on unaudited interim financial information | |
| (16) Letter on change in certifying | X |

69 FR 15594, *15614

| | |
|---|---|
| accountant fn4 | |
| (17) Letter on departure of director | |
| (18) Letter on change in accounting principles | X |
| (19) Reports furnished to security holders | |
| (20) Other documents or statements to security holders or any document incorporated by reference | X |
| (21) Subsidiaries of the small business issuer | X |
| (22) Published report regarding matters submitted to vote of security holders | X |
| (23) Consents of exports and counsel | X fn2 |
| (24) Power of attorney | X |
| (25) Statement of eligibility of trustee | X |
| (26) Invitations for competitive bids | X |
| (27) through (30) [Reserved] | |

69 FR 15594, *15614

| | |
|---|---|
| (31) Rule 13a-14(a)/15d-14(a) Certifications | X |
| (32) Section 1350 Certifications | X |
| (33) through (98) [Reserved] | |
| (99) Additional exhibits | X |

fn1 Only if incorporated by reference into a prospectus and delivered to holders along with the prospectus as permitted by the registration statement, or in the case of a Form 10-KSB, where the annual report is incorporated by reference into the text of the Form 10-KSB.

fn2 Where the opinion of the expert or counsel has been incorporated by reference into a previously filed Securities Act registration statement.

fn3 An issuer need not provide an exhibit if. (1) an election was made under Form S-4 to provide S-2 or S-3 disclosure, and (2) the form selected (S-2 or S-) would not require the company to provide the exhibit.

fn4 If required under Item 304 of Regulation S-B.

fn5 A Form 8-K exhibit is required only if relevant to the subject matter reported on the Form 8-K report. For example, if the Form 8-K pertains to the departure of a director, only the exhibit described in paragraph (b)(17) of this section need be filed. A required exhibit may be incorporated by reference from a previous filing. [*15615]

(b) * * *

(3) *Articles of incorporation and bylaws.* (i) A complete copy of the articles of incorporation. Whenever the small business issuer files an amendment to its articles of incorporation, it must file a complete copy of the articles as amended. However, if such amendment is being reported on Form 8-K (§ 249.308 of this chapter), the small business issuer is required to file only the text of the amendment as a Form 8-K exhibit. In such case, a complete copy of the articles of incorporation as amended must be filed as an exhibit to the next Securities Act registration statement or periodic report filed by the small business issuer to which this exhibit requirement applies.

(ii) A complete copy of the bylaws. Whenever the small business issuer files an amendment to its bylaws, it must file a complete copy of the bylaws as amended. However, if such amendment is being reported on Form 8-K (§ 249.308 of this chapter), the small business issuer is required to file only the text of the amendment as a Form 8-K exhibit. In such cases, a complete copy of the bylaws as amended must be filed as an exhibit to the next Securities Act registration statement or periodic report filed by the small business issuer to which this exhibit requirement applies.

* * * * *

(7) *Correspondence from an independent accountant regarding non-reliance on a previously issued audit report or completed interim review.* Any written notice from the small business issuer's current or previously engaged independent accountant that the independent accountant is withdrawing a previously issued audit report or that a previously issued audit report or completed interim review, covering one or more years or interim periods for which the small business issuer is required to provide financial statements under this Regulation S-B, should no longer be relied upon. In addition, any letter, pursuant to Item 4.02(c) of Form 8-K (§ 249.308 of this chapter), from the independent

69 FR 15594, *15615

accountant to the Commission stating whether the independent accountant agrees with the statements made by the small business issuer describing the events giving rise to the notice.

\* \* \* \* \*

(17) *Correspondence on departure of director.* Any written correspondence from a former director concerning the circumstances surrounding the former director's retirement, resignation, refusal to stand for re-election or removal, including any letter from the former director to the small business issuer stating whether the former director agrees with statements made by the small business issuer describing the former director's departure.

\* \* \* \* \*

**PART 229--STANDARD INSTRUCTIONS FOR FILING FORMS UNDER SECURITIES ACT OF 1933, SECURITIES EXCHANGE ACT OF 1934 AND ENERGY POLICY AND CONSERVATION ACT OF 1975--REGULATION S-K**

3. The general authority citation for Part 229 is revised to read as follows:

**Authority:** *15 U.S.C. 77e, 77f, 77g, 77h, 77j, 77k, 77s, 77z-2, 77z-3, 77aa(25), 77aa(26), 77ddd, 77eee, 77ggg, 77hhh, 77iii, 77jjj, 77nnn, 77sss, 78c, 78i, 78j, 78 l, 78m, 78n, 78o, 78u-5, 78w, 78 ll, 78mm, 79e, 79j, 79n, 79t, 80a-8, 80a-9, 80a-20, 80a-29, 80a-30, 80a-31(c), 80a-37, 80a-38(a), 80a-39, 80b-11, and 7201 et seq.; and 18 U.S.C. 1350,* unless otherwise noted.

\* \* \* \* \*

4. Amend § 229.601 by:

a. Revising the exhibit table;

b. Adding text to paragraph (b)(7); and

c. Revising paragraphs (b)(3) and (b)(17).

The revisions and addition read as follows:

**§ 229.601 (Item 601) -- Exhibits.**

(a) \* \* \*

Instructions to the Exhibit Table

[*15616]

EXHIBIT TABLE ITEM 601 OF REGULATION S-K

| | Securities Act Forms | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | S-2 | S-2 | S-3 | S-4 | S-8 | S-11 | F-1 | F-2 |
| (1) Underwriting agreement | X | X | X | X | -- | X | X | X |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| (2) Plan of purchase, sale, reorganization, arrangement, liquidation or succession | X | X | X | X | -- | X | X | X |
| (3)(i) Articles of Incorporation | X | -- | -- | X | -- | X | X | -- |
| (ii) Bylaws | X | X | X | X | X | X | X | X |
| (4) Instruments defining the right of security holders, including indentures | X | X | X | X | X | X | X | X |
| (5) Opinion on legality | X | X | X | X | X | X | X | X |
| (6) [Reserved] | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| (7) Correspondence from an independent accountant regarding non-reliance on a previously issued audit report or completed interim review | -- | -- | -- | -- | -- | -- | -- | -- |
| (8) Opinion re tax matters | X | X | X | X | -- | X | X | X |
| (9) Voting trust agreement | X | -- | -- | X | -- | X | X | -- |
| (10) Material contracts | X | X - | - | X | -- | X | X | X |
| (11) Statement re: computation of per share earnings | X | X - | - | X | -- | X | X | X |
| (12) Statements re computation of ratios | X | X | X | X | -- | X | X | X |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| (13) Annual report to security holders, Form 10-Q and 10QSB or quarterly report to security holders fn1 | -- | X | -- | X | -- | -- | -- | -- |
| (14) Code of Ethics | | | | | | | | |
| (15) Letter re unaudited interim financial information | X | X | X | X | X | X | X | X |
| (16) Letter re change in certifying accountant fn4 | X | X | -- | X | -- | X | -- | -- |
| (17) Correspondence on departure of director | -- | -- | -- | -- | -- | -- | -- | -- |
| (18) Letter re change in accounting principles | -- | -- | -- | -- | -- | -- | -- | -- |
| (19) Reports furnished to security holders | -- | -- | -- | -- | -- | -- | -- | -- |
| (20) Other documents or statements to security holders | -- | -- | -- | -- | -- | -- | -- | -- |
| (21) Subsidiaries of the registrant | X | -- | -- | X | -- | X | X- | -- |
| (22) Published report regarding matters submitted to vote of security holders | -- | -- | -- | -- | -- | -- | -- | -- |
| (23) Consents of | X | X | X | X | X | X | X | X |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| exports and counsel | | | | | | | | |
| (24) Power of attorney | X | X | X | X | X | X | X | X |
| (25) Statement of eligibility of trustee | X | X | X | X | -- | X | X | X |
| (26) Invitations for competitive bids | X | X | X | X | -- | -- | X | X |
| (27) through (30) [Reserved] | | | | | | | | |
| (31) Rule 13a-14(a)/15d-14(a) Certifications | -- | -- | -- | -- | -- | -- | -- | -- |
| (32) Section 1350 Certifications | -- | -- | -- | -- | -- | -- | -- | -- |
| (33) through (98) [Reserved] | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| (99) Additional exhibits | X | X | X | X | X | X | X | X |

## EXHIBIT TABLE ITEM 601 OF REGULATION S-K

| | Securities Act Forms | | Exchange Act Forms | | | | |
|---|---|---|---|---|---|---|---|
| | F-3 fn3 | F-4 | 10 fn5 | 8-K | 10-Q | 10-K | |
| (1) Underwriting agreement | X | X | - | X | -- | -- | |
| (2) Plan of purchase, sale, reorganization, arrangement, liquidation or succession | X | X | X | X | X | X | |
| (3)(i) Articles of Incorporation | -- | X | X | X | X | X | |

69 FR 15594, *15616

| | | | | | | |
|---|---|---|---|---|---|---|
| (ii) Bylaws | -- | X | X | X | X | X |
| (4) Instruments defining the right of security holders, including indentures | X | X | X | X | X | X |
| (5) Opinion on legality | X | X | -- | -- | -- | -- |
| (6) [Reserved] | N/A | N/A | N/A | N/A | N/A | N/A |
| (7) Correspondence from an independent accountant regarding non-reliance on a previously issued audit report or completed interim review | -- | -- | -- | X | -- | -- |
| (8) Opinion re tax matters | X | X | -- | -- | -- | -- |
| (9) Voting trust agreement | -- | X | X | -- | -- | X |
| (10) Material contracts | -- | X | X | -- | X | X |
| (11) Statement re: computation of per share earnings | -- | X | X | -- | X | X |
| (12) Statements re computation of ratios | -- | X | X | -- | -- | X |
| (13) Annual report to security holders, Form 10-Q and 10QSB or quarterly report to security holders fn1 | -- | -- | -- | -- | -- | X |
| (14) Code of Ethics | | | | X | | X |
| (15) Letter re | X | X | -- | -- | X | -- |

69 FR 15594, *15616

unaudited interim financial information

| | | | | | | |
|---|---|---|---|---|---|---|
| (16) Letter re change in certifying accountant fn4 | -- | -- | X | X | -- | X |
| (17) Correspondence on departure of director | -- | -- | -- | X | -- | -- |
| (18) Letter re change in accounting principles | -- | -- | -- | -- | X | X |
| (19) Reports furnished to security holders | -- | -- | -- | -- | X | -- |
| (20) Other documents or statements to security holders | -- | -- | -- | X | -- | -- |
| (21) Subsidiaries of the registrant | -- | X | X | -- | -- | X |
| (22) Published report regarding matters submitted to vote of security holders | -- | -- | -- | -- | X | X |
| (23) Consents of exports and counsel | X | X | X | X | X | X |
| | | X | -- | fn2 | fn2 | fn2 |
| (24) Power of attorney | X | X | X | X | X | X |
| (25) Statement of eligibility of trustee | X | X | -- | -- | -- | -- |
| (26) Invitations for competitive | X | X | -- | -- | -- | -- |

69 FR 15594, *15616

| | | | | | | |
|---|---|---|---|---|---|---|
| bids | | | | | | |
| (27) through (30) [Reserved] | | | | | | |
| (31) Rule 13a-14(a)/15d-14(a) Certifications | -- | -- | -- | -- | -- | X |
| (32) Section 1350 Certifications | -- | -- | -- | -- | -- | X |
| (33) through (98) [Reserved] | NA | N/A | N/A | N/A | N/A | N/A |
| (99) Additional exhibits | X | X | X | X | X | X |

fn1 Where incorporated by reference into the text of the prospectus and delivered to security holders along with the prospectus as permitted by the registration statement; or in, the case of the Form 10-K, where the annual report to security holders is incorporated by reference into the text of the Form 10-K.

fn2 Where the opinion of the expert or counsel has been incorporated by reference into a previously filed Securities Act registration statement.

fn3 An exhibit need not be provided about a company if: (1) With respect to such company an election has been made under Form S-4 or F-4 to provide information about such company at a level prescribed by Forms S-2,S-3,F-2 or F-3 and (2) the form, the level of which has been elected under Forms S-4 or F-4, would not require such company to provide such exhibit if it were registering a primary offering.

fn4 If required under Item 304 of Regulation S-K.

fn5 A Form 8-K exhibit is required only if relevant to the subject matter reported on the Form 8-K report. For example, if the Form 8-K pertains to the departure of a director, only the exhibit described in paragraph (b)(17) of this section need be filed. A required exhibit may be incorporated by reference from a previous filing. [*15617]

(b) * * *

(3)(i) *Articles of incorporation.* The articles of incorporation of the registrant or instruments corresponding thereto as currently in effect and any amendments thereto. Whenever the registrant files an amendment to its articles of incorporation, it must file a complete copy of the articles as amended. However, if such amendment is being reported on Form 8-K (§ 249.308 of this chapter), the registrant is required to file only the text of the amendment as a Form 8-K exhibit. In such case, a complete copy of the articles of incorporation as amended must be filed as an exhibit to the next Securities Act registration statement or periodic report filed by the registrant to which this exhibit requirement applies. Where it is impracticable for the registrant to file a charter amendment authorizing new securities with the appropriate state authority prior to the effective date of the registration statement registering such securities, the registrant may file as an exhibit to the registration statement the form of amendment to be filed with the state authority. In such a case, if material changes are made after the copy is filed, the registrant must also file the changed copy.

(ii) *Bylaws.* The bylaws of the registrant or instruments corresponding thereto as currently in effect and any amendments thereto. Whenever the registrant files an amendment to the bylaws, it must file a complete copy of the amended bylaws. However, if such amendment is being reported on Form 8-K (§ 249.308 of this chapter), the registrant is required to file only the text of the amendment as a Form 8-K exhibit. In such case, a complete copy of the bylaws as

amended must be filed as an exhibit to the next Securities Act registration statement or periodic report filed by the registrant to which this exhibit requirement applies.

\* \* \* \* \*

(7) *Correspondence from an independent accountant regarding non-reliance on a previously issued audit report or completed interim review.* Any written notice from the registrant's current or previously engaged independent accountant that the independent accountant is withdrawing a previously issued audit report or that a previously issued audit report or completed interim review, covering one or more years or interim periods for which the registrant is required to provide financial statements under Regulation S-X (part 210 of this chapter), should no longer be relied upon. In addition, any letter, pursuant to Item 4.02(c) of Form 8-K (§ 249.308 of this chapter), from the independent accountant to the Commission stating whether the independent accountant agrees with the statements made by the registrant describing the events giving rise to the notice.

\* \* \* \* \*

(17) *Correspondence on departure of director.* Any written correspondence from a former director concerning the circumstances surrounding the former director's retirement, resignation, refusal to stand for re-election or removal, including any letter from the former director to the registrant stating whether the former director agrees with statements made by the registrant describing the former director's departure.

\* \* \* \* \*

**PART 230--GENERAL RULES AND REGULATIONS, SECURITIES ACT OF 1933**

5. The authority citation for part 230 continues to read in part as follows:

**Authority:** *15 U.S.C. 77b,* 77c, 77d, 77f, 77g, 77h, 77j, 77r, 77s, 77z-3, 77sss, 78c, 78d, 78j, 78 *l*, 78m, 78n, 78o, 78t, 78w, 78 *ll* (d), 78mm, 79t, 80a-8, 80a-24, 80a-28, 80a-29, 80a-30, and 80a-37, unless otherwise noted.

\* \* \* \* \* \*

6. Amend § 230.144 by revising paragraph (c)(1) to read as follows:

**§ 230.144 -- Persons deemed not to be engaged in a distribution and therefore not underwriters.**

\* \* \* \* \*

(c) \* \* \*

(1) *Filing of reports.* The issuer has securities registered pursuant to section 12 of the Securities Exchange Act of 1934, has been subject to the reporting requirements of section 13 of that Act for a period of at least 90 days immediately preceding the sale of the securities and has filed all the reports required to be filed thereunder during the 12 months preceding such sale (or for such shorter period that the issuer was required to file such reports), other than Form 8-K reports (§ 249.308 of this chapter); or has securities registered pursuant to the Securities Act of 1933, has been subject to the reporting requirements of section 15(d) of the Securities Exchange Act of 1934 for a period of at least 90 days immediately preceding the sale of the securities and has filed all the reports required to be filed thereunder during the 12 months preceding such sale (or for such shorter period that the issuer was required to file such reports), other than Form 8-K reports (§ 249.308 of this chapter). The person for whose account the securities are to be sold shall be entitled to rely upon a statement in whichever is the most recent report, quarterly or annual, required to be filed and filed by the issuer that such issuer has filed all reports required to be filed by section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the issuer was required to file

69 FR 15594, *15617

such reports), other than Form 8-K reports (§ 249.308 of this chapter), and has been subject to such filing requirements for the past 90 days, unless he knows or has reason to believe that the issuer has not complied with such requirements. Such person shall also be entitled to rely upon a written statement from the issuer that it has complied with such reporting requirements unless he knows or has reasons to believe that the issuer has not complied with such requirements.

\* \* \* \* \*

**PART 239--FORMS PRESCRIBED UNDER THE SECURITIES ACT OF 1933**

7. The authority citation for part 239 continues to read in part as follows:

**Authority:** *15 U.S.C. 77f,* 77g, 77h, 77j, 77s, 77z-2, 77sss, 78c, 78 *l*, 78m, 78n, 78o(d), 78u-5, 78w(a), 78 *ll* (d), 79e, 79f, 79g, 79j, 79 *l*, 79m, 79n, 79q, 79t, 80a-8, 80a-24, 80a-26, 80a-29, 80a-30, and 80a-37, unless otherwise noted.

\* \* \* \* \*

8. Amend § 239.12 by revising paragraph (c)(2) to read as follows:

**§ 239.12 -- Form S-2, for registration under the Securities Act of 1933 of securities of certain issuers.**

\* \* \* \* \*

(c) \* \* \*

(2) Has filed in a timely manner all reports required to be filed during the twelve calendar months and any portion of a month immediately preceding the filing of the registration statement, other than a report that is required solely pursuant to Item 1.01, 1.02, 2.03, 2.04, 2.05, 2.06 or 4.02(a) of Form 8-K (§ 249.308 of this chapter). If the registrant has used (during the twelve calendar months and any portion of a month immediately preceding the filing of the registration statement) § 240.12b-25(b) of this chapter with respect to a report or a portion of a report, that report or portion thereof has actually been filed within the time period prescribed by that section; and

\* \* \* \* \*

9. Amend Form S-2 (referenced in § 239.12) by revising General Instruction I.(C) to read as follows:

**Note.**-The text of Form S-2 does not, and this amendment will not, appear in the Code of Federal Regulations. [*15618]

**Form S-2--Registration Statement Under the Securities Act of 1933**

\* \* \* \* \*

*General Instructions*

I. \* \* \*

C. The registrant:

(1) Has been subject to the requirements of Section 12 or 15(d) of the Exchange Act and has filed all the material required to be filed pursuant to Section 12, 14 or 15(d) for a period of at least thirty-six calendar months immediately preceding the filing of the registration statement on this Form; and

(2) has filed in a timely manner all reports required to be filed during the twelve calendar months and any portion of a month immediately preceding the filing of the registration statement, other than a report that is required solely pursuant to Item 1.01, 1.02, 2.03, 2.04, 2.05, 2.06 or 4.02(a) of Form 8-K (§ 249.308 of this chapter). If the registrant has used (during the twelve calendar months and any portion of a month immediately preceding the filing of the registration statement) Rule 12b-25(b) (§ 240.12b-25(b) of this chapter) under the Exchange Act with respect to a report or a portion of a report, that report or portion thereof has actually been filed within the time period prescribed by that rule.

\* \* \* \* \*

10. Amend § 239.13 by removing the authority citation following the section and revising paragraph (a)(3)(ii) to read as follows:

**§ 239.13 -- Form S-3, for registration under the Securities Act of 1933 of securities of certain issuers offered pursuant to certain types of transactions.**

\* \* \* \* \*

(a) \* \* \*

(3) \* \* \*

(ii) Has filed in a timely manner all reports required to be filed during the twelve calendar months and any portion of a month immediately preceding the filing of the registration statement, other than a report that is required solely pursuant to Item 1.01, 1.02, 2.03, 2.04, 2.05, 2.06 or 4.02(a) of Form 8-K (§ 249.308 of this chapter). If the registrant has used (during the twelve calendar months and any portion of a month immediately preceding the filing of the registration statement) § 240.12b-25(b) of this chapter with respect to a report or a portion of a report, that report or portion thereof has actually been filed within the time period prescribed by that section; and

\* \* \* \* \*

11. Amend Form S-3 (referenced in § 239.13) by revising General Instruction I.A.3 to read as follows:

**Note.-** The text of Form S-3 does not, and this amendment will not, appear in the Code of Federal Regulations.

**Form S-3--Registration Statement Under the Securities Act of 1933**

\* \* \* \* \*

*General Instructions*

I. \* \* \*

A. \* \* \*

3. The registrant:

(a) Has been subject to the requirements of Section 12 or 15(d) of the Exchange Act and has filed all the material required to be filed pursuant to Section 12, 14 or 15(d) for a period of at least twelve calendar months immediately preceding the filing of the registration statement on this Form; and

(b) has filed in a timely manner all reports required to be filed during the twelve calendar months and any portion of a month immediately preceding the filing of the registration statement, other than a report that is required solely

pursuant to Item 1.01, 1.02, 2.03, 2.04, 2.05, 2.06 or 4.02(a) of Form 8-K (§ 249.308 of this chapter). If the registrant has used (during the twelve calendar months and any portion of a month immediately preceding the filing of the registration statement) Rule 12b-25(b) (§ 240.12b-25(b) of this chapter) under the Exchange Act with respect to a report or a portion of a report, that report or portion thereof has actually been filed within the time period prescribed by that rule.

* * * * *

**PART 240--GENERAL RULES AND REGULATIONS, SECURITIES EXCHANGE ACT OF 1934**

12. The authority citation for part 240 continues to read in part as follows:

**Authority:** *15 U.S.C. 77c,* 77d, 77g, 77j, 77s, 77z-2, 77z-3, 77eee, 77ggg, 77nnn, 77sss, 77ttt, 78c, 78d, 78e, 78f, 78g, 78i, 78j, 78j-1, 78k, 78k-1, 78 *l,* 78m, 78n, 78o, 78p, 78q, 78s, 78u-5, 78w, 78x, 78 *ll,* 78mm, 79q, 79t, 80a-20, 80a-23, 80a-29, 80a-37, 80b-3, 80b-4, 80b-11, and 7201 *et seq.;* and *18 U.S.C. 1350,* unless otherwise noted.

* * * * *

13. Amend § 240.12b-23 by revising paragraphs (a)(3)(i) and (ii) and adding paragraph (a)(3)(iii) to read as follows:

**§ 240.12b-23 -- Incorporation by reference.**

* * * * *

(a) * * *

(3) * * *

(i) A proxy or information statement incorporated by reference in response to Part III of Form 10-K and Form 10-KSB (*17 CFR 249.310* and *249.310b*);

(ii) A form of prospectus filed pursuant to *17 CFR 230.424(b)* incorporated by reference in response to Item 1 of Form 8-A (*17 CFR 249.208a*); and

(iii) Information filed on Form 8-K (*17 CFR 249.308*) need not be filed as an exhibit.

* * * * *

14. Amend § 240.13a-10 by revising Note 1 at the end of the section to read as follows:

**§ 240.13a-10 -- Transition reports.**

* * * * *

**Note 1:** In addition to the report or reports required to be filed pursuant to this section, every issuer, except a foreign private issuer or an investment company required to file reports pursuant to § 270.30b1-1 of this chapter, that changes its fiscal closing date is required to file a Form 8-K (§ 249.308 of this chapter) report that includes the information required by Item 5.03 of Form 8-K within the period specified in General Instruction B.1. to that form.

* * * * *

15. Amend § 240.13a-11 by adding paragraph (c) to read as follows:

**§ 240.13a-11 -- Current reports on Form 8-K (§ 249.308 of this chapter).**

* * * * *

(c) No failure to file a report on Form 8-K that is required solely pursuant to Item 1.01, 1.02, 2.03, 2.04, 2.05, 2.06 or 4.02(a) of Form 8-K shall be deemed to be a violation of *15 U.S.C. 78j*(b) and § 240.10b-5.

16. Amend § 240.15d-10 by revising Note 1 at the end of the section to read as follows:

**§ 240.15d-10 -- Transition reports.**

* * * * *

**Note 1:** In addition to the report or reports required to be filed pursuant to this section, every issuer, except a foreign private issuer or an investment company required to file reports pursuant to § 270.30b1-1 of this chapter, that changes its fiscal closing date is required to file a Form 8-K (§ 249.308 of this chapter) report that includes the information required by Item 5.03 of Form 8-K within the period specified in General Instruction B.1. to that form.

* * * * *

17. Amend § 240.15d-11 by adding paragraph (c) to read as follows:

**§ 240.15d-11 -- Current reports on Form 8-K (§ 249.308 of this chapter).**

* * * * *

(c) No failure to file a report on Form 8-K that is required solely pursuant to Item 1.01, 1.02, 2.03, 2.04, 2.05, 2.06 or 4.02(a) of Form 8-K shall be deemed to [*15619] be a violation of *15 U.S.C. 78j*(b) and § 240.10b-5.

**PART 249--FORMS, SECURITIES EXCHANGE ACT OF 1934**

18. The authority citation for part 249 continues to read in part as follows:

**Authority:** *15 U.S.C. 78a et seq.* and 7201 *et seq.*; and *18 U.S.C. 1350,* unless otherwise noted.

* * * * *

19. Amend Form 8-K (referenced in § 249.308) by:

a. Adding the "check the appropriate box" paragraph directly above the General Instructions on the cover page;

b. Revising the heading for General Instruction A, designating the current text as paragraph 1 and adding paragraph 2;

c. Revising General Instruction B; and

d. Revising all of the items appearing under the caption "Information to Be Included in the Report" after the General Instructions.

The revisions and addition read as follows:

**Note.-**The text of Form 8-K does not, and this amendment will not, appear in the Code of Federal Regulations.

69 FR 15594, *15619

**Form 8-K--Current Report Pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934**

\* \* \* \* \*

Check the appropriate box below if the Form 8-K filing is intended to simultaneously satisfy the filing obligation of the registrant under any of the following provisions (*see* General Instruction A.2. below):

[] Written communications pursuant to Rule 425 under the Securities Act (*17 CFR 230.425*)

[] Soliciting material pursuant to Rule 14a-12(b) under the Exchange Act (*17 CFR 240.14a-12(b)*)

[] Pre-commencement communications pursuant to Rule 14d-2(b) under the Exchange Act (*17 CFR 240.14d-2(b)*)

*General Instructions*

A. Rules as to Use of Form 8-K.

1. \* \* \*

2. Form 8-K may be used by a registrant to satisfy its filing obligations pursuant to Rule 425 under the Securities Act, regarding written communications related to business combination transactions, or Rules 14a-12(b) or Rule 14d-2(b) under the Exchange Act, relating to soliciting materials and pre-commencement communications pursuant to tender offers, respectively, provided that the Form 8-K filing satisfies all the substantive requirements of those rules (other than the Rule 425(c) requirement to include certain specified information in any prospectus filed pursuant to such rule). Such filing is also deemed to be filed pursuant to any rule for which the box is checked. A registrant is not required to check the box in connection with Rule 14a-12(b) or Rule 14d-2(b) if the communication is filed pursuant to Rule 425. Communications filed pursuant to Rule 425 are deemed filed under the other applicable sections. See Note 2 to Rule 425, Rule 14a-12(b) and Instruction 2 to Rule 14d-2(b)(2).

B. Events To Be Reported and Time for Filing of Reports.

1. A report on this form is required to be filed or furnished, as applicable, upon the occurrence of any one or more of the events specified in the items in Sections 1-6 and 9 of this form. Unless otherwise specified, a report is to be filed or furnished within four business days after occurrence of the event. If the event occurs on a Saturday, Sunday or holiday on which the Commission is not open for business, then the four business day period shall begin to run on, and include, the first business day thereafter. A registrant either furnishing a report on this form under Item 7.01 (Regulation FD Disclosure) or electing to file a report on this form under Item 8.01 (Other Events) solely to satisfy its obligations under Regulation FD (*17 CFR 243.100 and 243.101*) must furnish such report or make such filing, as applicable, in accordance with the requirements of Rule 100(a) of Regulation FD (*17 CFR 243.100(a)*), including the deadline for furnishing or filing such report.

2. The information in a report furnished pursuant to Item 2.02 (Results of Operations and Financial Condition) or Item 7.01 (Regulation FD Disclosure) shall not be deemed to be "filed" for purposes of Section 18 of the Exchange Act or otherwise subject to the liabilities of that section, unless the registrant specifically states that the information is to be considered "filed" under the Exchange Act or incorporates it by reference into a filing under the Securities Act or the Exchange Act. If a report on Form 8-K contains disclosures under Item 2.02 or Item 7.01, whether or not the report contains disclosures regarding other items, all exhibits to such report relating to Item 2.02 or Item 7.01 will be deemed furnished, and not filed, unless the registrant specifies, under Item 9.01 (Financial Statements and Exhibits), which exhibits, or portions of exhibits, are intended to be deemed filed rather than furnished pursuant to this instruction.

3. If the registrant previously has reported substantially the same information as required by this form, the registrant

need not make an additional report of the information on this form. To the extent that an item calls for disclosure of developments concerning a *previously reported* event or transaction, any information required in the new report or amendment about the previously reported event or transaction may be provided by incorporation by reference to the previously filed report. The term *previously reported* is defined in Rule 12b-2 (*17 CFR 240.12b-2*).

4. Copies of agreements, amendments or other documents or instruments required to be filed pursuant to Form 8-K are not required to be filed or furnished as exhibits to the Form 8-K unless specifically required to be filed or furnished by the applicable Item. This instruction does not affect the requirement to otherwise file such agreements, amendments or other documents or instruments, including as exhibits to registration statements and periodic reports pursuant to the requirements of Item 601 of Regulation S-K or Item 601 of Regulation S-B, as applicable.

5. When considering current reporting on this form, particularly of other events of material importance pursuant to Item 7.01 (Regulation FD Disclosure) and Item 8.01 (Other Events), registrants should have due regard for the accuracy, completeness and currency of the information in registration statements filed under the Securities Act which incorporate by reference information in reports filed pursuant to the Exchange Act, including reports on this form.

6. A registrant's report under Item 7.01 (Regulation FD Disclosure) or Item 8.01 (Other Events) will not be deemed an admission as to the materiality of any information in the report that is required to be disclosed solely by Regulation FD.

\* \* \* \* \*

**Information To Be Included in the Report**

*Section 1--Registrant's Business and Operations*

Item 1.01 Entry into a Material Definitive Agreement.

(a) If the registrant has entered into a material definitive agreement not made in the ordinary course of business of the registrant, or into any amendment of such agreement that is material to the registrant, disclose the following information:

(1) The date on which the agreement was entered into or amended, the identity of the parties to the agreement [*15620] or amendment and a brief description of any material relationship between the registrant or its affiliates and any of the parties, other than in respect of the material definitive agreement or amendment; and

(2) A brief description of the terms and conditions of the agreement or amendment that are material to the registrant.

(b) For purposes of this Item 1.01, a *material definitive agreement* means an agreement that provides for obligations that are material to and enforceable against the registrant, or rights that are material to the registrant and enforceable by the registrant against one or more other parties to the agreement, in each case whether or not subject to conditions.

*Instructions.*

1. Any material definitive agreement of the registrant not made in the ordinary course of the registrant's business must be disclosed under this Item 1.01. An agreement is deemed to be not made in the ordinary course of a registrant's business even if the agreement is such as ordinarily accompanies the kind of business conducted by the registrant if it involves the subject matter identified in Item 601(b)(10)(ii)(A)-(D) of Regulation S-K (*17 CFR 229.601(b)(10)(ii)(A)-(D)*). An agreement involving the subject matter identified in Item 601(b)(10)(iii)(A) or (B) also must be disclosed unless Item 601(b)(10)(iii)(C) would not require the registrant to file a material agreement involving

69 FR 15594, *15620

the same subject matter as an exhibit.

2. A registrant must provide disclosure under this Item 1.01 if the registrant succeeds as a party to the agreement or amendment to the agreement by assumption or assignment (other than in connection with a merger or acquisition or similar transaction).

Item 1.02 Termination of a Material Definitive Agreement

(a) If a material definitive agreement which was not made in the ordinary course of business of the registrant and to which the registrant is a party is terminated otherwise than by expiration of the agreement on its stated termination date, or as a result of all parties completing their obligations under such agreement, and such termination of the agreement is material to the registrant, disclose the following information:

(1) The date of the termination of the material definitive agreement, the identity of the parties to the agreement and a brief description of any material relationship between the registrant or its affiliates and any of the parties other than in respect of the material definitive agreement;

(2) a brief description of the terms and conditions of the agreement that are material to the registrant;

(3) A brief description of the material circumstances surrounding the termination; and

(4) Any material early termination penalties incurred by the registrant.

(b) For purposes of this Item 1.02, the term *material definitive agreement* shall have the same meaning as set forth in Item 1.01(b).

*Instructions.*

1. No disclosure is required solely by reason of this Item 1.02 during negotiations or discussions regarding termination of a material definitive agreement unless and until the agreement has been terminated.

2. No disclosure is required solely by reason of this Item 1.02 if the registrant believes in good faith that the material definitive agreement has not been terminated, unless the registrant has received a notice of termination pursuant to the terms of agreement.

Item 1.03 Bankruptcy or Receivership

(a) If a receiver, fiscal agent or similar officer has been appointed for a registrant or its parent, in a proceeding under the Bankruptcy Act or in any other proceeding under state or federal law in which a court or governmental authority has assumed jurisdiction over substantially all of the assets or business of the registrant or its parent, or if such jurisdiction has been assumed by leaving the existing directors and officers in possession but subject to the supervision and orders of a court or governmental authority, disclose the following information:

(1) The name or other identification of the proceeding;

(2) The identity of the court or governmental authority;

(3) The date that jurisdiction was assumed; and

(4) The identity of the receiver, fiscal agent or similar officer and the date of his or her appointment.

(b) If an order confirming a plan of reorganization, arrangement or liquidation has been entered by a court or governmental authority having supervision or jurisdiction over substantially all of the assets or business of the registrant

69 FR 15594, *15620

or its parent, disclose the following;

(1) The identity of the court or governmental authority;

(2) The date that the order confirming the plan was entered by the court or governmental authority;

(3) A summary of the material features of the plan and, pursuant to Item 9.01 (Financial Statements and Exhibits), a copy of the plan as confirmed;

(4) The number of shares or other units of the registrant or its parent issued and outstanding, the number reserved for future issuance in respect of claims and interests filed and allowed under the plan, and the aggregate total of such numbers; and

(5) Information as to the assets and liabilities of the registrant or its parent as of the date that the order confirming the plan was entered, or a date as close thereto as practicable.

*Instruction.*

The information called for in paragraph (b)(5) of this Item 1.03 may be presented in the form in which it was furnished to the court or governmental authority.

*Section 2--Financial Information*

Item 2.01 Completion of Acquisition or Disposition of Assets

If the registrant or any of its majority-owned subsidiaries has completed the acquisition or disposition of a significant amount of assets, otherwise than in the ordinary course of business, disclose the following information:

(a) The date of completion of the transaction;

(b) a brief description of the assets involved;

(c) the identity of the person(s) from whom the assets were acquired or to whom they were sold and the nature of any material relationship, other than in respect of the transaction, between such person(s) and the registrant or any of its affiliates, or any director or officer of the registrant, or any associate of any such director or officer;

(d) the nature and amount of consideration given or received for the assets and, if any material relationship is disclosed pursuant to paragraph (c) of this Item 2.01, the formula or principle followed in determining the amount of such consideration; and

(e) if the transaction being reported is an acquisition and if any material relationship is disclosed pursuant to paragraph (c) of this Item 2.01, the source(s) of the funds used unless all or any part of the consideration used is a loan made in the ordinary course of business by a bank as defined by Section 3(a)(6) of the Act, in which case the identity of such bank may be omitted provided the registrant:

(1) Has made a request for confidentiality pursuant to Section 13(d)(1)(B) of the Act; and

(2) states in the report that the identity of the bank has been so omitted and filed separately with the Commission. [*15621]

*Instructions.*

1. No information need be given as to:

69 FR 15594, *15621

(i) Any transaction between any person and any wholly-owned subsidiary of such person;

(ii) any transaction between two or more wholly-owned subsidiaries of any person; or

(iii) the redemption or other acquisition of securities from the public, or the sale or other disposition of securities to the public, by the issuer of such securities or by a wholly-owned subsidiary of that issuer.

2. The term acquisition includes every purchase, acquisition by lease, exchange, merger, consolidation, succession or other acquisition, except that the term does not include the construction or development of property by or for the registrant or its subsidiaries or the acquisition of materials for such purpose. The term disposition includes every sale, disposition by lease, exchange, merger, consolidation, mortgage, assignment or hypothecation of assets, whether for the benefit of creditors or otherwise, abandonment, destruction, or other disposition.

3. The information called for by this Item 2.01 is to be given as to each transaction or series of related transactions of the size indicated. The acquisition or disposition of securities is deemed the indirect acquisition or disposition of the assets represented by such securities if it results in the acquisition or disposition of control of such assets.

4. An acquisition or disposition shall be deemed to involve a significant amount of assets:

(i) if the registrant's and its other subsidiaries' equity in the net book value of such assets or the amount paid or received for the assets upon such acquisition or disposition exceeded 10% of the total assets of the registrant and its consolidated subsidiaries; or

(ii) if it involved a business (see *17 CFR 210.11-01(d)*) that is significant (see *17 CFR 210.11-01(b)*).

Acquisitions of individually insignificant businesses are not required to be reported pursuant to this Item 2.01 unless they are related businesses (see *17 CFR 210.3-05(a)(3)*) and are significant in the aggregate.

5. Attention is directed to the requirements in Item 9.01 (Financial Statements and Exhibits) with respect to the filing of:

(i) financial statements of businesses acquired;

(ii) pro forma financial information; and

(iii) copies of the plans of acquisition or disposition as exhibits to the report.

**Item 2.02 Results of Operations and Financial Condition.**

(a) If a registrant, or any person acting on its behalf, makes any public announcement or release (including any update of an earlier announcement or release) disclosing material non-public information regarding the registrant's results of operations or financial condition for a completed quarterly or annual fiscal period, the registrant shall disclose the date of the announcement or release, briefly identify the announcement or release and include the text of that announcement or release as an exhibit.

(b) A Form 8-K is not required to be furnished to the Commission under this Item 2.02 in the case of disclosure of material non-public information that is disclosed orally, telephonically, by webcast, by broadcast, or by similar means if:

(1) The information is provided as part of a presentation that is complementary to, and initially occurs within 48 hours after, a related, written announcement or release that has been furnished on Form 8-K pursuant to this Item 2.02 prior to the presentation;

(2) the presentation is broadly accessible to the public by dial-in conference call, by webcast, by broadcast or by similar means;

(3) the financial and other statistical information contained in the presentation is provided on the registrant's website, together with any information that would be required under *17 CFR 244.100*; and

(4) The presentation was announced by a widely disseminated press release, that included instructions as to when and how to access the presentation and the location on the registrant's Web site where the information would be available.

*Instructions.*

1. The requirements of this Item 2.02 are triggered by the disclosure of material non-public information regarding a completed fiscal year or quarter. Release of additional or updated material non-public information regarding a completed fiscal year or quarter would trigger an additional Item 2.02 requirement.

2. The requirements of paragraph (e)(1)(i) of Item 10 of Regulation S-K (*17 CFR 229.10(e)(1)(i)*) (or paragraph (h)(1)(i) of Item 10 of Regulation S-B (*17 CFR 228.10(h)(1)(i)*) in the case of a small business issuer) shall apply to disclosures under this Item 2.02.

3. Issuers that make earnings announcements or other disclosures of material non-public information regarding a completed fiscal year or quarter in an interim or annual report to shareholders are permitted to specify which portion of the report contains the information required to be furnished under this Item 2.02.

4. This Item 2.02 does not apply in the case of a disclosure that is made in a quarterly report filed with the Commission on Form 10-Q (*17 CFR 249.308a*) (or Form 10-QSB (*17 CFR 249.308b*)) or an annual report filed with the Commission on Form 10-K (*17 CFR 249.310*) (or Form 10-KSB (*17 CFR 249.310b*)).

Item 2.03 Creation of a Direct Financial Obligation or an Obligation Under an Off-Balance Sheet Arrangement of a Registrant

(a) If the registrant becomes obligated on a direct financial obligation that is material to the registrant, disclose the following information:

(1) The date on which the registrant becomes obligated on the direct financial obligation and a brief description of the transaction or agreement creating the obligation;

(2) The amount of the obligation, including the terms of its payment and, if applicable, a brief description of the material terms under which it may be accelerated or increased and the nature of any recourse provisions that would enable the registrant to recover from third parties; and

(3) A brief description of the other terms and conditions of the transaction or agreement that are material to the registrant.

(b) If the registrant becomes directly or contingently liable for an obligation that is material to the registrant arising out of an off-balance sheet arrangement, disclose the following information:

(1) The date on which the registrant becomes directly or contingently liable on the obligation and a brief description of the transaction or agreement creating the arrangement and obligation;

(2) A brief description of the nature and amount of the obligation of the registrant under the arrangement, including the material terms whereby it may become a direct obligation, if applicable, or may be accelerated or increased and the nature of any recourse provisions that would enable the registrant to recover from third parties;

69 FR 15594, *15621

(3) The maximum potential amount of future payments (undiscounted) that the registrant may be required to make, if different; and

(4) A brief description of the other terms and conditions of the obligation or arrangement that are material to the registrant. [*15622]

(c) For purposes of this Item 2.03, *direct financial obligation* means any of the following:

(1) A long-term debt obligation, as defined in Item 303(a)(5)(ii)(A) of Regulation S-K (*17 CFR 229.303(a)(5)(ii)(A)*);

(2) A capital lease obligation, as defined in Item 303(a)(5)(ii)(B) of Regulation S-K (*17 CFR 229.303(a)(5)(ii)(B)*);

(3) An operating lease obligation, as defined in Item 303(a)(5)(ii)(C) of Regulation S-K (*17 CFR 229.303(a)(5)(ii)(C)*); or

(4) A short-term debt obligation that arises other than in the ordinary course of business.

(d) For purposes of this Item 2.03, *off-balance sheet arrangement* has the meaning set forth in Item 303(a)(4)(ii) of Regulation S-K (*17 CFR 229.303(a)(4)(ii)*) or Item 303(c)(2) of Regulation S-B (*17 CFR 228.303(c)(2)*), as applicable.

(e) For purposes of this Item 2.03, *short-term debt obligation* means a payment obligation under a borrowing arrangement that is scheduled to mature within one year, or, for those registrants that use the operating cycle concept of working capital, within a registrant's operating cycle that is longer than one year, as discussed in Accounting Research Bulletin No. 43, Chapter 3A, *Working Capital*.

*Instructions.*

1. A registrant has no obligation to disclose information under this Item 2.03 until the registrant enters into an agreement enforceable against the registrant, whether or not subject to conditions, under which the direct financial obligation will arise or be created or issued. If there is no such agreement, the registrant must provide the disclosure within four business days after the occurrence of the closing or settlement of the transaction or arrangement under which the direct financial obligation arises or is created.

2. A registrant must provide the disclosure required by paragraph (b) of this Item 2.03 whether or not the registrant is also a party to the transaction or agreement creating the contingent obligation arising under the off-balance sheet arrangement. In the event that neither the registrant nor any affiliate of the registrant is also a party to the transaction or agreement creating the contingent obligation arising under the off-balance sheet arrangement in question, the four business day period for reporting the event under this Item 2.03 shall begin on the earlier of (i) the fourth business day after the contingent obligation is created or arises, and (ii) the day on which an executive officer, as defined in *17 CFR 240.3b-7*, of the registrant becomes aware of the contingent obligation.

3. In the event that an agreement, transaction or arrangement requiring disclosure under this Item 2.03 comprises a facility, program or similar arrangement that creates or may give rise to direct financial obligations of the registrant in connection with multiple transactions, the registrant shall:

(i) Disclose the entering into of the facility, program or similar arrangement if the entering into of the facility is material to the registrant; and

(ii) As direct financial obligations arise or are created under the facility or program, disclose the required information under this Item 2.03 to the extent that the obligations are material to the registrant (including when a series of previously undisclosed individually immaterial obligations become material in the aggregate).

4. For purposes of Item 2.03(b)(3), the maximum amount of future payments shall not be reduced by the effect of any amounts that may possibly be recovered by the registrant under recourse or collateralization provisions in any guarantee agreement, transaction or arrangement.

5. If the obligation required to be disclosed under this Item 2.03 is a security, or a term of a security, that has been or will be sold pursuant to an effective registration statement of the registrant, the registrant is not required to file a Form 8-K pursuant to this Item 2.03, *provided* that the prospectus relating to that sale contains the information required by this Item 2.03 and is filed within the required time period under Securities Act Rule 424 (§ 230.424 of this chapter).

Item 2.04 Triggering Events That Accelerate or Increase a Direct Financial Obligation or an Obligation Under an Off-Balance Sheet Arrangement

(a) If a triggering event causing the increase or acceleration of a direct financial obligation of the registrant occurs and the consequences of the event, taking into account those described in paragraph (a)(4) of this Item 2.04, are material to the registrant, disclose the following information:

(1) The date of the triggering event and a brief description of the agreement or transaction under which the direct financial obligation was created and is increased or accelerated;

(2) A brief description of the triggering event;

(3) The amount of the direct financial obligation, as increased if applicable, and the terms of payment or acceleration that apply; and

(4) Any other material obligations of the registrant that may arise, increase, be accelerated or become direct financial obligations as a result of the triggering event or the increase or acceleration of the direct financial obligation.

(b) If a triggering event occurs causing an obligation of the registrant under an off-balance sheet arrangement to increase or be accelerated, or causing a contingent obligation of the registrant under an off-balance sheet arrangement to become a direct financial obligation of the registrant, and the consequences of the event, taking into account those described in paragraph (b)(4) of this Item 2.04, are material to the registrant, disclose the following information:

(1) The date of the triggering event and a brief description of the off-balance sheet arrangement;

(2) As brief description of the triggering event;

(3) The nature and amount of the obligation, as increased if applicable, and the terms of payment or acceleration that apply; and

(4) Any other material obligations of the registrant that may arise, increase, be accelerated or become direct financial obligations as a result of the triggering event or the increase or acceleration of the obligation under the off-balance sheet arrangement or its becoming a direct financial obligation of the registrant.

(c) For purposes of this Item 2.04, the term *direct financial obligation* has the meaning provided in Item 2.03 of this form, but shall also include an obligation arising out of an off-balance sheet arrangement that is accrued under FASB Statement of Financial Accounting Standards No. 5 *Accounting for Contingencies* (SFAS No. 5) as a probable loss contingency.

(d) For purposes of this Item 2.04, the term *off-balance sheet arrangement* has the meaning provided in Item 2.03 of this form.

(e) For purposes of this Item 2.04, a *triggering event* is an event, including an event of default, event of acceleration or similar event, as a result of which a direct financial obligation of the registrant or an obligation of the registrant

arising under an off-balance sheet arrangement is increased or becomes accelerated or as a result of which a contingent obligation of the registrant arising out of an off-balance sheet arrangement becomes a direct financial obligation of the registrant.

*Instructions.*

1. Disclosure is required if a triggering event occurs in respect of an obligation of the registrant under an off-balance sheet arrangement and the [*15623] consequences are material to the registrant, whether or not the registrant is also a party to the transaction or agreement under which the triggering event occurs.

2. No disclosure is required under this Item 2.04 unless and until a triggering event has occurred in accordance with the terms of the relevant agreement, transaction or arrangement, including, if required, the sending to the registrant of notice of the occurrence of a triggering event pursuant to the terms of the agreement, transaction or arrangement and the satisfaction of all conditions to such occurrence, except the passage of time.

3. No disclosure is required solely by reason of this Item 2.04 if the registrant believes in good faith that no triggering event has occurred, unless the registrant has received a notice described in Instruction 2 to this Item 2.04.

4. Where a registrant is subject to an obligation arising out of an off-balance sheet arrangement, whether or not disclosed pursuant to Item 2.03 of this form, if a triggering event occurs as a result of which under that obligation an accrual for a probable loss is required under SFAS No. 5, the obligation arising out of the off-balance sheet arrangement becomes a direct financial obligation as defined in this Item 2.04. In that situation, if the consequences as determined under Item 2.04(b) are material to the registrant, disclosure is required under this Item 2.04.

Item 2.05 Costs Associated With Exit or Disposal Activities

If the registrant's board of directors, a committee of the board of directors or the officer or officers of the registrant authorized to take such action if board action is not required, commits the registrant to an exit or disposal plan, or otherwise disposes of a long-lived asset or terminates employees under a plan of termination described in paragraph 8 of FASB Statement of Financial Accounting Standards No. 146 *Accounting for Costs Associated with Exit or Disposal Activities* (SFAS No. 146), under which material charges will be incurred under generally accepted accounting principles applicable to the registrant, disclose the following information:

(a) The date of the commitment to the course of action and a description of the course of action, including the facts and circumstances leading to the expected action and the expected completion date;

(b) For each major type of cost associated with the course of action (for example, one-time termination benefits, contract termination costs and other associated costs), an estimate of the total amount or range of amounts expected to be incurred in connection with the action;

(c) An estimate of the total amount or range of amounts expected to be incurred in connection with the action; and

(d) The registrant's estimate of the amount or range of amounts of the charge that will result in future cash expenditures, *provided, however,* that if the registrant determines that at the time of filing it is unable in good faith to make a determination of an estimate required by paragraphs (b), (c) or (d) of this Item 2.05, no disclosure of such estimate shall be required; *provided further, however,* that in any such event, the registrant shall file an amended report on Form 8-K under this Item 2.05 within four business days after it makes a determination of such an estimate or range of estimates.

Item 2.06 Material Impairments

If the registrant's board of directors, a committee of the board of directors or the officer or officers of the registrant

69 FR 15594, *15623

authorized to take such action if board action is not required, concludes that a material charge for impairment to one or more of its assets, including, without limitation, impairments of securities or goodwill, is required under generally accepted accounting principles applicable to the registrant, disclose the following information:

(a) The date of the conclusion that a material charge is required and a description of the impaired asset or assets and the facts and circumstances leading to the conclusion that the charge for impairment is required;

(b) The registrant's estimate of the amount or range of amounts of the impairment charge; and

(c) The registrant's estimate of the amount or range of amounts of the impairment charge that will result in future cash expenditures, *provided, however,* that if the registrant determines that at the time of filing it is unable in good faith to make a determination of an estimate required by paragraphs (b) or (c) of this Item 2.06, no disclosure of such estimate shall be required; *provided further, however,* that in any such event, the registrant shall file an amended report on Form 8-K under this Item 2.06 within four business days after it makes a determination of such an estimate or range of estimates.

*Instruction.*

No filing is required under this Item 2.06 if the conclusion is made in connection with the preparation, review or audit of financial statements required to be included in the next periodic report due to be filed under the Exchange Act, the periodic report is filed on a timely basis and such conclusion is disclosed in the report.

*Section 3--Securities and Trading Markets*

Item 3.01 Notice of Delisting or Failure To Satisfy a Continued Listing Rule or Standard; Transfer of Listing

(a) If the registrant has received notice from the national securities exchange or national securities association (or a facility thereof) that maintains the principal listing for any class of the registrant's common equity (as defined in Exchange Act Rule 12b-2 (*17 CFR 240.12b-2*)) that:

. The registrant or such class of the registrant's securities does not satisfy a rule or standard for continued listing on the exchange or association;

. The exchange has submitted an application under Exchange Act Rule 12d2-2 (*17 CFR 240.12d2-2*) to the Commission to delist such class of the registrant's securities; or

. The association has taken all necessary steps under its rules to delist the security from its automated inter-dealer quotation system, the registrant must disclose:

(i) The date that the registrant received the notice;

(ii) The rule or standard for continued listing on the national securities exchange or national securities association that the registrant fails, or has failed to, satisfy; and

(iii) Any action or response that, at the time of filing, the registrant has determined to take in response to the notice.

(b) If the registrant has notified the national securities exchange or national securities association (or a facility thereof) that maintains the principal listing for any class of the registrant's common equity (as defined in Exchange Act Rule 12b-2 (*17 CFR 240.12b-2*)) that the registrant is aware of any material noncompliance with a rule or standard for continued listing on the exchange or association, the registrant must disclose:

(i) The date that the registrant provided such notice to the exchange or association;

69 FR 15594, *15623

(ii) The rule or standard for continued listing on the exchange or association that the registrant fails, or has failed, to satisfy; and

(iii) any action or response that, at the time of filing, the registrant has determined to take regarding its noncompliance.

(c) If the national securities exchange or national securities association (or a [*15624] facility thereof) that maintains the principal listing for any class of the registrant's common equity (as defined in Exchange Act Rule 12b-2 (*17 CFR 240.12b-2*)), in lieu of suspending trading in or delisting such class of the registrant's securities, issues a public reprimand letter or similar communication indicating that the registrant has violated a rule or standard for continued listing on the exchange or association, the registrant must state the date, and summarize the contents of the letter or communication.

(d) If the registrant's board of directors, a committee of the board of directors or the officer or officers of the registrant authorized to take such action if board action is not required, has taken definitive action to cause the listing of a class of its common equity to be withdrawn from the national securities exchange, or terminated from the automated inter-dealer quotation system of a registered national securities association, where such exchange or association maintains the principal listing for such class of securities, including by reason of a transfer of the listing or quotation to another securities exchange or quotation system, describe the action taken and state the date of the action.

*Instructions.*

1. The registrant is not required to disclose any information required by paragraph (a) of this Item 3.01 where the delisting is a result of one of the following:

. The entire class of the security has been called for redemption, maturity or retirement; appropriate notice thereof has been given; if required by the terms of the securities, funds sufficient for the payment of all such securities have been deposited with an agency authorized to make such payments; and such funds have been made available to security holders;

. The entire class of the security has been redeemed or paid at maturity or retirement;

. The instruments representing the entire class of securities have come to evidence, by operation of law or otherwise, other securities in substitution therefor and represent no other right, except, if true, the right to receive an immediate cash payment (the right of dissenters to receive the appraised or fair value of their holdings shall not prevent the application of this provision); or

. All rights pertaining to the entire class of the security have been extinguished; *provided, however,* that where such an event occurs as the result of an order of a court or other governmental authority, the order shall be final, all applicable appeal periods shall have expired and no appeals shall be pending.

2. A registrant must provide the disclosure required by paragraph (a) or (b) of this Item 3.01, as applicable, regarding any failure to satisfy a rule or standard for continued listing on the national securities exchange or national securities association (or a facility thereof) that maintains the principal listing for any class of the registrant's common equity (as defined in Exchange Act Rule 12b-2 (*17 CFR 240.12b-2*)) even if the registrant has the benefit of a grace period or similar extension period during which it may cure the deficiency that triggers the disclosure requirement.

3. Notices or other communications subsequent to an initial notice sent to, or by, a registrant under Item 3.01(a), (b) or (c) that continue to indicate that the registrant does not comply with the same rule or standard for continued listing that was the subject of the initial notice are not required to be filed, but may be filed voluntarily.

4. Registrants whose securities are quoted exclusively (*i.e.*, the securities are not otherwise listed on an exchange or

69 FR 15594, *15624

association) on automated inter-dealer quotation systems are not subject to this Item 3.01 and such registrants are thus not required to file a Form 8-K pursuant to this Item 3.01 if the securities are no longer quoted on such quotation system. If a security is listed on an exchange or association and is also quoted on an automated inter-dealer quotation system, the registrant is subject to the disclosure obligations of Item 3.01 if any of the events specified in Item 3.01 occur.

Item 3.02 Unregistered Sales of Equity Securities

(a) If the registrant sells equity securities in a transaction that is not registered under the Securities Act, furnish the information set forth in paragraphs (a) and (c) through (e) of Item 701 of Regulation S-K or Regulation S-B, as applicable (*17 CFR 229.701(a)* and (c) through (e) and 228.701(a) and (c) through (e), respectively). For purposes of determining the required filing date for the Form 8-K under this Item 3.02(a), the registrant has no obligation to disclose information under this Item 3.02 until the registrant enters into an agreement enforceable against the registrant, whether or not subject to conditions, under which the equity securities are to be sold. If there is no such agreement, the registrant must provide the disclosure within four business days after the occurrence of the closing or settlement of the transaction or arrangement under which the equity securities are to be sold.

(b) No report need be filed under this Item 3.02 if the equity securities sold, in the aggregate since its last report filed under this Item 3.02 or its last periodic report, whichever is more recent, constitute less than 1% of the number of shares outstanding of the class of equity securities sold. In the case of a small business issuer, no report need be filed if the equity securities sold, in the aggregate since its last report filed under this Item 3.02 or its last periodic report, whichever is more recent, constitute less than 5% of the number of shares outstanding of the class of equity securities sold.

*Instructions.*

1. For purposes of this Item 3.02, "the number of shares outstanding" refers to the actual number of shares of equity securities of the class outstanding and does not include outstanding securities convertible into or exchangeable for such equity securities.

2. Small business issuer is defined under Item 10(a)(1) of Regulation S-B (*17 CFR 228.10(a)(1)*).

Item 3.03 Material Modification to Rights of Security Holders

(a) If the constituent instruments defining the rights of the holders of any class of registered securities of the registrant have been materially modified, disclose the date of the modification, the title of the class of securities involved and briefly describe the general effect of such modification upon the rights of holders of such securities.

(b) If the rights evidenced by any class of registered securities have been materially limited or qualified by the issuance or modification of any other class of securities by the registrant, briefly disclose the date of the issuance or modification, the general effect of the issuance or modification of such other class of securities upon the rights of the holders of the registered securities.

*Instruction.*

Working capital restrictions and other limitations upon the payment of dividends must be reported pursuant to this Item 3.03.

*Section 4--Matters Related to Accountants and Financial Statements*

Item 4.01 Changes in Registrant's Certifying Accountant

69 FR 15594, *15624

(a) If an independent accountant who was previously engaged as the principal accountant to audit the registrant's financial statements, or an independent accountant upon whom the principal [*15625] accountant expressed reliance in its report regarding a significant subsidiary, resigns (or indicates that it declines to stand for re-appointment after completion of the current audit) or is dismissed, disclose the information required by Item 304(a)(1) of Regulation S-K or Item 304(a)(1) of Regulation S-B, as applicable, including compliance with Item 304(a)(3) of Regulation S-K or Item 304(a)(3) of Regulation S-B (*17 CFR 229.304(a)(1)* and (a)(3) or 228.304(a)(1) and (a)(3), respectively).

(b) If a new independent accountant has been engaged as either the principal accountant to audit the registrant's financial statements or as an independent accountant on whom the principal accountant is expected to express reliance in its report regarding a significant subsidiary, the registrant must disclose the information required by Item 304(a)(2) of Regulation S-K or Item 304(a)(2) of Regulation S-B, as applicable (*17 CFR 229.304(a)(2)* or *228.304(a)(2)*, respectively).

*Instruction.*

The resignation or dismissal of an independent accountant, or its refusal to stand for re-appointment, is a reportable event separate from the engagement of a new independent accountant. On some occasions, two reports on Form 8-K are required for a single change in accountants, the first on the resignation (or refusal to stand for re-appointment) or dismissal of the former accountant and the second when the new accountant is engaged. Information required in the second Form 8-K in such situations need not be provided to the extent that it has been reported previously in the first Form 8-K.

Item 4.02 Non-Reliance on Previously Issued Financial Statements or a Related Audit Report or Completed Interim Review

(a) If the registrant's board of directors, a committee of the board of directors or the officer or officers of the registrant authorized to take such action if board action is not required, concludes that any previously issued financial statements, covering one or more years or interim periods for which the registrant is required to provide financial statements under Regulation S-X (17 CFR part 210) or Regulation S-B (17 CFR part 228), should no longer be relied upon because of an error in such financial statements as addressed in Accounting Principles Board Opinion No. 20, as may be modified, supplemented or succeeded, disclose the following information:

(1) The date of the conclusion regarding the non-reliance and an identification of the financial statements and years or periods covered that should no longer be relied upon;

(2) a brief description of the facts underlying the conclusion to the extent known to the registrant at the time of filing; and

(3) a statement of whether the audit committee, or the board of directors in the absence of an audit committee, or authorized officer or officers, discussed with the registrant's independent accountant the matters disclosed in the filing pursuant to this Item 4.02(a).

(b) If the registrant is advised by, or receives notice from, its independent accountant that disclosure should be made or action should be taken to prevent future reliance on a previously issued audit report or completed interim review related to previously issued financial statements, disclose the following information:

(1) The date on which the registrant was so advised or notified;

(2) Identification of the financial statements that should no longer be relied upon;

(3) A brief description of the information provided by the accountant; and

69 FR 15594, *15625

(4) A statement of whether the audit committee, or the board of directors in the absence of an audit committee, or authorized officer or officers, discussed with the independent accountant the matters disclosed in the filing pursuant to this Item 4.02(b).

(c) If the registrant receives advisement or notice from its independent accountant requiring disclosure under paragraph (b) of this Item 4.02, the registrant must:

(1) Provide the independent accountant with a copy of the disclosures it is making in response to this Item 4.02 that the independent accountant shall receive no later than the day that the disclosures are filed with the Commission;

(2) Request the independent accountant to furnish to the registrant as promptly as possible a letter addressed to the Commission stating whether the independent accountant agrees with the statements made by the registrant in response to this Item 4.02 and, if not, stating the respects in which it does not agree; and

(3) Amend the registrant's previously filed Form 8-K by filing the independent accountant's letter as an exhibit to the filed Form 8-K no later than two business days after the registrant's receipt of the letter.

*Section 5--Corporate Governance and Management*

Item 5.01 Changes in Control of Registrant

(a) If, to the knowledge of the registrant's board of directors, a committee of the board of directors or authorized officer or officers of the registrant, a change in control of the registrant has occurred, furnish the following information:

(1) The identity of the person(s) who acquired such control;

(2) the date and a description of the transaction(s) which resulted in the change in control;

(3) The basis of the control, including the percentage of voting securities of the registrant now beneficially owned directly or indirectly by the person(s) who acquired control;

(4) The amount of the consideration used by such person(s);

(5) The source(s) of funds used by the person(s), unless all or any part of the consideration used is a loan made in the ordinary course of business by a bank as defined by Section 3(a)(6) of the Act, in which case the identity of such bank may be omitted provided the person who acquired control:

(1) Has made a request for confidentiality pursuant to Section 13(d)(1)(B) of the Act; and

(2) States in the report that the identity of the bank has been so omitted and filed separately with the Commission.

(6) The identity of the person(s) from whom control was assumed; and

(7) Any arrangements or understandings among members of both the former and new control groups and their associates with respect to election of directors or other matters.

(b) Furnish the information required by Item 403(c) of Regulation S-K (*17 CFR 229.403(c)*) or Item 403(c) of Regulation S-B (*17 CFR 228.403(c)*), as applicable.

Item 5.02 Departure of Directors or Principal Officers; Election of Directors; Appointment of Principal Officers

(a)(1) If a director has resigned or refuses to stand for re-election to the board of directors since the date of the last annual meeting of shareholders because of a disagreement with the registrant, known to an executive officer of the

69 FR 15594, *15625

registrant, as defined in *17 CFR 240.3b-7*, on any matter relating to the registrant's operations, policies or practices, or if a director has been removed for cause from the board of directors, disclose the following information:  [*15626]

(i) The date of such resignation, refusal to stand for re-election or removal;

(ii) Any positions held by the director on any committee of the board of directors at the time of the director's resignation, refusal to stand for re-election or removal; and

(iii) A brief description of the circumstances representing the disagreement that the registrant believes caused, in whole or in part, the director's resignation, refusal to stand for re-election or removal.

(2) If the director has furnished the registrant with any written correspondence concerning the circumstances surrounding his or her resignation, refusal or removal, the registrant shall file a copy of the document as an exhibit to the report on Form 8-K.

(3) The registrant also must:

(i) Provide the director with a copy of the disclosures it is making in response to this Item 5.02 no later than the day the registrant file the disclosures with the Commission;

(ii) Provide the director with the opportunity to furnish the registrant as promptly as possible with a letter addressed to the registrant stating whether he or she agrees with the statements made by the registrant in response to this Item 5.02 and, if not, stating the respects in which he or she does not agree; and

(iii) File any letter received by the registrant from the director with the Commission as an exhibit by an amendment to the previously filed Form 8-K within two business days after receipt by the registrant.

(b) If the registrant's principal executive officer, president, principal financial officer, principal accounting officer, principal operating officer or any person performing similar functions retires, resigns or is terminated from that position, or if a director retires, resigns, is removed, or refuses to stand for re-election (except in circumstances described in paragraph (a) of this Item 5.02), disclose the fact that the event has occurred and the date of the event.

(c) If the registrant appoints a new principal executive officer, president, principal financial officer, principal accounting officer, principal operating officer or person performing similar functions, disclose the following information with respect to the newly appointed officer:

(1) The name and position of the newly appointed officer and the date of the appointment;

(2) The information required by Items 401(b), (d), (e) and Item 404(a) of Regulation S-K (*17 CFR 229.401(b)*, (d), (e) and 229.404(a)), or, in the case of a small business issuer, Items 401(a)(4), (a)(5), (c), and Items 404(a) and (b) of Regulation S-B (*17 CFR 228.401(a)(4)*, (a)(5), (c), and 228.404(a) and (b), respectively); and

(3) A brief description of the material terms of any employment agreement between the registrant and that officer.

*Instruction to paragraph (c).*

If the registrant intends to make a public announcement of the appointment other than by means of a report on Form 8-K, the registrant may delay filing the Form 8-K containing the disclosures required by this Item 5.02(c) until the day on which the registrant otherwise makes public announcement of the appointment of such officer.

(d) If the registrant elects a new director, except by a vote of security holders at an annual meeting or special meeting convened for such purpose, disclose the following information:

69 FR 15594, *15626

(1) The name of the newly elected director and the date of election;

(2) A brief description of any arrangement or understanding between the new director and any other persons, naming such persons, pursuant to which such director was selected as a director;

(3) The committees of the board of directors to which the new director has been, or at the time of this disclosure is expected to be, named; and

(4) The information required by Item 404(a) of Regulation S-K or Item 404(a) of Regulation S-B, as applicable (*17 CFR 229.404(a)* or *228.404(a)*, respectively).

*Instructions to Item 5.02.*

1. The disclosure requirements of this Item 5.02 do not apply to a registrant that is a wholly-owned subsidiary of an issuer with a class of securities registered under Section 12 of the Exchange Act *(15 U.S.C. 78 l)*, or that is required to file reports under Section 15(d) of the Exchange Act *(15 U.S.C. 78o(d))*.

2. To the extent that any information called for in Item 5.02(c)(3) or Item 5.02(d)(3) or Item 5.02(d)(4) is not determined or is unavailable at the time of the required filing, the registrant shall include a statement to this effect in the filing and then must file an amendment to its Form 8-K filing under this Item 5.02 containing such information within four business days after the information is determined or becomes available.

Item 5.03 Amendments to Articles of Incorporation or Bylaws; Change in Fiscal Year

(a) If a registrant with a class of equity securities registered under Section 12 of the Exchange Act *(15 U.S.C. 78 l)* amends its articles of incorporation or bylaws and a proposal for the amendment was not disclosed in a proxy statement or information statement filed by the registrant, disclose the following information:

(1) The effective date of the amendment; and

(2) A description of the provision adopted or changed by amendment and, if applicable, the previous provision.

(b) If the registrant determines to change the fiscal year from that used in its most recent filing with the Commission other than by means of:

(1) A submission to a vote of security holders through the solicitation of proxies or otherwise; or

(2) An amendment to its articles of incorporation or bylaws, disclose the date of such determination, the date of the new fiscal year end and the form (for example, Form 10-K, Form 10-KSB, Form 10-Q or Form 10-QSB) on which the report covering the transition period will be filed.

*Instruction to Item 5.03.*

Refer to Item 601(b)(3) of Regulation S-K or Regulation S-B (*17 CFR 229.601(b)(3)* and *228.601(b)(3)*), as applicable, regarding the filing of exhibits to this Item 5.03.

Item 5.04 Temporary Suspension of Trading Under Registrant's Employee Benefit Plans

(a) No later than the fourth business day after which the registrant receives the notice required by section 101(i)(2)(E) of the Employment Retirement Income Security Act of 1974 *(29 U.S.C. 1021(i)(2)(E))*, or, if such notice is not received by the registrant, on the same date by which the registrant transmits a timely notice to an affected officer or director within the time period prescribed by Rule 104(b)(2)(i)(B) or 104(b)(2)(ii) of Regulation BTR (*17 CFR 245.104(b)(2)(i)(B)* or *17 CFR 245.104(b)(2)(ii)*), provide the information specified in Rule 104(b) (*17 CFR 245.104(b)*

69 FR 15594, *15626

) and the date the registrant received the notice required by section 101(i)(2)(E) of the Employment Retirement Income Security Act of 1974 *(29 U.S.C. 1021(i)(2)(E))*, if applicable.

(b) On the same date by which the registrant transmits a timely updated notice to an affected officer or director, as required by the time period under Rule 104(b)(2)(iii) of Regulation BTR *(17 CFR 245.104(b)(2)(iii))*, provide the information specified in Rule 104(b)(3)(iii) *(17 CFR 245.104(b)(2)(iii))*.  [*15627]

Item 5.05 Amendments to the Registrant's Code of Ethics, or Waiver of a Provision of the Code of Ethics.

(a) Briefly describe the date and nature of any amendment to a provision of the registrant's code of ethics that applies to the registrant's principal executive officer, principal financial officer, principal accounting officer or controller or persons performing similar functions and that relates to any element of the code of ethics definition enumerated in Item 406(b) of Regulations S-K and S-B *(17 CFR 229.406(b)* and *228.406(b)*, respectively).

(b) If the registrant has granted a waiver, including an implicit waiver, from a provision of the code of ethics to an officer or person described in paragraph (a) of this Item 5.05, and the waiver relates to one or more of the elements of the code of ethics definition referred to in paragraph (a) of this Item 5.05, briefly describe the nature of the waiver, the name of the person to whom the waiver was granted, and the date of the waiver.

(c) The registrant does not need to provide any information pursuant to this Item 5.05 if it discloses the required information on its Internet website within five business days following the date of the amendment or waiver and the registrant has disclosed in its most recently filed annual report its Internet address and intention to provide disclosure in this manner. If the registrant elects to disclose the information required by this Item 5.05 through its website, such information must remain available on the website for at least a 12-month period. Following the 12-month period, the registrant must retain the information for a period of not less than five years. Upon request, the registrant must furnish to the Commission or its staff a copy of any or all information retained pursuant to this requirement.

*Instructions.*

1. The registrant does not need to disclose technical, administrative or other non-substantive amendments to its code of ethics.

2. For purposes of this Item 5.05:

(i) The term *waiver* means the approval by the registrant of a material departure from a provision of the code of ethics; and

(ii) The term *implicit waiver* means the registrant's failure to take action within a reasonable period of time regarding a material departure from a provision of the code of ethics that has been made known to an executive officer, as defined in Rule 3b-7 *(17 CFR 240.3b-7)* of the registrant.

*Section 6--[Reserved]*

*Section 7--Regulation FD*

Item 7.01 Regulation FD Disclosure

Unless filed under Item 8.01, disclose under this item only information that the registrant elects to disclose through Form 8-K pursuant to Regulation FD *(17 CFR 243.100* through *243.103)*.

*Section 8--Other Events*

69 FR 15594, *15627

Item 8.01 Other Events

The registrant may, at its option, disclose under this Item 8.01 any events, with respect to which information is not otherwise called for by this form, that the registrant deems of importance to security holders. The registrant may, at its option, file a report under this Item 8.01 disclosing the nonpublic information required to be disclosed by Regulation FD (*17 CFR 243.100* through *243.103*).

*Section 9--Financial Statements and Exhibits*

Item 9.01 Financial Statements and Exhibits.

List below the financial statements, pro forma financial information and exhibits, if any, filed as a part of this report.

(a) *Financial statements of businesses acquired.*

(1) For any business acquisition required to be described in answer to Item 2.01 of this form, financial statements of the business acquired shall be filed for the periods specified in Rule 3-05(b) of Regulation S-X (*17 CFR 210.3-05(b)*).

(2) The financial statements shall be prepared pursuant to Regulation S-X except that supporting schedules need not be filed. A manually signed accountant's report should be provided pursuant to Rule 2-02 of Regulation S-X (*17 CFR 210.2-02*).

(3) With regard to the acquisition of one or more real estate properties, the financial statements and any additional information specified by Rule 3-14 of Regulation S-X (*17 CFR 210.3-14*) shall be filed.

(4) Financial statements required by this item may be filed with the initial report, or by amendment not later than 71 calendar days after the date that the initial report on Form 8-K must be filed. If the financial statements are not included in the initial report, the registrant should so indicate in the Form 8-K report and state when the required financial statements will be filed. The registrant may, at its option, include unaudited financial statements in the initial report on Form 8-K.

(b) *Pro forma financial information.*

(1) For any transaction required to be described in answer to Item 2.01 of this form, furnish any pro forma financial information that would be required pursuant to Article 11 of Regulation S-X (17 CFR 210).

(2) The provisions of paragraph (a)(4) of this Item 9.01 shall also apply to pro forma financial information relative to the acquired business.

(c) *Exhibits.* The exhibits shall be deemed to be filed or furnished, depending on the relevant item requiring such exhibit, in accordance with the provisions of Item 601 of Regulation S-K (*17 CFR 229.601*), or Item 601 of Regulation S-B (*17 CFR 228.601*) and Instruction B.2 to this form.

*Instruction.*

During the period after a registrant has reported a business combination pursuant to Item 2.01 of this form, until the date on which the financial statements specified by this Item 9.01 must be filed, the registrant will be deemed current for purposes of its reporting obligations under Section 13(a) or 15(d) of the Exchange Act (*15 U.S.C. 78m* or 78o(d)). With respect to filings under the Securities Act, however, registration statements will not be declared effective and post-effective amendments to registrations statements will not be declared effective unless financial statements meeting the requirements of Rule 3-05 of Regulation S-X (*17 CFR 210.3-05*) are provided. In addition, offerings should not be

69 FR 15594, *15627

made pursuant to effective registration statements, or pursuant to Rules 505 and 506 of Regulation D (*17 CFR 230.505 and 230.506*) where any purchasers are not accredited investors under Rule 501(a) of that Regulation, until the audited financial statements required by Rule 3-05 of Regulation S-X (*17 CFR 210.3-05*) are filed; *provided, however,* that the following offerings or sales of securities may proceed notwithstanding that financial statements of the acquired business have not been filed:

(a) Offerings or sales of securities upon the conversion of outstanding convertible securities or upon the exercise of outstanding warrants or rights;

(b) Dividend or interest reinvestment plans;

(c) Employee benefit plans;

(d) Transactions involving secondary offerings; or

(e) Sales of securities pursuant to Rule 144 (*17 CFR 230.144*).

* * * * *

20. Amend Form 10-Q (referenced in § 249.308a) by:  [*15628]

a. Revising the heading for Item 2 in Part II-Other Information;

b. Removing Items 2(a), 2(b) and 6(b);

c. Redesignating paragraphs (c), (d) and (e) in Item 2 as paragraphs (a), (b) and (c);

d. Revising newly redesignated paragraph (a) in Item 2;

e. Revising the Instructions to Item 3;

f. Revising Item 5;

g. Removing the words "and Reports on Form 8-K (§ 249.308 of this chapter)" from the heading of Item 6; and

h. Removing the paragraph (a) designation in Item 6.

The revisions read as follows:

**Note** The text of Form 10-Q does not, and this amendment will not, appear in the Code of Federal Regulations.

**Form 10-Q**

* * * * *

*Part II--Other Information*

* * * * *

Item 2. Unregistered Sales of Equity Securities and Use of Proceeds

(a) Furnish the information required by Item 701 of Regulation S-K (*17 CFR 229.701*) as to all equity securities of the registrant sold by the registrant during the period covered by the report that were not registered under the Securities Act. If the Item 701 information previously has been included in a Current Report on Form 8-K (*17 CFR 249.308*),

69 FR 15594, *15628

however, it need not be furnished.

\* \* \* \* \*

Item 3. Defaults Upon Senior Securities

\* \* \* \* \*

*Instructions to Item 3*

1. Item 3 need not be answered as to any default or arrearage with respect to any class of securities all of which is held by or for the account of the registrant or its totally held subsidiaries.

2. The information required by Item 3 need not be made if previously disclosed on a report on Form 8-K (*17 CFR 249.308*).

\* \* \* \* \*

Item 5. Other Information

The registrant must disclose under this item any information required to be disclosed in a report on Form 8-K during the period covered by this Form 10-Q, but not reported, whether or not otherwise required by this Form 10-Q. If disclosure of such information is made under this item, it need not be repeated in a report on Form 8-K which would otherwise be required to be filed with respect to such information or in a subsequent report on Form 10-Q.

\* \* \* \* \*

21. Amend Form 10-QSB (referenced in § 249.308b) by:

a. Revising the heading for Item 2 in Part II-Other Information;

b. Removing Items 2(a), 2(b) and 6(b);

c. Redesignating paragraphs (c), (d) and (e) in Item 2 as paragraphs (a), (b) and (c);

d. Revising newly redesignated paragraph (a) in Item 2;

e. Revising the Instructions to Item 3;

f. Revising Item 5;

g. Removing the words "and Reports on Form 8-K" from the heading of Item 6; and

h. Removing the paragraph (a) designation in Item 6.

The revisions read as follows:

**Note** The text of Form 10-QSB does not, and this amendment will not, appear in the Code of Federal Regulations.

**Form 10-QSB**

\* \* \* \* \*

*Part II--Other Information*

69 FR 15594, *15628

* * * * *

Item 2. Unregistered Sales of Equity Securities and Use of Proceeds

(a) Furnish the information required by Item 701 of Regulation S-B (*17 CFR 228.701*) as to all equity securities of the small business issuer sold by the small business issuer during the period covered by the report that were not registered under the Securities Act. If the Item 701 information previously has been included in a Current Report on Form 8-K (*17 CFR 249.308*), however, it need not be furnished.

* * * * *

Item 3. Defaults Upon Senior Securities

* * * * *

*Instructions to Item 3*

1. Item 3 need not be answered as to any default or arrearage with respect to any class of securities all of which is held by or for the account of the small business issuer or its totally held subsidiaries.

2. The information required by Item 3 need not be made if previously disclosed on a report on Form 8-K (*17 CFR 249.308*).

* * * * *

Item 5. Other Information

The small business issuer must disclose under this item any information required to be disclosed in a report on Form 8-K during the period covered by this Form 10-QSB, but not reported, whether or not otherwise required by this Form 10-QSB. If disclosure of such information is made under this item, it need not be repeated in a report on Form 8-K which would otherwise be required to be filed with respect to such information or in a subsequent report on Form 10-QSB.

* * * * *

22. Amend Form 10-K (referenced in § 249.310) by:

a. Revising Items 5(a) and 9;

b. Adding Item 9B;

c. Revising the heading of Item 15 to read "Exhibits and Financial Statement Schedules.";

d. Removing paragraph (b) of Item 15; and

e. Redesignating paragraphs (c) and (d) in Item 15 as paragraphs (b) and (c).

The revisions read as follows:

**Note** The text of Form 10-K does not, and this amendment will not, appear in the Code of Federal Regulations.

**Form 10-K--Annual Report Pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934**

69 FR 15594, *15628

* * * * *

*Item 5. Market for Registrant's Common Equity and Related Stockholder Matters*

(a) Furnish the information required by Item 201 of Regulation S-K (*17 CFR 229.201*) and Item 701 of Regulation S-K (*17 CFR 229.701*) as to all equity securities of the registrant sold by the registrant during the period covered by the report that were not registered under the Securities Act other than unregistered sales made in reliance on Regulation S (*17 CFR 230.901* through *230.905*). If the Item 701 information previously has been included in a Quarterly Report on Form 10-Q or 10-QSB (*17 CFR 249.308a or 249.308b*), or in a Current Report on Form 8-K (*17 CFR 249.308*), it need not be furnished.

* * * * *

*Item 9. Changes in and Disagreements With Accountants on Accounting and Financial Disclosure*

Furnish the information required by Item 304(b) of Regulation S-K (§ 229.304(b) of this chapter).

* * * * *

*Item 9B. Other Information*

The registrant must disclose under this item any information required to be disclosed in a report on Form 8-K during the fourth quarter of the year covered by this Form 10-K, but not reported, whether or not otherwise required by this Form 10-K. If [*15629] disclosure of such information is made under this item, it need not be repeated in a report on Form 8-K which would otherwise be required to be filed with respect to such information or in a subsequent report on Form 10-K.

* * * * *

23. Amend Form 10-KSB (referenced in § 249.310a) by:

a. Revising Items 5(a) and 8 in Part II;

b. Adding Item 8B in Part II;

c. Removing the words "and Reports on Form 8-K" from the heading to Item 13;

d. Removing paragraph (b) of Item 13 in Part III;

e. Removing the paragraph (a) designation in Item 13;

f. Revising Item 3 in Part II of "Information Required in Annual Report of Transitional Small Business Issuers"; and

g. Removing Item 6 in Part II of "Information Required in Annual Report of Transitional Small Business Issuers".

The revisions read as follows:

**Note** The text of Form 10-KSB does not, and this amendment will not, appear in the Code of Federal Regulations.

**Form 10-KSB**

(Check one)

69 FR 15594, *15629

[] Annual Report Pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934

\* \* \* \* \*

*Part II*

Item 5. Market for Common Equity and Related Stockholder Matters

(a) Furnish the information required by Item 201 of Regulation S-B and Item 701 of Regulation S-B as to all equity securities of the small business issuer sold by the small business issuer during the period covered by the report that were not registered under the Securities Act. If the Item 701 information previously has been included in a Quarterly Report on Form 10-Q or 10-QSB, or on a Current Report on Form 8-K, however, it need not be furnished.

\* \* \* \* \*

Item 8. Changes In and Disagreements With Accountants on Accounting and Financial Disclosure

Furnish the information required by Item 304(b) of Regulation S-B.

\* \* \* \* \*

Item 8B. Other Information

The small business issuer must disclose under this item any information required to be disclosed in a report on Form 8-K during the fourth quarter of the year covered by this Form 10-KSB, but not reported, whether or not otherwise required by this Form 10-KSB. If disclosure of such information is made under this item, it need not be repeated in a report on Form 8-K which would otherwise be required to be filed with respect to such information or in a subsequent report on Form 10-KSB.

\* \* \* \* \*

**Information Required in Annual Report of Transitional Small Business Issuers**

\* \* \* \* \*

*Part II*

Item 3. Changes In and Disagreements With Accountants

Furnish the information required by Item 304(b) of Regulation S-B, if applicable.

\* \* \* \* \*

Dated: March 16, 2004.

By the Commission.

**Jill M. Peterson,**

*Assistant Secretary.*

69 FR 15594, *15629

[FR Doc. 04-6332 Filed 3-24-04; 8:45 am]

BILLING CODE 8010-01-P